UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION


LLOYD CHASE ALLEN,

     Petitioner,

vs.                   CASE NO. 03-10077-CIV-HIGHSMITH

JAMES MCDONOUGH,

     Respondent.

_____/


**<u>RESPONSE OF JAMES MCDONOUGH</u>**
**<u>TO ORDER TO SHOW CAUSE</u>**
**<u>WHY PETITION FOR WRIT OF HABEAS CORPUS</u>**
**<u>SHOULD NOT BE GRANTED</u>**

     Respondent, JAMES MCDONOUGH, hereafter "the State," responds to the Court's Order to Show Cause dated July 26, 2007, and states that the Petition of LLOYD CHASE ALLEN, hereafter "Petitioner," for Writ of Habeas Corpus should be denied without an evidentiary hearing for the reasons stated herein.  The Appendices consisting of the state court records and transcripts, briefs, opinions, etc., will be filed under separate cover and certificate of service.

TABLE OF CONTENTS

I. CUSTODY . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTS AND PROCEDURAL HISTORY . . . . . . . . . . . . . 1

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . 15
     A.   ROAD MAP . . . . . . . . . . . . . . . . . . . . 15
     B.   PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY
         HEARING. . . . . . . . . . . . . . . . . . . . . 16
     C.   STANDARD OF REVIEW . . . . . . . . . . . . . . . 19
         1.   Exhaustion and procedural bar . . . . . . . 19
         2.   Retroactive application of new law . . . . . 20
         3.   State court decisions on the merits . . . . . 21
         4.   Brecht v. Abrahamson . . . . . . . . . . . . 23
     D.   PETITIONER'S  CONTENTIONS . . . . . . . . . . . . 25

POINT I.

       THE CLAIMS OF INEFFECTIVE ASSISTANCE AND *BRADY*
       VIOLATIONS REGARDING THE GUILT PHASE SHOULD BE
       DENIED. . . . . . . . . . . . . . . . . . . . . 25
     A.   *Brady*. . . . . . . . . . . . . . . . . . . . . 25
     B.   INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING
         TO INVESTIGATE AND PRESENT EVIDENCE ABOUT A
         HOTEL REGISTRATION. . . . . . . . . . . . . . . 41
     C.   INEFFECTIVE ASSISTANCE FOR FAILING TO REQUEST
         A *FRYE* HEARING. . . . . . . . . . . . . . . . 45
     D.   INEFFECTIVE ASSISTANCE FOR DISCUSSING THE
         POSSIBILITY OF SUICIDE. . . . . . . . . . . . . 50
     E.   INEFFECTIVE ASSISTANCE FOR FAILING TO IMPEACH
         MR. WOODS. . . . . . . . . . . . . . . . . . . 56
     F.   INEFFECTIVE ASSISTANCE FOR FAILING TO CALL MS.
         MCCLAIN. . . . . . . . . . . . . . . . . . . . 59

POINT II.

       THE CLAIM OF ACTUAL INNOCENCE SHOULD BE DENIED. . . 63

POINT III.

       THE CLAIMS REGARDING THE SENTENCING HEARING SHOULD
       BE DENIED. . . . . . . . . . . . . . . . . . . . 79

POINT IV.

**THE CLAIM REGARDING THE WAIVER OF MITIGATION SHOULD BE DENIED.** . . . . . . . . . . . . . . . . . . . 86

**POINT V.**

**THE CLAIM THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE PETITIONER'S MENTAL STATE SHOULD BE DENIED.** . . . . . . . . . . . . . . . . . . . . . 107

**POINT VI.**

**THE CLAIM OF INNOCENCE OF THE DEATH PENALTY SHOULD BE DENIED.** . . . . . . . . . . . . . . . . . . . . . 116

**POINT VII.**

**THE CLAIM REGARDING COMMENTS AND INSTRUCTIONS REGARDING THE PENALTY PHASE SHOULD BE DENIED.** . . . . 136
A.  *Caldwell*. . . . . . . . . . . . . . . . . . . . . 136
B.  Burden Shifting. . . . . . . . . . . . . . . . . 140
C.  HAC. . . . . . . . . . . . . . . . . . . . . . . 142
D.  Comments in Closing. . . . . . . . . . . . . . . 145

**POINT VIII.**

**AS *RING* IS NOT RETROACTIVE, THIS CLAIM IS BARRED.** . 151

**POINT IX.**

**THE CLAIM REGARDING JUROR INTERVIEWS IS NOT COGNIZABLE, PROCEDURALLY BARRED AND WITHOUT MERIT.**
. . . . . . . . . . . . . . . . . . . . . . . . . . 154

**POINT X.**

**THE CLAIM REGARDING THE CONSTITUTIONALITY OF FLORIDA'S CAPITAL SENTENCE STATUTE IS PROCEDURALLY BARRED AND WITHOUT MERIT.** . . . . . . . . . . . . . 160

**IV.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . 163

**V.  CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . 163

iii

## I. CUSTODY

Petitioner is in the lawful custody of the State of Florida.


## II. FACTS AND PROCEDURAL HISTORY[1]

Petitioner was charged with (1) the first degree premeditated murder of Dortha Cribbs, (2) armed robbery of money belonging to Ms. Cribbs, (3) grand theft of a ring belonging to Ms. Cribbs, (4) grand theft of Ms. Cribbs' car and (5) kidnapping Ms. Cribbs with the intent to commit or facilitate the robbery or murder.  (App. Q-Vol. 1 at 4-8)[2]  The historical facts of the case are:

> Cribbs left her home in Ohio to drive to Florida in November 1991.  She apparently met [Petitioner] at a truck stop in Atlanta. [Petitioner] accompanied Cribbs during her visit with friends in Jacksonville Beach and during a stop in Bunnell to sell her trailer.

> [Petitioner], whom Cribbs introduced as "Lee Brock," told Cribbs' friends in Jacksonville Beach and Bunnell that he owned a ranch in Texas and a trucking rig. Cribbs told the friends that she was going into the trucking business with [Petitioner] after she sold her

---

[1]The Appendices filed herein number in excess of 20 volumes. As such it would be impossible within reasonable space limitations to set forth a full factual summary of each of the state court proceedings.  What follows, therefore, is a recitation of the nature of each proceeding herein, the issues raised and the outcome, with some broad factual summary.  A more detailed factual account of the proceedings will be presented when necessary in the body of the "Argument" portion of this response.

[2]References to the appendices will be thus: "App. [letter] [page]."  The record from the trial, (App. Q), the post conviction proceedings, (App. R), and the motion for DNA testing (App. S) are multi-volumed.  To facilitate reference, the citation to these appendices will also include the volume number, thus: "App. [Q, R or S]-[volume number] at [page]."

trailer in Bunnell and vacation home in Summerland Key. Cribbs was paid $4100 in hundred dollar bills for the trailer. [Petitioner] witnessed this transaction on November 12. The friends in both locations stated that Cribbs was wearing a diamond-studded horseshoe-shaped ring, which was valued at $8,000.

A man working at the house across the street from Cribbs' Summerland Key house saw her exit and re-enter the house early on the morning of November 13. He also observed [Petitioner] exit and re-enter the house around 11 a.m. The worker left for lunch at 11:45 a.m. When he returned a little after 1 p.m., the worker noticed that Cribbs' 1988 Ford Taurus was gone.

The real estate agent who managed Cribbs' property arrived between 12:30 and 1 p.m. to investigate Cribbs' unexpected arrival at the house. When no one responded to his knocks, the agent used his own key to enter the house. The television set, which was on high volume, was emitting loud static and a snowy picture. The coffee pot was turned on and half-full. The agent discovered Cribbs' body on the floor of the master bedroom. She was lying face down on a pillow and her body was surrounded by a puddle of blood.

The medical examiner placed the time of death between 4 a.m. and 2 p.m. on November 13. There were two stab wounds to the right side of Cribbs' face, ligature marks on her wrists and ankles, and a stab wound to her left neck that severed the carotid artery. The angle of the neck wound indicated that it was inflicted as Cribbs lay face down. The left stab wound caused Cribbs to bleed to death. The medical examiner estimated that Cribbs lived for fifteen to thirty minutes after this wound was inflicted and was conscious for fifteen minutes. Based upon the lack of defensive wounds and blood splatter, the medical examiner opined that Cribbs was bound at the time that she was stabbed.

The following items were recovered from the scene: a suitcase containing a blue shirt and a camera loaded with undeveloped film depicting [Petitioner]; a pair of grey lizard skin boots; a pair of blue jeans containing a blood stain on the right knee, found at the foot of the bed; a sperm-stained hand towel, found by the side of the bed; a piece of window sash cord found under Cribbs' left arm consistent with the ligature marks and also

2

consistent with a cord that had been cut in the spare bedroom;  and a sheathed knife and a rag found in the spare bedroom.  The contents of Cribbs' purse were scattered across the bed;  the $4100 and diamond ring were missing.  There were no signs of forcible entry and no fingerprints of value were found.  The interior of the house and its contents appeared to have been wiped clean with a damp rag.

Expert witnesses testified that the body fluids found on the hand towel were consistent with Cribbs' and [Petitioner's] blood types and DNA genotypes;  the blood on the jeans was consistent with Cribbs' blood.  The suitcase, boots, and shirt recovered from the scene were identified by witnesses as items that [Petitioner] had or wore in Jacksonville Beach and Bunnell.  Pursuant to the State's motion granted by the court, [Petitioner] tried on these items of clothing, which, with the exception of the jeans, fit him. [Petitioner's] inability to fit into the jeans was explained by a considerable weight gain following his arrest.

A taxi driver testified that he picked up [Petitioner] at the Buccaneer Lodge Tiki Lounge between 12:30 and 12:45 p.m. on November 13, that he took [Petitioner] to Key Largo, and that [Petitioner] paid the eighty-dollar fare with a hundred-dollar bill.  Cribbs' automobile was located in the parking lot of the Buccaneer Lodge on December 23.  The car was covered with debris, indicating that it had been parked there for some time. [Petitioner's] prints were lifted from the car.  A trucker's log book containing a credit card number and a sequence of telephone numbers led the police to [Petitioner's] location in California, where he was arrested on February 18, 1992.

At the close of all evidence, the trial court entered a judgment of acquittal for robbery of the cash and for theft of the ring.  The court found insufficient evidence that force was employed in connection with any taking and insufficient evidence that [Petitioner] had taken the ring. [Petitioner] also informed the court that he wished to proceed pro se during the penalty phase, if one was necessary.  The jury found [Petitioner] guilty of first-degree murder and grand theft of an automobile, but not guilty of kidnapping.

After the verdict was announced, defense counsel moved to withdraw from representation during the penalty phase. Counsel informed the court that [Petitioner] wanted to waive presentation of mitigating evidence and to affirmatively argue for imposition of the death penalty. Defense counsel explained that he was uncomfortable advocating this position and that [Petitioner] was competent to represent himself. The court conducted a *Faretta* inquiry and concluded that [Petitioner] knowingly and voluntarily waived his right to counsel and was competent to represent himself. The court ordered [Petitioner's] defense attorney to remain present in a stand-by counsel status. The court also ordered an examination for psychological competency pursuant to Florida Rule of Criminal Procedure 3.210. At the subsequent competency hearing, two mental health experts testified that [Petitioner] satisfied all six items of competency under Florida Rule of Criminal Procedure 3.211 and was competent to proceed to the penalty phase. The court found [Petitioner] competent to represent himself in the penalty phase.

In his closing argument to the jury, [Petitioner] expressly denied the existence of mitigating evidence and specifically denied that he was abused in childhood or that he suffered from alcoholism or drug abuse. While [Petitioner] asserted his factual innocence of murder, he also urged the jury to vote for death because he felt responsible and remorseful for Cribbs' death. [Petitioner] theorized that Cribbs had been murdered by an unnamed associate that he had summoned to assist with house repairs and whom he had told that Cribbs carried a large sum of cash in her purse. [Petitioner] also stated that he preferred death to life in prison. The jury recommended death by a vote of eleven to one.

The court followed the jury's recommendation and imposed a sentence of death, and also sentenced [Petitioner] to five years for grand theft of an automobile. The court found three aggravating factors: the murder was committed while under a sentence of imprisonment based upon [Petitioner's] escape from a work release program in Kansas; the murder was committed for pecuniary gain based upon [Petitioner's] statements, the contents of the purse scattered across the bed, and the theft of the automobile; and the murder was especially heinous, atrocious, or cruel based upon the medical examiner's testimony that it took fifteen to thirty

4

minutes for death to occur and that Cribbs would have been conscious for fifteen minutes after being stabbed. Secs. 921.141(5)(a), (f), (h), Fla. Stat. (1991). The court also found two nonstatutory mitigators that were not argued but were contained within the record: [Petitioner's] family background and his military service in Vietnam. The court also stated that it did not consider [Petitioner's] request for the death sentence in imposing the sentence.

*Allen v. State*, 662 So. 2d 323, 325-27 (Fla. 1995)("*Allen I*").

(App. T)

Petitioner appealed his conviction and sentence to the Supreme Court of Florida, raising six issues:

I.
THE TRIAL COURT'S ERROR IN ADMITTING, IN GUILT/INNOCENCE PHASE OF TRIAL, UNDULY PREJUDICIAL PHOTOGRAPH OF VICTIM CUDDLING GRANDCHILD IN HER LAP, AS WELL AS OTHER VICTIM IMPACT EVIDENCE AND PROSECUTORIAL ARGUMENT THEREON, VIOLATED [PETITIONER'S] RIGHT TO A FAIR TRIAL, UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§2, 9, 16, 17 AND 22 OF THE STATE CONSTITUTION.

II.
THE TRIAL COURT ERRED IN ACCEPTING [PETITIONER'S] WAIVER OF MITIGATION EVIDENCE, WHERE DEFENSE COUNSEL HAD NEVER PERFORMED ANY INVESTIGATION INTO THE PRESENCE OF MITIGATING EVIDENCE, AND CONSEQUENTLY THERE EXISTS NO RECORD EVIDENCE, IN VIOLATION OF *KOON V. DUGGER*, 619 SO. 2D 246 (FLA. 1993), AND THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§2, 9, 16, 17 AND 22 OF THE FLORIDA CONSTITUTION.

III.
THE TRIAL COURT ERRED IN PERMITTING [PETITIONER] TO MAKE UNSWORN AND UNSUPPORTED DENIALS OF APPLICABLE MITIGATING FACTORS, BEFORE THE SENTENCING JURY, IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, §§2, 9, 16, 17 AND 22 OF THE FLORIDA CONSTITUTION.

5

IV.

THE TRIAL COURT ERRED IN FINDING, AS AN AGGRAVATING FACTOR, THAT THE MURDER WAS COMMITTED FOR PECUNIARY GAIN, WHERE THE TRIAL HAD ENTERED A JUDGMENT OF ACQUITTAL FOR ROBBERY OF THE VICTIM'S CASH AND WHERE THE THEFT OF THE VICTIM'S CAR WAS FOR THE PURPOSE OF ESCAPE, IN VIOLATION OF [PETITIONER'S] RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS, THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I §§2, 9, 16, 17 AND 22 OF THE FLORIDA CONSTITUTION, AND §921.141(5)(F), F.S.A. (1993).

V.

THE TRIAL COURT ERRED IN FINDING AS AN AGGRAVATING FACTOR THAT THE MURDER WAS ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL, WHERE THE ENTIRE BASIS FOR THAT FINDING WAS THE TESTIMONY OF MEDICAL EXAMINER NELMS TO HIS "GUESS" THAT THE VICTIM WAS CONSCIOUS FOR FIFTEEN MINUTES AFTER THE FATAL STABBING, IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, §§2, 9, 16, 17 AND 22 OF THE FLORIDA CONSTITUTION AND §921.141(5)(H), F.S.A. (1993).

VI.

THE PROSECUTOR'S COMMENTS TO THE JURY DURING THE PENALTY PHASE THAT ONLY A SENTENCE OF DEATH WOULD PREVENT [PETITIONER], WHO HAD ESCAPED PREVIOUSLY FROM A WORK RELEASE FACILITY, FROM KILLING SOMEONE ELSE CONSTITUTED IMPROPER ARGUMENT OF A NONSTATUTORY AGGRAVATING FACTOR, IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, §§2, 9, 16, 17, AND 22 OF THE FLORIDA CONSTITUTION AND §921.141, F.S.A. (1993).

(App. A)  The State cross appealed, raising one issue:

THE TRIAL COURT ERRED IN FINDING MITIGATING CIRCUMSTANCES, WHERE THE FINDINGS WERE NOT SUPPORTED BY COMPETENT, SUBSTANTIAL EVIDENCE AND/OR WERE POSITIVELY REFUTED BY THE EVIDENCE.

(App. B at 92-95)  The Court affirmed Petitioner's convictions and sentences and rejected the State's cross-appeal. *Allen I*, 662 So. 2d  at 330, 332.

6

Petitioner then sought certiorari review in the United States Supreme Court, claiming:

> WHETHER THIS COURT SHOULD GRANT CERTIORARI IN ORDER TO ADDRESS THE ISSUE LEFT OPEN IN <u>SCHIRO V. FARLEY</u>, 114 S. Ct. 783 (1994): NAMELY, WHETHER THE COLLATERAL ESTOPPEL DOCTRINE APPLIES DURING THE CAPITAL SENTENCING PHASE TO AN "ISSUE OF ULTIMATE FACT" WHICH WAS PREVIOUSLY RESOLVED IN A CAPITAL [PETITIONER'S] FAVOR DURING THE GUILT PHASE AS A RESULT OF AN ACQUITTAL OF A CHARGED OFFENSE PREDICATED ON THE SAME FACTUAL ISSUE.

(App. D) On March 25, 1996, the Court denied certiorari. *Allen v. Florida*, 517 U.S. 1107 (1996). (App. U)

On March 20, 1997, Petitioner filed his initial shell motion for post conviction relief. (App. R-Vol. 1 at 8-42) Thereafter, Petitioner sought public records disclosure for several years. During the protracted public records litigation, Petitioner wrote to the State, stating that he wished to discharge his counsel and asking that his death warrant be expedited. (App. R-Vol. 5 at 729) Based on this letter, the State requested that the post conviction court conduct a waiver hearing pursuant to *Durocher v. Singletary*, 623 So. 2d 482 (Fla. 1993). (App. R-Vol. 5 at 725-27)

At the *Durocher* hearing, Petitioner indicated that he did wish to waive further post conviction proceedings and understood the nature and consequences of doing so. (PCR. 1452-57) When the post conviction court inquired why Petitioner wished to waive his post conviction remedies, Petitioner stated:

> Well, I've been trying to get to court for five years and this is the only time I've got there, this way here, so, you know. I don't see whether it makes any difference

7

> whether I kill myself or, you know.  Just all I ever
> tried to do was get an evidentiary hearing, and that
> didn't look like it was going to happen, so that's why I
> got rid of --

(App. 0-Vol. 10 at 1457) After discussing the issue of the delay

with counsel, Petitioner informed the post conviction court:

> Judge, I don't know if this -- I just found out something
> here on some evidence that I wasn't aware of and I'd like
> to have 30 days.  And if they don't -- they've told me
> they're going to file something to you within 30 days,
> and if I don't get a copy of it within that, then, you
> know, I'm going to -- I want to proceed with this.  But
> if they get it filed, then I'm more than happy.

(App. R-Vol. 10 at 1458) The post conviction court then determined

that Petitioner had withdrawn his request to waive further post

conviction proceedings and ordered that the final amended motion be

filed within 30 days.  (App. R-Vol. 10 at 1459, 1464)

On January 1, 2001, Petitioner filed his final amended motion

for post conviction relief, asserting 11 claims:

> I.
> [PETITIONER] WAS DENIED HIS RIGHT TO AN ADEQUATE
> ADVERSARIAL TESTING AT THE GUILT PHASE OF HIS CAPITAL
> TRIAL DUE TO THE CUMULATIVE EFFECT OF INEFFECTIVE
> ASSISTANCE OF COUNSEL AND THE WITHHOLDING OF MATERIAL,
> EXCULPATORY EVIDENCE, IN VIOLATION OF THE FIFTH, SIXTH,
> EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
> CONSTITUTION.
>
> II.
> [PETITIONER] WAS DENIED THE EFFECTIVE ASSISTANCE OF
> COUNSEL AT THE GUILT AND PENALTY PHASES OF HIS CAPITAL
> TRIAL BECAUSE TRIAL COUNSEL FAILED TO OBTAIN AN ADEQUATE
> MENTAL HEALTH EXAMINATION. [PETITIONER'S] RIGHTS UNDER
> THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE
> UNITED STATES CONSTITUTION AND THE CORRESPONDING
> PROVISIONS OF THE FLORIDA CONSTITUTION WERE VIOLATED.

III.

[PETITIONER] WAS DEPRIVED THE EFFECTIVE ASSISTANCE OF
COUNSEL AT THE PENALTY PHASE OF HIS CAPITAL TRIAL.
[PETITIONER] WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL
GUARANTEED BY THE SIXTH, EIGHTH, AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE
CORRESPONDING PROVISIONS OF THE FLORIDA CONSTITUTION.

IV.

[PETITIONER] IS DENIED HIS RIGHTS UNDER THE FIRST, SIXTH,
EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE
FLORIDA CONSTITUTION AND IS DENIED EFFECTIVE ASSISTANCE
OF COUNSEL IN PURSUING HIS POSTCONVICTION REMEDIES
BECAUSE OF THE RULES PROHIBITING HIS LAWYERS FROM
INTERVIEWING JURORS TO DETERMINE IF CONSTITUTIONAL ERROR
WAS PRESENT.

V.

[PETITIONER] IS INNOCENT OF THE DEATH PENALTY.

VI.

[PETITIONER'S] RIGHTS UNDER THE SIXTH, EIGHTH AND
FOURTEENTH AMENDMENTS WERE VIOLATED WHEN HE WAS ALLOWED
TO WAIVE HIS RIGHT TO PRESENT PENALTY PHASE EVIDENCE
WITHOUT AN ADEQUATE RECORD INQUIRY TO DETERMINE WHETHER
THE WAIVER WAS KNOWING, VOLUNTARY AND INTELLIGENT.

VII.

[PETITIONER] IS INSANE TO BE EXECUTED.

VIII.

FLORIDA'S CAPITAL SENTENCING STATUTE IS UNCONSTITUTIONAL
ON ITS FACE AND AS APPLIED BECAUSE IT FAILS TO PREVENT
THE ARBITRARY AND CAPRICIOUS IMPOSITION OF THE DEATH
PENALTY AND IT VIOLATES THE CONSTITUTIONAL GUARANTEES OF
DUE PROCESS AND PROHIBITING CRUEL AND UNUSUAL PUNISHMENT.

IX.

[PETITIONER] IS BEING DENIED HIS RIGHT TO EFFECTIVE
REPRESENTATION BY THE LACK OF FUNDING AVAILABLE TO FULLY
INVESTIGATE AND PREPARE HIS POSTCONVICTION PLEADINGS,
UNDERSTAFFING, AND THE UNPRECEDENTED WORKLOAD ON PRESENT
COUNSEL AND STAFF, IN VIOLATION OF HIS SIXTH, EIGHTH AND
FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES
CONSTITUTION AND IN VIOLATION OF SPALDING V. DUGGER.

X.

[PETITIONER] IS INNOCENT OF FIRST-DEGREE MURDER.
EVIDENCE THAT WAS NOT PRESENTED TO THE JURY DUE TO STATE
MISCONDUCT AND TRIAL COUNSEL'S INEFFECTIVENESS, AS WELL
AS NEWLY DISCOVERED EVIDENCE PROVE THAT [PETITIONER] IS
INNOCENT.  THE JURY WAS DEPRIVED OF EVIDENCE NECESSARY TO
ITS DETERMINATION IN GUILT PHASE OF [PETITIONER'S] TRIAL
IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH
AMENDMENTS.

XI.

[PETITIONER'S] TRIAL WAS FRAUGHT WITH PROCEDURAL AND
SUBSTANTIVE ERRORS WHICH CANNOT BE HARMLESS WHEN VIEWED
AS A WHOLE, SINCE THE COMBINATION OF ERRORS DEPRIVED HIM
OF THE FUNDAMENTALLY FAIR TRIAL GUARANTEED UNDER THE
SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.

(App. R-Vol. 6 at 748-870) After the State filed its response, the

post conviction court conducted a *Huff* hearing.

After the *Huff* hearing, the post conviction court denied the

motion for post conviction relief summarily.  It found that the

claims were facially insufficient and procedurally barred.  (App.

R-Vol. 8-9 at 1026-1343)

Petitioner appealed the denial of his motion for post

conviction relief to the Supreme Court of Florida, raising ten

claims:

I.

THE LOWER COURT ERRED IN SUMMARILY DENYING [PETITIONER'S]
CLAIM THAT CRITICAL, EXCULPATORY EVIDENCE WAS NOT
PRESENTED IN VIOLATION OF BRADY V. MARYLAND, 373 U.S. 83
(1963).
A.   Withheld FDLE Report concerning hairs found in
     Victim's Hands.
B.   Withheld Fingerprint Report.
C.   Withheld Handwritten Notes in the FDLE
     Regarding Contamination.

10

II.

THE LOWER COURT ERRED IN SUMMARILY DENYING [PETITIONER'S] CLAIM THAT [PETITIONER] RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN THE GUILT PHASE OF HIS TRIAL.

A.   FRYE.
B.   Suicide Theory.
C.   Woods' Impeachment.
D.   McClain.

III.

ERROR TO DENY EVIDENTIARY HEARING ON [PETITIONER'S] INVOLUNTARY WAIVER OF MITIGATION.

A.   Counsel's Failure to Conduct Any Investigation Into Mitigation Precluded a Knowing and Voluntary Waiver of Mitigation.
[sic]C.   Trial Court's Failure to Inquire of [Petitioner] Regarding His Decision to Waive Mitigation Rendered Waiver Involuntary.
D.   Lower Court's Finding of Procedural Bar Erroneous.
E.   Trial Counsel's Failure To Investigate and Discover Mitigation Renders His Death Sentence Arbitrary and Capricious Under the Eighth Amendment and Precludes Proportionality Review.

IV.

ERROR TO DENY EVIDENTIARY HEARING ON THE DENIAL OF [PETITIONER'S] RIGHT TO COMPETENT MENTAL HEALTH ASSISTANCE.

V.

ERROR TO DENY EVIDENTIARY HEARING ON CLAIM THAT [PETITIONER] IS INNOCENT OF THE DEATH PENALTY.

VI.

ERROR TO DENY EVIDENTIARY HEARING ON CLAIM THAT TRIAL COUNSEL FAILED TO CHALLENGE STATE'S EVIDENCE AND OBJECT TO UNCONSTITUTIONAL JURY INSTRUCTIONS.

VII.

TRIAL COURT ERRED IN DENYING POSTCONVICTION COUNSEL'S REQUEST TO INTERVIEW JURORS; THE RULES PROHIBITING [PETITIONER'S] LAWYERS FROM INTERVIEWING JURORS ARE UNCONSTITUTIONAL.

VIII.

FLORIDA'S CAPITAL SENTENCING STATUTE IS UNCONSTITUTIONAL.

11

IX.

[PETITIONER] IS BEING DENIED HIS RIGHT TO EFFECTIVE
REPRESENTATION BY THE LACK OF FUNDING AVAILABLE TO FULLY
INVESTIGATE AND PREPARE HIS POSTCONVICTION PLEADINGS.
UNDER STAFFING [sic], AND THE UNPRECEDENTED WORKLOAD OF
PRESENT COUNSEL AND STAFF.

X.

PROCEDURAL AND SUBSTANTIVE ERRORS WHICH AS A WHOLE
DEPRIVED [PETITIONER] OF A FAIR TRIAL.

(App. G)

Pursuant to Fla. R. Crim. P. 3.851(b)(2), Petitioner filed a

petition for writ of habeas corpus in the Florida Supreme Court

concurrently with the appeal from the denial of the motion for post

conviction relief.   (App. J) In this petition, Petitioner raised

two claims:

I.

THIS COURT SHOULD RE-VISIT THE ISSUE OF PROPORTIONALITY;
PETITIONER'S WAIVER OF MITIGATION PRECLUDED THIS COURT
FROM   CONDUCTING   A   CONSTITUTIONALLY   SUFFICIENT
PROPORTIONALITY REVIEW.

II.

THE COURT'S DECISION TO AFFIRM THE SENTENCE OF DEATH MUST
BE REVISITED IN LIGHT OF APPRENDI V. NEW JERSEY.

(App. J)  The  Florida  Supreme  Court  affirmed  the  denial  of

Petitioner's motion for post conviction relief and denied his

habeas petition.   *Allen v. State*, 854 So. 2d 1255 (Fla.

2003)("*Allen II*"). (App. V)

Regarding the post conviction appeal, the Florida Supreme

Court rejected Issues III, VII, and VIII and the portion of Issue

VI that concerned the jury instructions and comments regarding the

advisory nature of the sentencing recommendation because they were

12

procedurally barred.  *Allen II*, 854 So. 2d at 1257-58 & n.4.  It also summarily rejected Issues IV, V, IX and X, the other portion of Issue VI, the portions of Issue I regarding the fingerprints and contamination, and all of Issue II except the portion regarding the suicide theory because they lacked merit.  *Id.* at 1257-58 & n.5. The court rejected the remaining portion of Claim I because it determined that even if the State suppressed the hair evidence, it was not material.  *Id.* at 1258-60.  The Court affirmed the denial of the remaining portion of Claim II because Petitioner was not prejudiced by counsel's comments regarding the potential that the victim had killed herself.  *Id.* at 1261.

Regarding the habeas petition, the Florida Supreme Court rejected Claim I as procedurally barred.  *Id.* at 1261-62  It also denied Claim II as without merit.  *Id.* at 1262.

On September 30, 2003, Petitioner filed a motion for DNA testing in the trial court.  (App. S-Vol. 2 at 1-10) On January 7, 2004, the trial court denied this motion because it was not properly sworn.  (App. S-Vol. 2 at 11-12) On March 31, 2005, Petitioner filed another motion for DNA testing in the trial court. (App. S-Vol. 1 at 1-27) On May 16, 2005, the trial court ordered the State to respond to the motion.  (App. S-Vol. 2 at 13) On June 1, 2005, the State responded to the motion and argued that the motion should be denied because it did not establish that the results of the testing would exonerate Petitioner in light of the

13

record.   (App. S-Vol. 2 at 31-36) On January 5, 2006, the trial court denied the motion, finding that Petitioner had not shown that the results of the DNA testing would exonerate him in light of the record.  (App. S-Vol. 1 at 28-36)

Petitioner appealed the denial of his motion for DNA testing to the Florida Supreme Court, asserting:

> THE CIRCUIT COURT ERRED AS A MATTER OF FLORIDA LAW AND UNDER THE FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION BY DENYING SCIENTIFIC TESTING AND AN EVIDENTIARY HEARING ON [PETITIONER'S] MOTION FOR DNA TESTING NECESSARY TO DEMONSTRATE HIS ACTUAL INNOCENCE FOR THE MURDER FOR WHICH HE WAS CONVICTED AND SENTENCED TO DEATH.

(App. N) On February 15, 2007, the Florida Supreme Court affirmed the denial of the motion for DNA testing.  *Allen v. State*, 957 So. 2d 635 (Fla. 2007)(hereinafter "*Allen III*"). (App. W)

On October 14, 2003, Petitioner filed the instant petition for writ of habeas corpus in this Court.  This response follows.

14

## III.   ARGUMENT

### A.   ROAD MAP

Petitioner has presented 10 claims in his petition.  The State submits that Petitioner is not entitled to an evidentiary hearing. *See* Part B.  Certain legal principles governing federal habeas review apply to many or all of these claims.  These generally applicable principles, including exhaustion, the retroactive application of new law, the deference accorded state-court findings, and harmless error/prejudicial effect analysis will be discussed in Part C.  Thereafter, in Part D, Petitioner's individual contentions will be addressed.  It is the State's position that Petitioner has not presented any basis for relief.

**B.    PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING.**

Petitioner wholly fails to explain what evidence he was unable to adduce in state court.  His entire allegations on the subject are found at the beginning and end of his petition:

> A federal evidentiary hearing should be granted at this time.  All factual allegations must be accepted as true and thus an evidentiary hearing is required, because, if true, the allegations would entitled [Petitioner] to relief.

(Pet. at 11)

> WHEREFORE, Petitioner [] prays:
>                            * * *
>      5)   That [Petitioner] be accorded an evidentiary hearing on the allegations of the petition.

(Pet. at 133) Petitioner also includes a discussion of his interpretation of the law applicable to requests for evidentiary hearings without explaining its applicable to any of his claims. (Pet. at 9-11) As to the individual claims he fails to even allege that he would be entitled to one.

However, the burden is on Petitioner to show that he is entitled to an evidentiary hearing.  28 U.S.C. §2254(e)(2);[3] *Keeney*

---

[3]28 U.S.C. §2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --
>
> (A) the claim relies on--
>
>      (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

*v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992)(before a federal habeas petitioner is entitled to an evidentiary hearing he must establish "cause and prejudice" for his failure to present the evidence in state court).  While Petitioner is correct that under *Williams v. Taylor*, 529 U.S. 420 (2002), 28 U.S.C. §2254(e)(2) only prohibits an evidentiary hearing if the lack of a hearing in state court was due to some lack of diligence on his part, this does not mean that Petitioner is automatically entitled to an evidentiary hearing in federal court.  As the Eleventh Circuit held in *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002), a petitioner is still not entitled to an evidentiary hearing if he would not be entitled to relief if the allegations he has made were taken as true.  In the case of a petition governed by the AEDPA, this requires a petitioner to show that if the facts were true, the state courts' rejection of them would be contrary to or an unreasonable application of clearly established United States Supreme Court

---

unavailable;  or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;  and

    (B)  the  facts  underlying  the  claim  would  be sufficient to establish by clear and convincing evidence that  but  for  constitutional  error,  no  reasonable factfinder would have found the applicant guilty of the underlying offense.

Moreover,  these  exception  apply  only  to  guilt  or  innocence determinations and not to issues relating to the sentence. *In re Jones*, 137 F.3d 1271, 1274 (11th Cir. 1998).

precedent. *Id.* at 961. Petitioner has not even alleged, much less established such. He is not entitled to an evidentiary hearing. *Id.*

In view of the foregoing, it is plain that Petitioner has failed to establish his entitlement to an evidentiary hearing. Should this Court determine that an evidentiary hearing is necessary, the State denies all of Petitioner allegations and demands strict proof of every element of every claim.

C.    **STANDARD OF REVIEW**

1.    **Exhaustion and procedural bar**

Claims that have not been "fairly presented" for resolution in the state courts are unexhausted, and may not be raised for the first time in a federal habeas petition. *Picard v. Connor*, 404 U.S. 270, 275 (1971).   To fairly present a claim, it must specifically apprize the state court of the federal constitutional violation later claimed to exist in federal court.   If the state court claim failed to do so, it is unexhausted. *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

Claims not raised in state court that would be subject to a state court procedural bar are deemed exhausted by virtue of the bar.   However, the bar is an independent state law ground of decision that must be honored, preventing federal review of the claim. *Gray v. Netherland*, 518 U.S. 152 (1989).

In *Teague v. Lane*, 489 U.S. 288, 297-298 (1989), the Supreme Court held that where a claim was not raised in state court and the petitioner would be procedurally barred from litigating the claim in state court, it may not be raised as a federal habeas claim. The only exception would be a showing of cause and prejudice pursuant to *Wainwright v. Sykes*, 433 U.S. 72 (1977).   *Teague*, 489 U.S. at 298.   The burden for showing cause and prejudice is upon the petitioner.   *United States v. Frady*, 456 U.S. 152 (1982).   The State would note that Petitioner has not even alleged cause or

19

prejudice with regard any of the defaulted claims in the petition. As such it follows that he has not met that burden.

Moreover, 28 U.S.C. §2254(b) provides:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
        (A) the applicant has exhausted the remedies available in the courts of the State; or
    (B)(i) there is an absence of available State corrective process; or
        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
    (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

Under this section, this Court cannot grant relief on an unexhausted claim.

## 2.   Retroactive application of new law

*Teague* also held that constitutional claims may not be raised on collateral review if they are based upon a new rule that was enunciated after the conviction and sentence became final.   489 U.S. at 311.   The Court has explained that *Teague* validates reasonable good faith interpretations of existing precedent. *Butler v. McKellar*, 494 U.S. 407 (1990).   A precedent sets forth a new rule unless "reasonable jurists" would have "felt compelled" at the time the petitioner's conviction became final to rule in the petitioner's favor on the issue.   *Graham v. Collins*, 506 U.S. 461, 468 (1993).   The precedent will be considered a new rule even if

20

the issue is "governed" or "controlled" by existing precedent, *Butler*, 494 U.S. at 415, and will be considered as a collateral claim only if the relief sought was "dictated" by prior precedent.

### 3.   State court decisions on the merits

On habeas review, the state court's application of the facts to the law may not be overturned unless it contradicts a decision of the United States Supreme Court, or involves an unreasonable factual finding:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). These provisions bar *de novo* review in federal court. Instead, a decision of a state court is only contrary to clearly established Supreme Court precedent if a state court has applied the wrong legal standard or has applied the right legal standard but reached a different conclusion than the United States Supreme Court did on materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). In order for the state court's determination of the merits of the claim to be unreasonable, it must be objectively unreasonable. *Id.* "[A] federal

habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Id.* at 411.

Further, the state courts' factual findings are subject to a presumption of correctness under 28 U.S.C. §2254(e)(1). The state court's factual conclusions must be accepted by the federal courts on habeas review, unless the petitioner demonstrates by clear and convincing evidence that they are incorrect. *Id.*

To the extent that Petitioner may contend that this Court must review the claim de novo before determining whether the state court's decision was contrary to, or an unreasonable application of, United States Supreme Court precedent, the United States Supreme Court expressed its disapproval of this methodology of evaluating habeas petitions in *Lockyer v. Andrade*, 538 U.S. 63 (2003). The Court stated:

> The Ninth Circuit requires federal habeas courts to review the state court decision de novo before applying the AEDPA standard of review. *See, e.g., Van Tran v. Lindsey*, *supra*, at 1154-1155; *Clark v. Murphy*, 317 F. 3d 1038, 1044, n. 3 (CA9 2003). We disagree with this approach. AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under §2254(d)(1)--whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law. *See Weeks v. Angelone*, 528 U. S. 225 (2000). In this case, we do not reach the question whether the state court erred and instead focus solely on whether §2254(d)

forecloses habeas relief on Andrade's Eighth Amendment claim.

*Id.* at 71.  As such, this Court should not review Petitioner's claims *de novo*.  Instead, this Court should only determine whether the state court's rejection of Petitioner's claims was contrary to, or an unreasonable application of, clearly established federal law.

To the extent that Petitioner may be asserting that application of the contrary to, or unreasonable application of, standard does not apply if the state courts did not explain its rejection of his claims, he is incorrect.  The Eleventh Circuit has held that the AEDPA standard of review applies even if the state courts did not explain its rejection of claims or did not cite to federal authorities in doing so.  *Isaacs v. Head*, 300 F.3d 1232, 1258-60 (11th Cir. 2002)(standard applies even if federal authorities are not cited); *Wright v. Moore*, 278 F.3d 1245, 1253-56 (11th Cir. 2002)(standard applies even if state court decision did not discuss the issue).  As such, in order to obtain any relief, Petitioner must show that the state courts' rejection of his claims was contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent.

### 4.  **Brecht v. Abrahamson**

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where error is determined, on habeas review, to exist. This test is "less onerous" then the harmless error standard enunciated in *Chapman v. California*, 386

23

U.S. 18 (1967).  "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.  Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  507 U.S. at 637.  The State further submits, however, that even this determination is subject to deference to the state court findings on the merits under 28 U.S.C. §2254(d).

**D.   PETITIONER'S  CONTENTIONS**

## POINT I.

**THE CLAIMS OF INEFFECTIVE ASSISTANCE AND *BRADY* VIOLATIONS REGARDING THE GUILT PHASE SHOULD BE DENIED.**

Petitioner first contends that he in entitled to relief because of alleged violations of *Brady v. Maryland*, 373 U.S. U.S. 83 (1963), and alleged instances of ineffective assistance of counsel.  Specifically, Petitioner asserts that the State violated *Brady* by failing to disclose a report of the analysis of hairs found on the victim and a report of an attempt to compare fingerprints on the victim's car.   He also claims that the fingerprint report shows that the testimony of a state witness at trial was false.   Petitioner asserts that his counsel was ineffective for failing to present evidence that Petitioner registered at the Buccaneer Lodge with another man on the day of the crime, for failing to request a *Frye* hearing regarding the DNA evidence, for allegedly arguing that the victim had committed suicide, for failing to cross examine Larry Woods regarding his description of Petitioner and for failing to present the testimony of Tonia McClain.  However, Petitioner is entitled to no relief.

A.   *Brady*.

In state court, Petitioner first asserted that the State had violated *Brady* by suppressing two Florida Department of Law Enforcement (FDLE) reports in his motion for post conviction

25

relief.  (App. R-Vol. 6 at 768-70) In this claim, Petitioner also asserted that one of the FDLE reports showed that the testimony of a state witness was false.  *Id.*  The post conviction court denied these claims:

**Issue 3(a) - The State failed to disclose exculpatory evidence.**

[Petitioner] alleges that the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  That is, he asserts that the State withheld two reports of the Florida Department of Law Enforcement, (hereafter, the "FDLE"), which would have provided exculpatory evidence. [Petitioner] alleges that the reports showed that hair found in or on the Victim's hand did not match [Petitioner's] hair and that the [Petitioner's] fingerprints were not found in the car contrary to the testimony of the State's expert witness.

With respect to [Petitioner's] *Brady* claim concerning the hair, [Petitioner] filed a standard notice of discovery on April 28, 1992, (R.O.A., 31, Exhibit 32), to which the State responded on May 1, 1992, (R.O.A., 33-35, Exhibit 33).  Subsequently, Counsel must have become aware that the State (a) had found hair at the scene, (b) wanted [Petitioner's] hair for comparison, and (c) intended to submit the sample for laboratory comparison because the State filed a motion on May 22, 1992, (R.O.A. 46-47, Exhibit 34), seeking the taking of hair samples from [Petitioner].  Nevertheless, after the State received its order on May 27, 1992, (R.O.A., 48, Exhibit 35), there is nothing in the record to indicate that the results of the comparison were ever shared with Counsel.

However, as reiterated in *Hoffman v. State*, 26 Fla.L.Weekly S438, 439 (Fla. July 5, 2001), not every failure to disclose evidence constitutes a *Brady* violation:

"When a Brady violation is alleged, the defendant must establish a prima facie case that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'  *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).  To meet this test, the defendant must prove: (1) the State possessed

26

favorable evidence, including impeachment evidence; (2) the evidence was suppressed; and (3) there is a reasonable probability that, had the evidence been disclosed, the outcome of the proceeding would have been different. *See Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Kyles v. Whitley*, 514 U.S. 419. 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Way v. State*, 760 So.2d 903 (Fla.2000)."

The *Brady* violation alleged in *Hoffman*, as in the instant case, was the State's failure to disclose the results of hair analysis. In that case, a single fingerprint matching the defendant's was lifted from a cigarette at some time prior to the crime, his presence at the scene was an important issue for the jury to resolve. Therefore, any evidence that tended to prove or disprove this fact was highly probative. As a result, the State's failure to disclose that the female victim had clutched in her hand hairs that did not match that of Hoffman, his co-defendant, or the male victim constituted a *Brady* violation. With this evidence the defense could have argued that the female victim was clutching the hair of her assailant, but that that assailant was not Hoffman. The Court found under the circumstances of the case that had the evidence been disclosed there was a reasonable probability that the outcome would have been different.

The instant case is readily distinguishable. Here, the Victim was found lying face down on the bedroom floor. In or on her hands were found two hairs that did not come from [Petitioner]. Examination of the hairs did not eliminate the Victim herself as the source of the questioned hairs because no samples of her hair were kept for comparison. The source of the hairs remains unidentified.

However, unlike the facts of *Hoffman*, there is no question that [Petitioner] was in the Victim's house from the night before the murder when the two arrived in Summerland Key until he left sometime after 11:45 a.m., on the 13th of November. The presence of the hairs in or on the Victim's hands neither inculpates nor exculpates [Petitioner]. Therefore, the State's failure to disclose the FDLE report concerning the results of the hair analysis did not constitute a violation because the third prong of the *Brady* test was missing: there is no reasonable probability that, had the evidence been

27

disclosed, the outcome of the trial would have been different. *Hoffman*.

However, the Court notes that the State incorrectly argues that because Counsel was put on notice of the State's intention to seek analysis of the hairs, the State had no duty to disclose the results.

"The argument is flawed in light of *Strickler* and *Kyles*, which squarely place the burden on the State to disclose all information in its possession that is exculpatory." *Id.*, at 440.

Nevertheless, for reasons given, this claim is denied.

**Issue 3(b) - The State knowingly presented false evidence.**

[Petitioner] asserts that the evidence of the State's fingerprint expert was false because she testified that she identified [Petitioner's] fingerprints in the Victim's vehicle whereas the FDLE report indicated that there were no matches.

This claim is insufficient because [Petitioner] does not allege how he was prejudiced.

The evidence established that [Petitioner] traveled over 900 miles in the Victim's automobile. The fact that [Petitioner's] fingerprints were found in the vehicle is, once again, neither inculpatory nor exculpatory. Even if Counsel attempted to impeach the State's expert with the FDLE report, confidence in the outcome of the trial would not have been undermined. *Kyles*; *Strickler*.

The claim is denied.

(App. R-Vol. 8 at 1041-44)

On appeal from the denial of his motion for post conviction relief, Petitioner again raised these issues. (App. G at 8-16) The Florida Supreme Court affirmed the denial of these claims:

[Petitioner] raises 18 claims, including subparts. [FN3] We summarily affirm the trial court's denial of 16 of his claims because they are procedurally barred or lack merit. [FN5] We address only claims 1 and 5, asserting a *Brady* violation concerning hairs found in or on the victim's hand and ineffective assistance of counsel for advancing a suicide theory at trial.

28

A. Brady Claim

[Petitioner] asserts that he is entitled to an evidentiary hearing regarding the alleged violation of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). [Petitioner] alleges that the State violated *Brady* by withholding the result of a hair analysis performed on two hairs found in the victim's hand. The analysis excluded [Petitioner] - but not the victim - as the source. [Petitioner] claims that a reasonable probability exists that the outcome would have been different had the evidence been disclosed.

Because the trial court did not hold an evidentiary hearing, we must examine each claim to determine if it is legally sufficient, and, if so, whether the record refutes it. *See Freeman v. State*, 761 So. 2d 1055, 1061 (Fla. 2000). However, "[a] defendant may not simply file a motion for postconviction relief containing conclusory allegations . . . and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record . . . ." *Kennedy v. State*, 547 So. 2d 912, 913 (Fla. 1989). The defendant must allege specific facts that, if accepted as true, establish a prima facie case that (1) the State possessed evidence favorable to the accused because it was either exculpatory or impeaching; (2) the State willfully or inadvertently suppressed the evidence; and (3) the defendant was prejudiced. *Strickler v. Greene*, 527 U.S. 263, 281-82, 144 L. Ed. 2d 286, 119 S. Ct. 1936 (1999). We review each of these elements in turn.

We first examine whether the evidence was favorable to [Petitioner]. Evidence is favorable to an accused if it is either exculpatory or impeaching. *Strickler*, 527 U.S. at 280. Whether evidence is exculpatory or impeaching is a question of fact that can be resolved by an evidentiary hearing. *See Way v. State*, 630 So. 2d 177, 178 (Fla. 1993). Here, [Petitioner] alleges that the result of the hair analysis was favorable because it excluded him as the source of the two hairs. Because the record does not refute this assertion, we accept it as true for purposes of this appeal. *See Freeman*, 761 So. 2d at 1061.

We next consider whether the State suppressed the evidence. To comply with Brady, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case," *Kyles v. Whitley*, 514 U.S. 419, 437, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995), and to disclose that evidence if it is material. *United States v. Agurs*, 427 U.S. 97, 111, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976). Whether the State suppressed evidence is a question of fact that can be resolved by an evidentiary hearing. *See Way*, 630 So. 2d at 178. Again, because the trial court did not conduct an evidentiary hearing, we must accept [Petitioner's] allegations to the extent the record does not refute them. *Freeman*, 761 So. 2d at 1061. [Petitioner] alleges that the State withheld an FDLE report that contained the result of the hair analysis. Because the record does not refute this fact, we accept it as true for purposes of this appeal. *Id.*

The State argues that inherent in the suppression prong of *Brady* is a requirement that the defendant could not have obtained the evidence through due diligence. It argues that it did not suppress the results of the hair analysis because [Petitioner] knew that the State had performed such an analysis. A defendant's knowledge that the State submitted evidence for testing, however, does not create a duty to inquire further. *See Hoffman v. State*, 800 So. 2d 174, 179 (Fla. 2001) (noting that the State has the burden "to disclose to the defendant all information in its possession that is exculpatory"). The defendant's duty to exercise due diligence in reviewing *Brady* material applies only after the State discloses it. In *Maharaj v. State*, 778 So. 2d 944 (Fla. 2000), on which the State relies, we held that the defendant was aware of a briefcase that the State had returned to the victim's family and could have compelled production through a subpoena duces tecum. Here, the State itself retained possession of the hair analysis, and while [Petitioner] was aware that the State was conducting such an analysis, he was never informed of the results. *Brady* does not require that the defendant compel production of exculpatory material, or even that a defendant remind the State of its obligations. Once the State obtained the results of the hair analysis, it was required to disclose them to the defendant.

Finally, we determine whether the State's failure to disclose this evidence prejudiced [Petitioner]. To

satisfy this prong of *Brady*, a defendant must show that the suppressed evidence was material. *Way*, 760 So. 2d 903 at 912-13. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985)) (emphasis added). The United States Supreme Court has defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *See also Bagley*, 473 U.S. at 682 (expressly applying the *Strickland* formulation of "reasonable probability" to *Brady* cases).

Whether evidence is "material" for Brady purposes is a mixed question of law and fact subject to independent review. *Way*, 760 So. 2d at 913. Therefore, this Court must "determine 'whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict.'" *See State v. Huggins*, 788 So. 2d 238, 243 (Fla. 2001) (quoting *Maharaj*, 778 So. 2d at 953).

Here, the result of the hair analysis could not reasonably place the case in such a different light as to undermine confidence in the verdict. Although the hair analysis excluded [Petitioner] as the source, it did not exclude the victim; and due to contamination, the two hairs cannot be examined further. Thus, the analysis neither supported nor negated [Petitioner's] argument that an unidentified third person committed the murder.

This case is distinguishable from *Hoffman*, 800 So. 2d at 179, in which we ordered a new trial after determining that the evidence the State withheld placed the case in a different light as to undermine the confidence in the verdict. In *Hoffman*, the State also failed to disclose the result of the analysis of hairs found clutched in the victim's hand. Unlike the case here, however, in *Hoffman* the analysis not only excluded the defendant as the source of the hair, but also excluded the victim and the codefendant. *Id.* at 179. As we noted in that case:

Whether Hoffman was in fact [at the crime scene] was an important issue that the jury

31

had to resolve. Therefore, any evidence
tending to either prove or disprove this fact
would be highly probative. Hair evidence found
in the victim's clutched hand could tend to
prove recent contact between the victim and a
person present [at the crime scene] at the
time of her death. With the evidence excluding
Hoffman as the source of the clutched hair,
defense counsel could have strenuously argued
that the victim was clutching the hair of her
assailant, but that assailant was not Hoffman.

*Id.* at 180. Here, two hairs were found in or on the
victim's hand - not clutched in it. In addition, it is
undisputed that [Petitioner] was present at the scene
shortly before the victim's death. He hailed a taxi from
the Buccaneer Lodge shortly after the victim's death, and
the victim's car was later found at the Buccaneer Lodge.
[Petitioner] paid the taxi driver with a hundred-dollar
bill. The jury concluded that [Petitioner] killed the
victim, stole her $4100, fled with her car to the
Buccaneer Lodge, abandoned the car there and continued
his getaway in a taxi. The fact that two hairs found in
or on the victim's hand did not belong to [Petitioner]
does not place the case in such a different light as to
undermine confidence in the verdict.

\* \* \* \*

[FN3] [Petitioner] alleges: (1) a violation of *Brady v.
Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194
(1963), concerning hairs found in the victim's hand; (2)
a *Brady* violation concerning an FDLE report that
indicated [Petitioner's] fingerprints were not found in
the victim's car; (3) a *Brady* violation concerning a
report of the Florida Department of Law Enforcement
(FDLE) that indicated a contamination problem with some
of the evidence sent for testing; . . .
[FN5] Claims 2, 3, 4, 6, 7, and 11 lack merit because
[Petitioner] was not prejudiced by the alleged errors. .
. .

*Allen II*, 854 So. 2d at 1257-60 (footnote 4 omitted).

As seen from the going, both the State courts properly

identified *Brady* as standard for evaluating this claim and

32

accurately enunciated that standard. Moreover, the facts underlying this claim are not materially indistinguishable from the facts in any of the United States Supreme Court's *Brady* jurisprudence. As such, the rejection of this claim was not contrary to *Brady*. *Williams*, 529 U.S. at 412-13.

While Petitioner asserts that the decision is contrary to *Brady* because the Florida Court allegedly did not consider the cumulative effect of the allegedly suppressed evidence, this is untrue. Petitioner's entire claim is based on the fact that the Florida Supreme Court addressed each alleged *Brady* violation separately. However, Petitioner ignores that the Florida Supreme Court also expressly rejected his claim that he was entitled to relief based on the alleged cumulative effect of the errors. *Allen II*, 854 So. 2d at 1257 n.3 & 1258 n.5. In *Kyles v. Whitley*, 514 U.S. 419 (1995), the case upon which Petitioner relies, the Court expressly noted that this is the appropriate manner in which to conduct a *Brady* analysis. *Id.* at 436 n.10 ("We evaluate the tendency and force of the undisclosed evidence item by item; there is no other way. We evaluate its cumulative effect for purposes of materiality separately and at the end of the discussion, at Part IV-D, infra."). As such, there is not contrary to *Brady* and its progeny about the manner in which the Florida Courts rejected this claim.

33

While Petitioner further asserts that the Florida Supreme Court must have applied a sufficiency of the evidence test to determine materiality, this is not true.  In asserting that the Florida Supreme Court applied a sufficiency of evidence test, Petitioner construes the Florida Supreme Court's statement that "the [hair] analysis neither supported nor negated [Petitioner's] argument that an unidentified person committed the murder." *Allen II*, 854 So. 2d at 1260.  However, nothing about this statement indicates that the Florida Supreme Court analyzed materiality under a sufficiency of evidence standard.  Moreover, the Florida Supreme Court repeatedly enunciated the correct standard.  *Id.* at 1260 ("Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985))(emphasis added). The United States Supreme Court has defined 'reasonable probability' as 'a probability sufficient to undermine confidence in the outcome.' *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *See also Bagley*, 473 U.S. at 682 (expressly applying the *Strickland* formulation of 'reasonable probability' to Brady cases)."); *id.* ("Here, the result of the hair analysis could not reasonably place the case in such a different light as to undermine confidence in the verdict."); *id.* ("The fact that two

34

hairs found in or on the victim's hand did not belong to [Petitioner] does not place the case in such a different light as to undermine confidence in the verdict.").

In *Woodford v. Viscotti*, 537 U.S. 19 (2002), the United States Supreme Court reversed the Ninth Circuit for finding a state court had acted contrary to clearly established United States Supreme Court precedent. There, the state court had properly quoted and cited to the standard for prejudice under *Strickland* on several occasions during its opinion and had properly noted that a reasonable probability required a showing that the confidence in the outcome was undermined. *Id.* at 22-23. However, on four occasions in the opinion had used the word "probable" without the modifier "reasonable." *Id.* at 23-24. The Ninth Circuit had found that these references indicated that the state court had acted contrary to *Strickland*. *Id.* The Court found that this was error:

> The Court of Appeals made no effort to reconcile the state court's use of the term "probable" with its use, elsewhere, of *Strickland*'s term "reasonably probable," nor did it even acknowledge, much less discuss, the California Supreme Court's proper framing of the question as whether the evidence "undermines confidence" in the outcome of the sentencing proceeding. This readiness to attribute error is inconsistent with the presumption that state courts know and follow the law. *See, e.g., Parker v. Dugger*, 498 U.S. 308, 314-316, 112 L. Ed. 2d 812, 111 S. Ct. 731 (1991); *Walton v. Arizona*, 497 U.S. 639, 653, 111 L. Ed. 2d 511, 110 S. Ct. 3047 (1990), *overruled on other grounds*, *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428, (2002); *LaVallee v. Delle Rose*, 410 U.S. 690, 694-695, 35 L. Ed. 2d 637, 93 S. Ct. 1203 (1973) (per curiam). It is also incompatible with § 2254(d)'s "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333,

35

138 L. Ed. 2d 481, 117 S. Ct. 2059, n. 7 (1997), which demands that state court decisions be given the benefit of the doubt.

*Id.* at 24.  Here, as noted above, the Florida Supreme Court did not even improperly paraphrase the standard and did repeatedly phrase the standard properly.  As such, it did not act contrary to *Brady* under *Viscotti*.   Petitioner's contrary assertions should be rejected.

Moreover, the rejection of this claim was not an unreasonable application of *Brady*.  While Petitioner insists that the hair must have belonged to either Ms. Cribbs or her murderer, the record does not support this assertion.  The hairs were not recovered until the autopsy, which did not occur until the morning following the murder. (App. R-Vol. 6 at 768, App. Q-Vol. 4 at 411)  The officer who noted that the hairs had been recovered did not even attend the autopsy. (App. Q-Vol. 4 at 368)  The body remained at the crime scene until the medical examiner arrived, six hours after the first officer arrived.  (App. Q-Vol. 4 at 411, App. Q-Vol. 5 at 587) During the time that the body remained at the crime scene, Ms. Cribbs was examined by paramedics and crime scene personnel processed the scene.  (App. Q-Vol. 4 at 429-30, App. Q-Vol. 5 at 490)  Ms. Cribbs' body was found on the floor of a room of a house that had actively been on the real estate market and her hands had been bound prior to her death. (App. Q-Vol. 3 at 236, App. Q-Vol. 4 at 371, 375, 377-78, 380, 414-16, 419-20, 422-23, 433)  The crime

36

scene photographs showed that Ms. Cribbs' hands were left open with their palms up in the position in which they would have fallen when her hands were untied after her death.  (App. Q-Vol. 6 at 588, Trial Ex. 13A)   Thus, as Petitioner himself plead before the Florida Supreme Court, the hands were merely found in or on Ms. Cribbs' hand.  (App. G at 9, 12)  Moreover, as Petitioner himself argued to the jury, there was no evidence that Ms. Cribbs struggled with her murderer.   (App. Q-Vol. 6 at 601)   Under these circumstances, the hairs could have come from anyone who had been in the house in connection with its placement on the real estate market, any of the crime scene personnel or the paramedics, anyone associated with removing the body for autopsy or Ms. Cribbs herself.   Given the multitude of possible explanations for the hair, there was nothing unreasonable about the Florida Supreme Court holding that the alleged failure to inform Petitioner that the hair did not match his[4] did not create a reasonable probability of a different result.  *Williams*, 529 U.S. at 411. The claim should be denied.

Further, there was nothing unreasonable about the rejection of the claim that the State suppressed the fingerprint report or

---

[4]The record reflects that Petitioner was informed that hairs had been collected.  (App. Q-Vol. 1 at 46-47, App. Q-Vol. 8 at 832) Moreover, Petitioner has never claimed that he did not receive the report concerning the collection of the hairs at autopsy.  Instead, his claim has been limited to the report of the analysis of the hairs.

presented false testimony about it.  Petitioner was seen by a number of witnesses in the car where the print was found.  In fact, Petitioner admitted to having been in the car.  Counsel argued that the finding of Petitioner's print in the car signified nothing more than the fact that he had been in the car at some point.  As no one could say when the print was left, counsel argued that the print did not show that Petitioner committed the murder.  Further, Petitioner did not assert that the report showed that the fingerprint did not belong to someone who was known to have been in the house or car.  In fact, Petitioner did not assert that the fingerprint were not Ms. Cribbs' own.  Further, the fact that two experts disagreed does not show that either expert is lying. *See United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989); *United States v. Bailey*, 123 F.3d 1381, 1395-96 (11th Cir. 1997)(proof of perjury requires more than showing of mere memory lapse, unintentional error or oversight); *United States v. Michael*, 17 F.3d 1383, 1385 (11th Cir. 1994)(conflicts in testimony are insufficient to show perjury). Under these circumstances, there was nothing unreasonable about finding that the allegedly suppressed report was not material.  The claim should be denied.

While Petitioner also claims that he could have used the statement in the report about the failure to eliminate Ms. Cribbs as a source of the hairs and the discrepancy regarding the identification of the fingerprint to show that evidence was

mishandled, there was nothing unreasonable about rejecting this claim. The United States Supreme Court had stated that the failure to disclose evidence that was cumulative to evidence that was disclosed does not support a *Brady* claim. United States v. Agurs, 427 U.S. 97, 109 n.16 (1976)(quoting *Giles v. Maryland*, 386 U.S. 66, 98 (1967)(Fortas, J., Concurring)). Here, Petitioner had ample information about the fact that evidence had been mishandled. Petitioner was aware that the State had submitted the evidence for RFLP DNA testing that had failed. He also presented evidence that the medical examiner had failed to note that Ms. Cribbs' feet had been tied and had erred regarding the cause of death in an unrelated case. He pointed out that the State had not tested the knife or the blood in the sink. The alleged contamination regarding the hair consisted solely of the fact that the hairs from Ms. Cribbs had not been properly labeled. Under these circumstances, there was nothing unreasonable about rejecting the claim that the failure to disclose the report as evidence of contamination showed a *Brady* violation. *Williams*, 529 U.S. at 411. The claim should be denied.

Even if Petitioner could show that the AEDPA standard of review did not apply, he would still be entitled to no relief under *de novo* review. The Eleventh Circuit has held that a defendant must show that he could not have discovered the allegedly suppressed evidence through an exercise of due diligence to state

39

a *Brady* claim.  *High v. Head*, 209 F.3d 1257, 1265 (11th Cir. 2000) (finding *Strickler* has not abandoned due diligence requirement of *Brady*).  In fact, a number of other courts of appeal have reached the same conclusion.  *See United States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001) (holding *Brady* does not apply where evidence could have been discovered by defense with use of diligence); *United States v. Corrado*, 227 F.3d 528, 538 (6th Cir. 2000)(same); *United States v. Maloof*, 205 F.3d 819, 827 (5th Cir. 2000)(same); *Johns v. Bowersox*, 203 F.3d 538, 545 (8th Cir. 2000)(defining "state suppression" component of *Brady* as "[t]here is no suppression of evidence if the defendant could have learned of the information through 'reasonable diligence'"); *United States v. Hotte*, 189 F.3d 462 (2d Cir. 1999)(same).

Here, Petitioner was fully aware that the State was testing the hairs.  (App. Q-Vol. 1 at 46-47, App. Q-Vol. 8 at 848-50) Moreover, he was fully aware that the State did not present evidence that the hairs matched his after having tested them against his hairs.  Under these circumstances, Petitioner either knew that the results of the hair analysis was that the hair did not match his or could have learned of that result through an exercise of due diligence.  As such, the claim should be denied.

B.   INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING
     TO INVESTIGATE AND PRESENT EVIDENCE ABOUT A
     HOTEL REGISTRATION.

In his motion for post conviction relief, Petitioner asserted

that his counsel was ineffective for failing to investigate and

present evidence that he registered at the Buccaneer Lodge with

another man on the day of the murder in the guilt phase.  (App. R-

Vol. 6 at 799-800) He further contended that counsel should have

investigate and presented this evidence at the sentencing hearing.

(App. R-Vol. 6 at 833-34)   He also asserted that this evidence

showed that Det. Glover's testimony at the sentencing hearing was

incorrect.  (App. R-Vol. 6 at 799-800, 833-34) The post conviction

denied these claims:

> [Petitioner] next asserts that Counsel was
> ineffective for failure to investigate his defense that
> someone else had committed the crime.  In fact, there is
> nothing in the record to suggest that Counsel was given
> a theory of innocence to investigate.
> [Petitioner] first announced his own unsworn
> "theory" that an unnamed third person murdered the Victim
> after Counsel had withdrawn and [Petitioner] was
> representing himself.  This possible explanation for the
> Victim's murder was given in [Petitioner's] closing
> argument in the penalty phase that, of course, was not
> under oath.   Moreover, now, in his Motion for
> postconviction relief that is under oath, [Petitioner]
> still does not allege any exculpatory facts and he does
> not name the unknown murderer.
> [Petitioner] asserts in his Motion that he "told the
> jury at sentencing that another person kill the Ms.
> Cribbs and that this person was with him when he checked
> into the Buccaneer Lodge (R. 750)" (Motion, p. 52) In
> fact, [Petitioner's] argument to the jury was quite
> different: He does not state as fact that another person
> murdered the Victim; he does not states as fact that this
> third person accompanied him; and he does not state as
> fact that he checked into the Buccaneer Lodge.

41

"We know that somebody is dead.  But the testimony has not shown this third person could have or could have not been there. Let's say Lloyd loads him up in the car.  What kind of conversation could they have?  We don't know.  We have no testimony.  Just there could have been a third party."  (T.Tr. 752, 10 - 15, Exhibit 78)
And,

"Now, here is where we run into a little problem.  I don't know, the testimony that I hear is that a cab driver was called.  The testimony does not show whether Lloyd Chase Allen went up to that motel office and rented a room.  Nor does it show whether or not Lloyd Chase Allen and another individual went up to that motel and rented a room, which would be in a computer, I guess, documented.  It does not show one way or the other.  I guess that the detective didn't want to check it.  No, I remember what he said: It's not my job."  (T.Tr. 753, 12 - 22, Exhibit 79)

[Petitioner] did not give Counsel any theory of innocence to investigate prior to the sentencing phase. Thereafter, the theory was put forward as a possibility, not as fact.  Under those circumstances, Counsel cannot be deemed ineffective for failure to investigate [Petitioner's] subsequently disclosed theory of innocence.

The claim is denied.  *Strickland*.

(App. R-Vol. 8 at 1068-69)

On appeal from the denial of his motion for post conviction relief, Petitioner raised an issue regarding counsel's failure to investigate and present this evidence at the sentencing hearing. (App. G at 62-63) He also asserted that Det. Glover's testimony was false.  *Id.*  He did not assert the portion of the claim regarding ineffective assistance of counsel at the guilt phase on appeal. (App. G) The Florida Supreme Court affirmed the denial of this claim:

> [Petitioner] raises 18 claims, including subparts.
> [FN3] We summarily affirm the trial court's denial of 16
> of his claims because they are procedurally barred or
> lack merit. [FN5] . . . [FN3] [Petitioner] alleges: . .
> . (13) ineffective assistance of counsel for failing to
> challenge the State's evidence; . . . [FN5] . . . Claim
> 13 lacks merit because [Petitioner] was not prejudiced by
> counsel's performance in the guilt phase and he
> represented himself during the penalty phase.

*Allen II*, 854 So. 2d at 1257-58 (footnote 4 omitted).

As seen above, the state post conviction court corrected

identified *Strickland* as supplying the standard against which this

claim was to be considered.[5]   The Florida Supreme Court also

correctly identified *Strickland* as providing the standard to

adjudicate claims of ineffective assistance of counsel and

accurately enunciated that standard.  *Allen II*, 854 So. 2d at 1261.

While Petitioner suggests that the Florida Supreme Court did not

consider the cumulative effect of his ineffective assistance

claims, the Florida Supreme expressly stated it did.  *Allen II*, 854

So. 2d at 1257 n.3 & 1258 n.5.  Even if the Florida Supreme Court

had not done so, the Eleventh Circuit has made clear that the

failure to analyze claims distinctly does not deprive a state

courts' rejection of the claim of AEDPA deference.  *Isaacs v. Head*,

300 F.3d 1232, 1258-60 (11th Cir. 2002); *Wright v. Moore*, 278 F.3d

1245 (11th Cir. 2002).  Moreover, the facts of this claim are not

---

[5]To the extent that Petitioner is seeking relief based on the
allegedly knowing presentation of false testimony at the sentencing
hearing, the issue will be discussed in Point III, *infra*, as it
concerning the sentencing phase before the judge, not the guilt
phase before the jury.

materially indistinguishable for the facts of any of the United States Supreme Court ineffective assistance precedent. As such, the rejection of this claim was not contrary to *Strickland*. *Williams*, 529 U.S. at 412-13.

Moreover, the rejection of this claim was not an unreasonable application of *Strickland*. As seen above, the Florida Courts found that counsel was not ineffective for failing to investigate the alleged third person killer defense, as no such defense had ever been presented as fact and no such defense was provided to counsel. Petitioner has not shown that these factual findings are incorrect by clear and convincing evidence.[6]   28 U.S.C. §2254(e)(1). Moreover, these findings are fully supported by the record. During his penalty phase closing argument, Petitioner did not state as fact that a third person was picked up at the airport and killed Ms. Cribbs. (App. Q-Vol. 7 at 748-58) In his motion for post conviction relief, Petitioner merely relied on the possible scenario that he had presented to the jury without asserting any facts. (App. R-Vol. 6 at 799) Moreover, Petitioner admitted in a radio interview that was admitted at the penalty phase that he did

---

[6]To the extent that Petitioner may claim that these factual findings are not entitled to deference because they were made based upon a review of the record, the United States Supreme Court has rejected the assertion that factual findings made after a review of the record are entitled to less deference that other factual findings. *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981).

not offer this "scenario" to counsel.   (App. Q-Vol. 8 at 905) In

*Strickland*, the Court acknowledged that:

> The reasonableness of counsel's actions may be
> determined or substantially influenced by the defendant's
> own statements or actions. Counsel's actions are usually
> based, quite properly, on informed strategic choices made
> by the defendant and on information supplied by the
> defendant. In particular, what investigation decisions
> are reasonable depends critically on such information.
> For example, when the facts that support a certain
> potential line of defense are generally known to counsel
> because of what the defendant has said, the need for
> further investigation may be considerably diminished or
> eliminated altogether. And when a defendant has given
> counsel reason to believe that pursuing certain
> investigations would be fruitless or even harmful,
> counsel's failure to pursue those investigations may not
> later be challenged as unreasonable. In short, inquiry
> into counsel's conversations with the defendant may be
> critical to a proper assessment of counsel's
> investigation decisions, just as it may be critical to a
> proper assessment of counsel's other litigation
> decisions. *See United States v. Decoster*, *supra*, at
> 372-373, 624 F.2d, at 209-210.

*Strickland*, 466 U.S. at 691.   Under these circumstances, there was

nothing unreasonable about the State Courts' rejection of this

claim.   *Williams*, 529 U.S. at 411. This is particularly true, as

evidence that Petitioner checked into a hotel after the murder with

another person would not establish that the person was with

Petitioner earlier when he killed the victim.   The claim should be

denied.

    C.   INEFFECTIVE ASSISTANCE FOR FAILING TO REQUEST
         A *FRYE* HEARING.

In his post conviction motion, Petitioner asserted that his

counsel was ineffective for the manner in which he used his DNA

expert and for failing to request a hearing regarding the
admissibility of the DNA evidence pursuant to *Frye v. United
States*, 293 F. 1013 (D.C. Cir. 1923). (App. R-Vol. 6 at 796-99)
The post conviction court denied this claim:

> [Petitioner] first asserts that Counsel was
> ineffective for failing to fully use the services of his
> DNA expert to challenge the State's DNA evidence. This
> sort of conclusory allegation without the recitation of
> a single substantiating fact does not require a response.
>
> [Petitioner] next asserts that Counsel was
> ineffective for failure to request a *Frye* hearing. In
> particular, [Petitioner] relies *Murray v. State*, 692
> So.2d 157 (Fla. 1997), to demonstrate that he was
> prejudiced by Counsel's ineffectiveness.
>
> The crime and defendant's trial in *Murray* were
> roughly contemporaneous with [Petitioner's] here. The
> Supreme Court reversed the conviction and death sentence
> of the defendant in *Murray* because the State did not
> satisfy both prongs of the *Frye* test. That is, the
> proponent must
>
>> "... prove the general acceptance of both
>> the underlying scientific principle and the
>> testing procedures used to apply that
>> principle to the facts of the case at hand."
>> *Id.*, *citing Ramirez v. State*, [651] So.2d
>> 1164, 1168 (Fla. 1995).
>
> The Supreme Court pointed out in *Murray* that the
> expert, Daniel Nippes - the same expert who testified for
> the State here with respect to the same procedure - not
> only did not explain the step by step procedure by which
> the PCR DNA test was conducted, but he specifically
> disclaimed any knowledge of the database he used. In
> other words, he was not qualified to offer an expert
> opinion concerning the frequency (or infrequency) that
> the defendant's DNA would appear in any population: he
> could not explain the application of the scientific
> "principle to the facts of the case at hand." However,
> *Murray* does not help [Petitioner] here.
>
> In *Murray*, the only demonstrative evidence that
> connected the defendant to the crime was a one of five
> pubic hairs found at the scene which allegedly contained
> the defendant's DNA; the test results of the other four
> hairs was found inconclusive. Therefore, the DNA
> evidence was "... particularly important to the State's

case in light of the fact that Murray was eliminated as the donor of all the other seminal and blood stains found at the crime scene." *Id.*, at 160. In this case there is no such mystery as to [Petitioner's] presence.

The State's serology witness testified that the blood and seman stains found at the crime scene were consistent with the blood type of the Victim and [Petitioner]. (T.Tr. 480, 11 - 481, 4, Exhibit 74) The Victim's blood found on [Petitioner's] jeans was type B, which occurs in 10 percent of the population. (T.Tr. 488, 25 - 489, 16, Exhibit 75) Neither the serologist nor the DNA expert could testify as to when the blood got on the jeans. (T.Tr. 489, 40-22, Exhibit 76 & T.Tr. 519, 18 - 21, Exhibit 77)

The DNA evidence did not prove the culpability of [Petitioner] with respect to the Victim's murder. The semen, blood, and DNA evidence simply went to confirm [Petitioner's] presence in Summerland Key with the Victim, a fact that was not in dispute. The failure to conduct a *Frye* hearing or, alternatively, the exclusion of the DNA evidence would not have affected the outcome of the trial.

Counsel may be criticized for failure to seek a *Frye* hearing. However, assuming for the sake of argument that the failure constituted such a deficient performance as would meet the first prong of *Strickland*, the Court finds that the prejudice prong would not have been met. Therefore, [Petitioner] is not entitled to any relief on this claim.

(App. R-Vol. 8 at 1066-68)

On appeal from the denial of his motion for post conviction relief, Petitioner raised on issue regarding the denial of the claim about the *Frye* hearing. (App. G at 17-18) Petitioner did not raise the portion of the issue concerning the alleged deficiency in the manner in which counsel used his DNA expert. (App. G)   The Florida Supreme Court affirmed the denial of this claim:

[Petitioner] raises 18 claims, including subparts. [FN3] We summarily affirm the trial court's denial of 16 of his claims because they are procedurally barred or lack merit. [FN5] . . . [FN3] [Petitioner] alleges: . .

47

. (4) ineffective assistance of counsel for failing to
request a Frye hearing . . . [FN5] Claims 2, 3, 4, 6, 7,
and 11 lack merit because [Petitioner] was not prejudiced
by the alleged errors.

*Allen II*, 854 So. 2d at 1257-58 (footnote 4 omitted).

As can be seem from the foregoing, the state post conviction
court correctly identified *Strickland* as providing the standard
against which to evaluate this claim.  The Florida Supreme Court
also correctly identified *Strickland* as providing the standard to
adjudicate claims of ineffective assistance of counsel and
accurately enunciated that standard.  *Allen II*, 854 So. 2d at 1261.
While Petitioner suggests that the Florida Supreme Court did not
consider the cumulative effect of his ineffective assistance
claims, the Florida Supreme expressly stated it did.  *Allen II*, 854
So. 2d at 1257 n.3 & 1258 n.5.  Even if the Florida Supreme Court
had not done so, the Eleventh Circuit has made clear that the
failure to analyze claims distinctly does not deprive a state
courts' rejection of the claim of AEDPA deference.  *Isaacs v. Head*,
300 F.3d 1232, 1258-60 (11th Cir. 2002); *Wright v. Moore*, 278 F.3d
1245 (11th Cir. 2002). Moreover, the facts of this claim are not
materially indistinguishable for the facts of any of the United
States Supreme Court ineffective assistance precedent.  As such,
the rejection of this claim was not contrary to *Strickland*.
*Williams*, 529 U.S. at 412-13.

Moreover, the rejection of this claim was not an unreasonable
application of *Strickland*.  Blood group testing showed that the

blood found on Petitioner's clothing matched the victim and 10 percent of the population. (App. Q-Vol. 5 at 488-89) Blood group testing also showed that the semen stain was consistent with a mixture of fluid from Petitioner and the victim. (App. Q-Vol. 5 at 480-81) The DNA testing revealed the same population frequencies with regard to the blood on Petitioner's clothing. (App. Q-Vol. 5 at 514) As such, the State would have been able to make the same argument concerning the bloody jeans regardless of the admissibility of the DNA evidence. Moreover, as Petitioner asserted at trial, nothing about the DNA test results showed when the blood had come to be on Petitioner's jeans or the semen had come to be on the towel. (App. Q-Vol. 5 at 489-80) As such, as Petitioner argued to the jury, these DNA test results only established that Petitioner had been at the house at sometime, a point which Petitioner did not contest at trial. (App. Q-Vol. 6 at 561-62) Under these circumstances, there was nothing unreasonable about determining that the failure to request a *Frye* hearing did not create a reasonable probability of a different result. *Williams*, 529 U.S. at 411. This is particularly true, as the Florida Supreme Court has since determined that PCR DNA testing does meet *Frye*. *See Zack v. State*, 911 So. 2d 1190, 1198 n.3 (Fla. 2005). The claim should be denied.

D.   INEFFECTIVE ASSISTANCE FOR DISCUSSING THE
     POSSIBILITY OF SUICIDE.

In his motion for post conviction relief, Petitioner asserted that counsel was ineffective for suggesting that Ms. Cribbs committed suicide. (App. R-Vol. 6 at 800-04) The post conviction court denied this claim:

> [Petitioner] claims that Counsel was ineffective for presenting suicide as a possible cause of the Victim's death.
> The medical examiner described as "highly improbable" the theory that the Victim committed suicide by stabbing herself, but he could not definitively rule it out. (T.Tr. 430, 15 - 25, Exhibit 80) In any case, suicide was not the lynch pin theory of the case such that if the jury did not accept it, Counsel provided no alternatives.
> Counsel established that there were no fingerprints in the house; that [Petitioner] had no motive to clean the crime scene since his presence in the house was not in question; that the medical examiner never established the knife found at the scene as the murder weapon; that the source of the blood stain in the sink was never established; and that there [was] a period time in excess of one hour just before the Victim's body was discovered during which unknown persons could have entered and/or left the house.
> In his closing argument, (T.Tr., generally, 549 - 575, Exhibit 81 & T.Tr. 599 - 611, Exhibit 82), Counsel argued reasonable doubt as to [Petitioner's] guilt. He pointed out that [Petitioner] did not have to travel to the Florida Keys in order to steal the Victim's $4,100.00.[FN10] He pointed out that [Petitioner] did not have to wipe down the house for prints because [Petitioner] was the only person having a legitimate excuse to be in the house. He reiterated the possibility that an elderly widow had been led to suicide after being humiliated by a con man whom she had shown off as her new love but who had been obviously been interested only in stealing her money. Counsel argued that the authorities had conducted a sloppy investigation and that [Petitioner], who was a drifter and who had concealed his true identity, made a convenient suspect. Finally, he pointed out that the entirely circumstantial evidence did

50

not definitively establish that the murder was not
committed by an unknown third person.
      Under the facts of this case, Counsel's assistance
cannot be said to be ineffective.  *Strickland*.

                        *  *  *  *

[FN10] [Petitioner's] post guilt phase discussion with
the Court and statement and argument to the jury make it
clear that Counsel did not have the benefit of the theory
that [Petitioner] traveled to the Keys to assist the
Victim in selling her house so that he could steal a
larger sum.  (T.Tr. 670, 1 - 21, Exhibit 83, T.Tr. 716,
13 - 718, 25, Exhibit 84 & T.Tr. 733, 1 -762, 14, Exhibit
85)

(App. R-Vol. 8 at 1069-71)

     On appeal from the denial of his motion for post conviction

relief, Petitioner again raised this issue.  (App. G at 18-23)  The

Florida Supreme Court affirmed the denial of this claim:

          [Petitioner]  also  claims  trial  counsel  was
     ineffective for suggesting to the jury that the victim
     may have committed suicide. Claims of ineffective
     assistance  of  counsel  must  satisfy  the  two-pronged
     *Strickland* standard - i.e., that counsel's performance
     was  deficient  and  that  the  deficient  performance
     prejudiced the defendant. 466 U.S. at 687. "Both the
     performance  and  prejudice  components  of  the
     ineffectiveness inquiry are mixed questions of law
     and fact." *Id.* at 698. Therefore, both components are subject
     to independent review. *See Stephens v. State*, 748 So. 2d
     1028, 1034 (Fla. 1999). In *Strickland*, however, the Court
     noted:

               [T]here is no reason for a court deciding an
          ineffective assistance claim to approach the
          inquiry in the same order or even to address
          both  components  of  the  inquiry  if  the
          defendant makes an insufficient showing on
          one. In particular, a court need not determine
          whether counsel's performance was deficient
          before examining the prejudice suffered by the
          defendant  as  a  result  of  the  alleged
          deficiencies. The object of an ineffectiveness

                              51

> claim is not to grade counsel's performance.
> If it is easier to dispose of an
> ineffectiveness claim on the ground of lack of
> sufficient prejudice, which we expect will
> often be so, that course should be followed.

*Id.* at 697. Because we hold that [Petitioner] fails to
establish prejudice, we do not address whether his
counsel's performance was deficient.

To establish prejudice under *Strickland*, a
"defendant must show that there is a reasonable
probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been
different." *Strickland*, 466 U.S. at 694. "Reasonable
probability" is defined as "a probability sufficient to
undermine confidence in the outcome." *Id.* [Petitioner]
cannot meet this standard.

Although trial counsel did question the medical
examiner about the possibility of suicide, such
questioning was only a small part of an overall defense
that [Petitioner] did not commit the murder. Consistent
with this defense, counsel attempted to establish
reasonable doubt by demonstrating that the State
conducted a cursory and error-prone investigation.
Counsel showed that (1) the crime scene technician did
not send the medical examiner the knife found at the
scene for comparison with the victim's wounds; (2) the
knife was not examined for rag or fiber traces; (3) blood
found in the sink was never tested; and (4) the medical
examiner initially overlooked the fact that the victim
may have been tied. Counsel also exposed that, in a
previous case, the medical examiner ruled that a
stab-victim had died of drowning. Counsel further
established that the medical examiner summarily ruled out
suicide as a cause of death even though it would have
been medically possible for the victim to have stabbed
herself. Counsel used the suicide theory merely to
illustrate his argument about the superficial nature of
the State's investigation. Although this particular
illustration may not have helped [Petitioner] cause, it
did not undermine it either. Therefore, there is no
reasonable probability that but for counsel's suggestion
that the victim committed suicide, the result of the
proceeding would have been different.

*Allen II*, 854 So. 2d at 1261.

As can be seem from the foregoing, the state post conviction court correctly identified *Strickland* as providing the standard against which to evaluate this claim.  The Florida Supreme Court also correctly identified *Strickland* as providing the standard to adjudicate claims of ineffective assistance of counsel and accurately enunciated that standard.  *Allen II*, 854 So. 2d at 1261. While Petitioner suggests that the Florida Supreme Court did not consider the cumulative effect of his ineffective assistance claims, the Florida Supreme expressly stated it did.  *Allen II*, 854 So. 2d at 1257 n.3 & 1258 n.5.  Even if the Florida Supreme Court had not done so, the Eleventh Circuit has made clear that the failure to analyze claims distinctly does not deprive a state courts' rejection of the claim of AEDPA deference.  *Isaacs v. Head*, 300 F.3d 1232, 1258-60 (11th Cir. 2002); *Wright v. Moore*, 278 F.3d 1245 (11th Cir. 2002). Moreover, the facts of this claim are not materially indistinguishable for the facts of any of the United States Supreme Court ineffective assistance precedent.  As such, the rejection of this claim was not contrary to *Strickland*. *Williams*, 529 U.S. at 412-13.

Moreover, the rejection of this claim was not an unreasonable application of *Strickland*.  As the State Courts found, the defense at trial was not that the victim committed suicide but that the jury should have a reasonable doubt about who killed Ms. Cribbs because the State did a sloppy job investigating the case, had no

direct evidence regarding the killing and had simply charged Petitioner because he was a convenient suspect. (App. Q-Vol. 6 at 549-76) As part of this defense, Petitioner pointed out that the State had presented a great deal of evidence to show that Petitioner was in Ms. Cribbs' house and car, which was not in dispute. However, the State did not submit the knife for testing either for trace evidence or to show that it was the murder weapon and did not test the blood in the sink. Petitioner also pointed out that the medical examiner had done a sloppy job and had made major mistakes about the cause of death in a prior case. As the medical examiner could not explain the lack of bruising and evidence of a struggle and could not say when Ms. Cribbs was tied and untied other than before her death, Petitioner pointed out that Ms. Cribbs could have been tied and untied before the fatal attack.[7] Given the alleged mistakes in the investigation, Petitioner asserted that it was possible that another person had killed Ms. Cribbs. He also contended that suicide was a possibility in a scenario where Ms. Cribbs was tied and untied, had a fight with Petitioner that caused him to leave and then stabbed herself to death. Given that Petitioner is still alleging that the police mishandled the case and accused Petitioner out of convenience, it was not unreasonable for the State Courts to find

---

[7]As Petitioner himself showed at trial, the evidence does not establish that Ms. Cribbs was bound when she was stabbed, contrary to Petitioner's assertions in this petition.

that the alleged ineffectiveness in the presentation of the possibility of suicide did not create a reasonable probability that Petitioner would not have been convicted. *Williams*, 529 U.S. at 411. The claim should be denied.

While Petitioner asserts that it was unreasonable for the State Courts to find that the suicide evidence was merely advanced as an illustration of a reasonable doubt defense, his only evidence of this is his selected quotation from the record. However, the mere fact that a record contains evidence that would support a conclusion contrary to that reached by a lower court does not provide a basis for rejecting a factual finding. *See Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985). This is particularly true as "for a writ to issue because the state court made an 'unreasonable determination of the facts,' the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.' 28 U.S.C. §2254(e)(1)." *Gilliam v. Sec'y for the Dept. of Corrections*, 480 F.3d 1027, 1032 (11th Cir. 2007)(alterations in original). Here, a review of the closing argument in its totality does support the conclusion that suicide theory was merely presented as an illustration of why the jury should have had a reasonable doubt based on the sloppiness of the investigation. Petitioner's suggestion to the contrary should be rejected and the claim denied.

55

E.   INEFFECTIVE ASSISTANCE FOR FAILING TO IMPEACH
     MR. WOODS.

In his motion for post conviction relief, Petitioner asserted
that his counsel was ineffective for failing to impeach Larry Woods
with inconsistencies between Woods' description of Petitioner at
the time of the crime and Petitioner's appearance at the time of
the filing of the post conviction motion.   (App. R-Vol. 6 at 793-
94) He also asserted that counsel was ineffective for failing to
ask if Woods had seen anyone else at the victim's house on the day
of the murder.   The post conviction court denied these claims:

> [Petitioner] alleged IAC because on cross-
> examination of Larry Woods, Counsel failed to bring out
> Woods' prior, allegedly inconsistent, description of
> [Petitioner] to the Sheriff. Specifically, [Petitioner]
> claims that Woods had incorrectly described his gender
> and general appearance. [Petitioner] also claims IAC
> because Counsel failed to inquire whether Woods had seen
> anyone else near the Victim's house, a fact [Petitioner]
> claims, if established, would have bolstered the his
> argument that someone else committed the crime.
>      Woods testified that he was installing siding on a
> house across the street from the Victim's.   (T.Tr. 383,
> 8 - 25, Exhibit 55) Approximately 30 to 40 minutes before
> Woods went to lunch, a man came out of the Victim's house
> and twice started to approach him.  (T.Tr. 384, 22 - 385,
> 15, Exhibit 56 & T.Tr. 391, 12 - 20, Exhibit 57) When he
> got back from lunch over an hour later, (T.Tr. 385, 18 -
> 19, Exhibit 58 & T.Tr. 387, 2 - 4, Exhibit 59), he saw
> that the Victim's car that had been under the her house
> in the morning was gone.  (T.Tr. 387, 5 - 6, Exhibit 59)
> Soon thereafter, the real estate agent who looked after
> the Victim's house arrived and discovered the body.
> (T.Tr. 387, 7 - 15, Exhibit 59)
>      Woods testified that he was questioned the rest of
> the afternoon, that he assisted the Sheriff's Office in
> making a composite drawing of the man he saw in the
> morning, that he was able to identify the man as being
> the same one in photographs shown him later that
> afternoon by the Sheriff, that the composite drawing he

56

assisted in making compared favorably with the photographs, and that [Petitioner] was the man who approached him and was in the composite and photographs. (T.Tr. 387, 19 - 389, 10, Exhibit 60)  Woods also noted that [Petitioner's] appearance had changed in that he had gained weight and his hair was no longer as curly as it had been.  (T.Tr. 389, 12 - 20, Exhibit 61)

In view of his testimony at trial, [Petitioner] cannot be said to have been prejudiced by Counsel's failure to inquire about Woods' allegedly inconsistent prior description to the Sheriff.

[Petitioner] also claims IAC because Counsel failed to ask Woods whether he saw anyone else near the house on the morning of the murder.  However, as set out above, Woods testified that he left the area to go to lunch and was gone for over an hour.  Counsel established that Woods had not seen anyone else go near the house while he was there, (T.Tr. 392, 6 - 8, Exhibit 62), and that he had no knowledge of what transpired during his lunch period.  (T.Tr. 393, 13 - 15, Exhibit 63) To the extent that [Petitioner] claims that some unknown third person committed the crime, Counsel established the window of opportunity to support [Petitioner's] theory.

Counsel was not ineffective.  The claim is denied. *Strickland*.

(App. R-Vol. 8 at 1061-63)

On appeal from the denial of his motion for post conviction relief, Petitioner again raised these issues.  (App. G at 23-25) The Florida Supreme Court affirmed the denial of the claims:

[Petitioner] raises 18 claims, including subparts. [FN3] We summarily affirm the trial court's denial of 16 of his claims because they are procedurally barred or lack merit. [FN5] . . . [FN3] [Petitioner] alleges: . . . (6) ineffective assistance of counsel for failing to impeach Larry Woods;  . . . [FN5] Claims 2, 3, 4, 6, 7, and 11 lack merit because [Petitioner] was not prejudiced by the alleged errors.

*Allen II*, 854 So. 2d at 1257-58 (footnote 4 omitted).

As can be seen from the forgoing, the State post conviction court properly determined that *Strickland* supplied the standard to

57

evaluate this claim.  The Florida Supreme Court also correctly identified *Strickland* as providing the standard to adjudicate claims of ineffective assistance of counsel and accurately enunciated that standard.  *Allen II*, 854 So. 2d at 1261.  While Petitioner suggests that the Florida Supreme Court did not consider the cumulative effect of his ineffective assistance claims, the Florida Supreme expressly stated it did.  *Allen II*, 854 So. 2d at 1257 n.3 & 1258 n.5.  Moreover, the facts of this claim are not materially indistinguishable for the facts of any of the United States Supreme Court ineffective assistance precedent.  As such, the rejection of this claim was not contrary to *Strickland*.  *Williams*, 529 U.S. at 412-13.

Moreover, the rejection of this claim was not an unreasonable application of *Strickland*.  As the state court found, counsel did ask Mr. Woods if he had seen anyone else around the house that morning.  (App. Q-Vol. 4 at 392) As counsel did ask Mr. Woods if he had seen anyone else around the house that morning, the determination that counsel was not ineffective for failing to do so was not an unreasonable application of *Strickland*.  *Williams*, 529 U.S. at 411.

Moreover, while Petitioner asserts that Mr. Woods should have been impeached with inconsistencies between Mr. Woods' description of Petitioner at the time of the crime and Petitioner's present appearance, Petitioner ignores that his appearance had changed.

58

Evidence was presented at trial that Petitioner had gained weight since the time of the crime.  (App. Q-Vol. 4 at 269, 364, 389) In fact, Mr. Woods testified that Petitioner was much heavier than at the time of the crime.  (App. Q-Vol. 4 at 389)  Moreover, Mr. Woods testified that Petitioner's hair had changed since the time of the crime.  (App. Q-Vol. 4 at 389) The fact that Defendant's hair is light brown is not inconsistent with a description of sandy blonde hair, a shade of brown.  In fact, the jury saw a picture of Petitioner's appearance at the time of the crime.  (App. Q-Vol. 4 at 388) Given this change in Petitioner's appearance between the time of the crime and the time of trial, it was not unreasonable for the State Courts to find that attempting to impeach Mr. Woods about it would not have affected the outcome. *Williams*, 529 U.S. at 411. This is particularly true since Petitioner admitted to being the person who approached Mr. Woods.  (App. Q-Vol. 7 at 750-51) The claim should be denied.

F.   INEFFECTIVE ASSISTANCE FOR FAILING TO CALL MS. MCCLAIN.

In his post conviction motion, Petitioner asserted that his counsel was ineffective for failing to call Tonia McClain as a witness during trial.  Petitioner asserted that counsel should have elicited that Ms. McClain had stated in a pretrial interview that she had seen two cars at Ms. Cribbs' house the night before, and morning of, the murder and that she had seen a woman and a man that did not match Petitioner's appearance at the time of the post

59

conviction proceedings at the house on the morning of the murder. (App. R-Vol. 6 at 794-95) The post conviction court denied this claim:

> [Petitioner] claims that Counsel was ineffective because he failed to use the testimony of Tania McLean[FN8] to bolster the unknown, third-person murderer theory. [Petitioner] alleges that Ms. McLean would have testified that there were two cars parked at the Victim's house the evening before the body was discovered. He also alleges that she would have testified that both cars were there in the morning. She would also have testified that she saw a thin, young looking man with dirty blond hair on the porch of the Victim's house with a heavy-set female.
>
> However, under oath at her deposition, Ms. McLean testified that she lived across the canal from the Victim, (Depo. bottom p. 1 to top p. 2, Exhibit 64); that she saw two persons on the Victim's porch when she went out to check her fishing pole (Depo., top p. 2, Exhibit 65); that she didn't wear her glasses when she went out to check her fishing pole (Depo., p. 4 - (b), Exhibit 66; that without her glasses she "... see[s] people but I don't see,: (depo, p. 4 - (b), Exhibit 66; that she could not identify the Victim if she saw her (Depo., p. 4 - (c), Exhibit 66); that she would not recognize [Petitioner] if she saw him (Depo., middle p. 6, Exhibit 67); and that perhaps the second car she saw was a neighbor's car (Depo., bottom p. 3, Exhibit 68)
>
> Given the nature of the testimony Ms. McLean had to offer, Counsel can hardly be deemed ineffective for failing to call her.
>
> The claim is denied. *Strickland.*
>
>                 * * * *
>
> [FN8] The spelling of Ms. McLean's name is taken from her deposition. The Motion shows her name to be Tonia McClain.

(App. R-Vol. 8 at 1063-64)

On appeal from the denial of the motion for post conviction relief, Petitioner again raised this claim.  (App. G at 25) The Florida Supreme Court affirmed the denial of the claim:

> [Petitioner] raises 18 claims, including subparts. [FN3] We summarily affirm the trial court's denial of 16 of his claims because they are procedurally barred or lack merit. [FN5] . . . [FN3] [Petitioner] alleges: . . . (7) ineffective assistance of counsel for failing to elicit the testimony of Tania McLean;   . . . [FN5] Claims 2, 3, 4, 6, 7, and 11 lack merit because [Petitioner] was not prejudiced by the alleged errors.

*Allen II*, 854 So. 2d at 1257-58 (footnote 4 omitted).

As can be seen from the forgoing, the State post conviction court properly determined that *Strickland* supplied the standard to evaluate this claim.  The Florida Supreme Court also correctly identified *Strickland* as providing the standard to adjudicate claims of ineffective assistance of counsel and accurately enunciated that standard.  *Allen II*, 854 So. 2d at 1261.  While Petitioner suggests that the Florida Supreme Court did not consider the cumulative effect of his ineffective assistance claims, the Florida Supreme expressly stated it did.  *Allen II*, 854 So. 2d at 1257 n.3 & 1258 n.5.  Moreover, the facts of this claim are not materially indistinguishable for the facts of any of the United States Supreme Court ineffective assistance precedent.  As such, the rejection of this claim was not contrary to *Strickland*. *Williams*, 529 U.S. at 412-13.

Moreover, the rejection of this claim was not an unreasonable application of *Strickland*.  As seen above, Ms. McClain's sworn

61

deposition testimony did not support the assertion that there were two cars at the murder scene. Moreover, Ms. McClain admitted that she could not see the people at Ms. Cribbs' house clearly. Moreover, it should be remembered that Petitioner's appearance had changed between the time of the crime and the time of trial, as outlined in the claim regarding Mr. Woods. Given the deposition testimony, the change in Petitioner's appearance and the fact that Petitioner acknowledged being at the murder scene, there was nothing unreasonable about the State Courts' finding that presenting Ms. McClain's testimony would not create a reasonable probability of a different result. *Williams*, 529 U.S. at 411. The claim should be denied.

## POINT II.

**THE CLAIM OF ACTUAL INNOCENCE SHOULD BE DENIED.**

Petitioner next contends that he is entitled to habeas relief because he is actually innocent of the charges.  In support of his assertion that he is actually innocent, Petitioner relies upon the theory of how the crime may have been committed he submitted during penalty phase closing argument and the cumulative effect of the other claims he asserts.  However, Petitioner is entitled to no relief as the claim is unexhausted, procedurally barred, not cognizable and without merit.

In his post conviction motion, Petitioner asserted this claim. (App. R-Vol. 6 at 863-66) Petitioner also asserted in his post conviction motion that counsel was ineffective for failing to investigate his theory that someone else committed the crime and present evidence supporting that theory in the guilt phase.  (App. R-Vol. 6 at 799-800) Additionally, he argued that the State violated *Brady* by failing to disclose the two FDLE reports, that his counsel was ineffective for failing to request a *Frye* hearing and that the State knowingly presented false testimony regarding whether he was registered at the Buccaneer Lodge.  (App. R-Vol. 6 at 768-70, 796-99, 799-800, 833-34) Petitioner also claimed that counsel was ineffective during the guilt phase for failing to consult a independent medical examiner to show that the State's medical examiner's opinion regarding the length of time it took Ms.

Cribbs to lose consciousness and die was incorrect.  (App. R-Vol. 6 at 783-93) In the course of making this claim, Petitioner referred to the testimony of the State's medical examiner as false. *Id.*  In the claim that he was innocent of the death penalty, Petitioner reasserted this claim and specifically asserted that the State knowingly presented false testimony based on these same facts.  (App. R-Vol. 6 at 844-47)

The post conviction court denied the actual innocence claim:

[Petitioner] claims that he is actually innocent of the murder for which he was convicted.  Within the claim, [Petitioner] raises a number of issues:
a)   Someone else committed the crime.
b)   Counsel was ineffective for failing to discover documentary evidence and other evidence that would support [Petitioner's] innocence.
c)   Counsel was ineffective for arguing the suicide theory.
d)   Counsel was hindered by the State's misconduct with respect to the FDLE reports.
e)   The State relied on inadmissible DNA evidence presented by an expert who was later criticized by the Supreme Court for testimony that did not comply with the *Frye* test.
f)   The State presented false testimony concerning the victim's lingering consciousness and death.
Issues a) and b) are dealt with in Claim I, Issue 7, *supra*.
Because [Petitioner's] actual innocence is the single most important issue, it is worth reiterating that [Petitioner] had the opportunity at trial to attach a name to the third person who "theoretically" could have committed the crime.  He did not do so then and, significantly, he does not do so now in his motion for postconviction relief that is made under oath.  Further,
"Two requirements must be met in order to set aside a conviction or sentence because of newly discovered evidence.  First, the asserted facts 'must have been unknown by the trial court, by the party, or by counsel at

64

the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence.' Second, 'the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.'" *Torres-Arboleda v. Dugger*, 636 So.2d 1321, 1324-25 (Fla. 1994)(citations omitted).

There is no need to reach the second requirement because, based on [Petitioner's] theory that the murderer might have been the unnamed third person picked up at the Miami airport, (T.Tr., generally, 748-66, Exhibit 95 & T.Tr. 752-753, Exhibit 96), the evidence was known to [Petitioner] at the time of trial.

[Petitioner's] claim of actual innocence is purely conclusory and devoid of any facts that would entitle him to any relief, *Ragsdale*, *supra*, at 207, and consequently, is denied.

Issue c) was considered in Claim I, Issue 8, *supra*, and denied.

Issue d) was considered in Claim I, Issue 3(a), *supra*, and denied.

Issue e) was considered in Claim I, Issue 6(e), *supra*, and denied.

Issue f) was considered in Claim I, Issue 6(a), *supra*, and denied.

Claim X is denied.

(App. R-Vol. 8 at 1082-83)  Additionally, the post conviction court

rejected the claim regarding the length of time that it took Ms.

Cribbs to lose consciousness and die:

[Petitioner] claims IAC because Collateral Counsel has consulted with an expert in forensic pathology who would dispute both the length of time that the Victim was conscious and that it took her to bleed to death.

The guilt phase testimony of the medical examiner objectively described the manner in which the Victim died, the nature of her injuries, and the method by which her injuries were inflicted. (T.Tr., generally, 416-22, Exhibit 54) [Petitioner] does not allege a defense expert would have disputed that the Victim was conscious when she was bound and stabbed.  Nor does he claim that a different expert would have disputed that the Victim was stabbed three times with a fatal wound severing her carotid artery.  And he does not claim that the fatal

65

wound would have caused instantaneous death. [Petitioner] claims only that a different expert would have disputed the length of time that the Victim was conscious after she was stabbed and that it took for her to die.

Even if [Petitioner] were correct, a defense expert testifying differently would not lead to a different result. *See Atwater v. State*, 626 So.2d 1325, 1329 (Fla. 1993)("This Court has consistently upheld findings of heinous, atrocious, or cruel where the evidence shows the victim was repeatedly stabbed."); *Bates v. State*, 750 So.2d 6, 18 (Fla. 1999)(HAC when the victim would "... have been conscious for one to two minutes after infliction of the fatal stab wounds and fully aware of what had happened and was happening to her.  Her death occurred within five minutes after the stab wounds were inflicted due to loss of blood."); *Brown v. State*, 721 So.2d 274, 278 (Fla. 1998)(HAC where victim stabbed nine or 10 times and was conscious although attack took only a few minutes); *Rolling*, *supra*, at 296 (HAC where victim "... was awake between thirty and sixty seconds before losing consciousness and dying").

It follows that [Petitioner] has not shown that the result would have been different even if Counsel had presented a defense expert to dispute the medical examiner's testimony.

The merits, or lack thereof, of [Petitioner's] claim aside, this issue was fully argued in [Petitioner's] initial brief, see [Petitioner's] Initial Brief, Argument V,[FN7] and the matter was decided adversely to him. Having raised the matter on direct appeal, [Petitioner] cannot use a different argument to reargue the issue in postconviction proceedings.  *Harvey*, *supra*, at 1256.

The claim is denied.  *Strickland*.

* * * *

[FN7] Argument V - The trial court erred in finding as an aggravating factor, that the murder was especially heinous, atrocious and cruel, where the entire basis for that finding was the testimony of medical examiner Nelms to his "guess" that the Victim was conscious for fifteen minutes after the fatal stabbing ....

(App. R-Vol. 8 at 1960-61)  The post conviction court also denied

the *Brady* claim, the claim that counsel was ineffective for failing

to request a *Frye* hearing, the claim that counsel was ineffective

66

for failing to investigate and present evidence to support Petitioner's theory and the claim that the State knowing presented false testimony regarding the registration at the Buccaneer Lodge.[8] (App. R-Vol. 8 at 1041-44, 106-68, 1068-69) The post conviction court also denied the claim that Petitioner was innocent of the death penalty.[9] (App. R-Vol. 8 at 1078-80)

Petitioner did not raise the denial of the actual innocence claim in the appeal from the denial of his motion for post conviction relief. (App. G) Petitioner also did not raise the denial of the independent claim regarding the length of time that it took Ms. Cribbs to lose consciousness and die. (App. G) However, Petitioner raise the issue of the denial of his claim that he was innocent of the death penalty and discuss this assertion in connection with that claim. (App. G at 58-60) The Florida Supreme Court affirmed the denial of these claims.[10] *Allen II*.

To the extent that Petitioner is attempting to gain relief because he is actually innocent, this claim is unexhausted. As noted above, Petitioner did not raise this issue in the appeal of

---

[8]The post conviction court's analysis of these claims has been quoted in claim I, where the issues are independently raised. It will not be repeated here.

[9]The post conviction court's analysis of this claim had been quoted in Claim VI, where it is independently raised. It will not be repeated here.

[10]The manner in which the Florida Supreme Court disposed of the claims that were raised on appeal is quoted in Issues I and VI, where the claims are individually raised.

the denial of his motion for post conviction relief.  However, in order to exhaust a claim, it is necessary to raise that claim on appeal.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  Because the claim is unexhausted, this Court cannot grant relief based on this claim.  28 U.S.C. §2254(b).

Moreover, at this point the claim is procedurally barred. When a claim has not been exhausted in the state courts but would be barred if it were presented there, a federal court may rely upon the applicable state rules and bar the claims, since exhaustion would be futile.  *Teague v. Lane*, 489 U.S. 288, 297-299 (1991); *Tower v. Phillips*, 7 F.3d 206 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989).  Under Florida law, a defendant is procedurally barred from raising a claim in a successive post conviction proceeding where the basis for the claim was available at the time of a prior proceeding.  *Johnson v. Singletary*, 647 So. 2d 106, 109 (Fla. 1994); *Card v. Dugger*, 512 So. 2d 829, 830-31 (Fla. 1987). Here, the basis for the claim was clearly available at the time of the last post conviction proceedings in state court; Petitioner raised the claim in his motion.  As such, the claim is barred and should be denied as such.

Even if the claim was exhausted and was not procedurally barred, Petitioner would still be entitled to no relief.  While Petitioner suggests that *Schlup v. Delo*, 513 U.S. 298 (1995), *Herrera v. Collins*, 506 U.S. 390 (1993), *Kuhlmann v. Wilson*, 477

68

U.S. 436 (1986), *Stone v. Powell*, 428 U.S. 465 (1976), and either *Smith v. Murray*, 477 U.S. 527 (1986), or *Murray v. Carrier*, 477 U.S. 478 (1986),[11] establish that the United States Supreme Court have recognized a freestanding claim of actual innocence, this is untrue.   In *Powell*, merely noted that the costs associated with allowing broad review of convictions in federal habeas were high but were tolerated, regarding issues not involving the Fourth Amendment, because of "the need in a free society for an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty." *Powell*, 428 U.S. at 491 n. 31. As such, *Powell* did not recognize a freestanding claim of actual innocence.   In *Schlup*, *Kuhlmann*, *Smith*, *Carrier* and *Smith*, the Court did not address the issue of whether a defendant was entitled to federal habeas relief simply because he claimed to be innocent. Instead, the discussion of "innocence" in each of these cases was in the context of whether a defendant could obtain review of a different constitutional claim despite procedural obstacles to the review of the other constitutional claim for which the defendants were unable to show cause and prejudice.  *Schlup*, 513 U.S. at 313-16 (successive habeas petition); *Smith*, 477 U.S. at 537(claim barred because not raised on direct appeal in state court); *Carrier*, 477 U.S. at 495-96 (same); *Kuhlmann*, 477 U.S. at 452-54.

---

[11]Because Petitioner cites to the case as *Smith v. Murray*, 477 U.S. 478 (1986), the State is unsure whether Petitioner intended to cite to *Carrier* or *Smith*.

69

In fact, the Court in *Schlup* explained, at length, that the claims were not the same. *Schlup*, 513 U.S. at 313-16. As these cases are not about a freestanding claim of actual innocence, they do not support Petitioner's assertion that the United States Supreme Court has recognized that claim.

*Herrera* did concern a freestanding claim of actual innocence. However, it did not hold that such a claim was cognizable in a federal habeas proceeding. In fact, it rejected the claim. *Herrera*, 506 U.S. at 393 ("Petitioner urges us to hold that this showing of innocence entitled him to relief in this federal habeas proceeding. We hold that it does not."); *Id.* at 404-05 ("We have never held that [the fundamental miscarriage of justice exception] extends to freestanding claims of actual innocence."). The Court did leave open the possibility that a freestanding claim of actual innocence might in the future be recognized as a cognizable claim if (1) the petitioner made a "truly persuasive demonstration of 'actual innocence'" under an "extraordinarily high" standard of proof and (2) "there were no state avenue available to process such a claim." *Id.* at 417. In *House v. Bell*, 126 S. Ct. 2064, 2086-87 (2006), the Court recently reaffirmed that it had not held that a freestanding claim of innocence was cognizable but merely left the possibility open under the conditions stated above and continued to do so. As such, *Herrera* does not recognize a freestanding claim of actual innocence as Petitioner claims.

70

Moreover, even if Petitioner could make a truly persuasive showing that he is actually innocent by a extraordinary standard of proof,[12] he would still not meet the second condition for recognition of a freestanding claim of innocence set out in *Herrera*. As the Court recognized in *Herrera*, state clemency procedures are an available state avenue for processing freestanding claims of actual innocence, and Florida has such clemency procedures. *Herrera*, 506 U.S. at 411-17; Art. IV, §8, Fla. Const.; §940.01, Fla. Stat. Moreover, Florida Courts can grant a defendant a new trial based on newly discovered evidence showing that such evidence "would probably produce an acquittal on retrial." *Jones v. State*, 591 So. 2d 911, 915 (Fla. 1991). As Florida has several available avenues for processing a claim of actual innocence, Petitioner cannot meet the second condition for a freestanding claim of innocence to be cognizable. As such, the claim is not cognizable and should be rejected as such.

To the extent that Petitioner is attempting to assert this claim not as an independent grounds for relief but as a "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claims considered on the merits" under

---

[12]The State does not agree that he has made such a showing. As argued, *infra*, Petitioner has not even made a sufficient showing of "innocence" to satisfy the fundamental miscarriage of justice exception to the procedural default doctrine. As the Court recognized in *House*, more of a showing would be necessary to meet the hypothetical standard to have a freestanding claim of innocence recognized. *House*, 126 S. Ct. at 2087.

*Schlup*, 513 U.S. at 315 (quoting *Herrera*, 506 U.S. at 404), he is entitled to no relief.  Petitioner does not identify any barred claims about which he seeks merits consideration despite the bar. As such, there is no reason for this Court to consider whether Petitioner can establish his innocence as a gateway to consider any allegedly barred claim.  The claim should be denied.

Even if there was a barred claim mentioned, Petitioner would still be entitled to no relief.  Under *Schlup*, for a claim of actual innocence "[t]o be credible," it had to be supported with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. This new reliable evidence must establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schulp*, 513 U.S. at 327.  Moreover, this evidence must establish "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Further, courts have required that a petitioner have acted with diligence in pursuing relief. *In re Brown*, 457 F.3d 392, 395-96 (5th Cir. 2006); *Johnson v. United States*, 340 F.3d 1219, 1226-27 (11th Cir. 2003); *Drew v. Dep't. of Corrections*, 297 F.3d 1278, 1286-93 (11th Cir. 2002); *see also Hargrove v. Brigano*, 300 F.3d 717 (6th Cir. 2002); *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999).  In *Sibley v. Culliver*, 377 F.3d 1196, 1206 (11th

72

Cir. 2004), the Eleventh Circuit interpreted these requirements to require the production of actual evidence to support a claim of actual innocence.

Here, Petitioner did not present in state court, and does not present here, any new reliable evidence that he is innocent. In fact, he does not present any evidence at all. Instead, he relies exclusively on his unsworn theory of what the evidence did not exclude as a possibility from his penalty phase closing argument. The State court found that this was not even new information that could not have been known through an exercise of diligence at the time of trial. (App. R-Vol. 8 at 1083) The Eleventh Circuit has held that such a determination is a finding of fact. *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2001). Pursuant to 28 U.S.C. §2254(e)(1), a state court finding of fact is entitled to a presumption of correction that a petitioner must overcome by clear and convincing evidence. Petitioner had not alleged any evidence, much less clear and convincing evidence, showing that this finding is incorrect. As such, this Court is bound by that determination. As such, Petitioner does not even begin to meet the *Schlup* gateway. The claim should be denied.

An examination of *House* shows how lacking in merit this claim is. There, the defendant was convicted of murder in the beating death of a woman based on evidence that the victim's child had heard someone with a deep voice, such as the defendant had, inform

73

her mother that her father had been in an automobile accident and her mother leave with this person, evidence that the defendant was seen in the area near where the body was found the morning after the murder, evidence that the defendant had injuries to his hands, evidence that the defendant provided false statements to the police concerning his whereabouts during the time of the crime and the clothes he had worn at that time, evidence that the victim had semen consistent with Defendant's blood type on her clothes and evidence that the pants the defendant actually wore at the time of the crime had blood consistent with the victim's blood type on them.  The new evidence the defendant presented was DNA evidence conclusively showing that the semen was from the victim's husband, evidence that the blood collected from the victim had leaked at some point during its transportation for testing, probably contaminated the defendant's pants and more than likely accounted for the blood found on the pants given scientific evidence regarding the state of decomposition of the blood, evidence that the victim's husband had confessed to killing his wife accidentally during a fight and evidence that the victim's husband had attempted to establish a false alibi and had provided a false statement regarding his whereabouts on the night of the murder.  Even with the new evidence, the Court stated that the question of whether the defendant had satisfied the gateway actual innocence standard was a close question.  *House*, 126 S. Ct. at 2086.

74

Here, Petitioner has presented none of the evidence presented in *House*. In fact, he has merely presented his unsworn theory of a possibility that he believes the evidence did not exclude. Thus, Petitioner clearly does not meet the gateway under *Schlup*.

To the extent that Petitioner is merely attempting to assert that claims that he lists as showing his actual innocence as independent claims, he is entitled to no relief. Aside from the claim regarding the medical examiner, Petitioner raised the remaining claims he mentions in Point I. For the reasons asserted in response to Point I, these claims should be denied.

With regard to the claim concerning the medical examiner, Petitioner did not appeal the denial of this claim. As such, this claim is unexhausted. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Because the claim is unexhausted, this Court cannot grant relief on this claim; it can only be reviewed to the extent it can be denied. 28 U.S.C. §2254(b)(1)(A).

Here, the claim can be denied because it is procedurally barred. When a claim has not been exhausted in the state courts but would be barred if it were presented there, a federal court may rely upon the applicable state rules and bar the claims, since exhaustion would be futile. *Teague v. Lane*, 489 U.S. 288, 297-299 (1991); *Tower v. Phillips*, 7 F.3d 206 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989). Under Florida law, a claim cannot be raised in a successive motion for post conviction relief

when the basis for the claim existed at the time last post conviction motion was filed. Fla. R. Crim. P. 3.851(d)(2); *Davis v. State*, 742 So. 2d 233, 236 (Fla. 1999)(claim that could have been discovered through an exercise of due diligence at time that previous post conviction motion was filed are barred); *Buenoano v. State*, 708 So. 2d 941, 952-52 (Fla. 1998); *Zeigler v. State*, 632 So. 2d 48 (Fla. 1993)(claim barred where information could have been discovered earlier), *cert. denied*, 513 U.S. 830 (1994); *Agan v. State*, 560 So. 2d 222 (Fla. 1990)(same); *Demps v. State*, 515 So. 2d 196 (Fla. 1987)(same). Moreover, there is no provision under Florida law for a second appeal of the denial of a motion for post conviction relief to raise claims that were not raised in the appeal from the denial of the first motion. Here, Petitioner does not assert that the facts underlying this claim were not available through an exercise of due diligence at the time that the prior motion for post conviction was heard. The claim is not based on any fundamental change of constitutional law that has been declared retroactive. As such, if Petitioner were to attempt to raise this claim in state court at this time, it would be deemed procedurally barred. The claim should be denied.

Even if the claim was exhausted and not procedurally barred, Petitioner would still be entitled to no relief. The testimony that Petitioner asserts was "false" is the medical examiner's estimation that because 1/16 of the blood volume of a person flows

through a carotid artery and blood fully circulates through the body in one minute, Ms. Cribbs might have taken between 16 and 30 minutes to bleed to death and his guess that Ms. Cribbs would have remained conscious for close to 15 minutes. (App. Q-Vol. 4 at 419-20) The alleged basis for asserting that this testimony is false is that counsel could have presented a different expert to state that the medical examiner's estimation and guess were wrong. (Petition at 82). However, to demonstrate that the State knowingly presented false testimony, a defendant must show more than an inconsistency in testimony or mere memory lapse, unintentional error or oversight. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989); *see also United States v. Bailey*, 123 F.3d 1381, 1395-96 (11th Cir. 1997)(proof of perjury requires more than showing of mere memory lapse, unintentional error or oversight); *United States v. Michael*, 17 F.3d 1383, 1385 (11th Cir. 1994)(conflicts in testimony are insufficient to show perjury). As Petitioner's entire claim is based on a conflict in testimony between experts regarding an estimation and guess, he has not met this standard. The claim should be denied.

To the extent that Petitioner is attempting to assert that he is entitled to relief based on the alleged cumulative effect of the claims that he mentions, he is again entitled to no relief. The Eleventh Circuit has adopted the Fifth Circuit's test for cumulative error claims. *Cargill v. Turpin*, 120 F.3d 1366, 1386-87

(11th Cir. 1997).  The Fifth Circuit has held that to demonstrate cumulative error, a petitioner must show that the individual errors of a constitutional dimension have merit, that the errors were not procedurally barred and that the errors considered together deprived the petitioner of a fair trial.  *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992).  Here, the Florida Courts found all of Petitioner's claims to be procedurally barred, without merit or both.  As such, the Florida Courts did not act unreasonably in denying the cumulative error claim. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).  The claim should be denied.

## POINT III.

**THE CLAIMS REGARDING THE SENTENCING HEARING SHOULD BE DENIED.**

Petitioner next contends that he is entitled to habeas relief because his counsel was ineffective during the sentencing hearing and because the State violated *Giglio v. United States*, 405 U.S. 150 (1972). Specifically, Petitioner contends that counsel was ineffective for failing to present evidence showing that Petitioner had registered at the Buccaneer Lodge with another person on the day of the crime and for failing to object to the introduction of a radio interview Petitioner gave after trial. He also asserts that the testimony of Det. Glover regarding his investigation of the records of the Buccaneer Lodge was false and that its presentation violated *Giglio*. However, Petitioner is entitled to no relief.

In his post conviction motion, Petitioner asserted that counsel was ineffective at the sentencing hearing for failing investigate and present evidence to support Petitioner's theory of how the crime could have been committed. (App. R-Vol. 6 at 833-34) He also claimed that the State knowingly presented false testimony from Det. Glover. *Id.* Additionally, Petitioner asserted that his counsel was ineffective for failing to object to the admission of a tape of an interview he gave after trial as irrelevant. (App. R-Vol. 6 at 838-39) In making this claim, Petitioner did not assert that the post conviction court needed to consider the effect of the

79

alleged *Brady* violation and guilt phase ineffectiveness in assessing this claim. (App. R-Vol. 6 at 814-39) However, he did raised, as a separate claim and without specifying what errors had occurred or how they related, that the court should consider the cumulative effect of the errors that had allegedly occurred throughout the case. (App. R-Vol. 6 at 867-68)

The post conviction court denied the individual claim. (App. R-Vol. 8 at 1068-69) The post conviction court also rejected the cumulative error claim:

> The Court found no merit in any of the individual claims, issues and/or sub-issues raised by [Petitioner]. It follows that there can be no cumulative error. *See Downs v. State*, 740 So.2d 506, 509 (Fla. 1999)(finding that where the allegations of individual erro are found merit, a cumulative error argument based thereon must also fail).
> Claim XI is denied.

(App. R-Vol. 8 at 1084)

Petitioner raised the individual claim on appeal from the denial of his motion for post conviction relief. (App. G at 62-63) Petitioner also raised the denial of the cumulative error claim. (App. G at 66) The Florida Supreme Court affirmed the denial of the claims:

> [Petitioner] raises 18 claims, including subparts. [FN3] We summarily affirm the trial court's denial of 16 of his claims because they are procedurally barred or lack merit. [FN5] . . . [FN3] [Petitioner] alleges: . . . (13) ineffective assistance of counsel for failing to challenge the State's evidence; . . .(18) deprivation of a fair trial due to procedural and substantive errors as a whole. . . . [FN5] . . . Claim 13 lacks merit because [Petitioner] was not prejudiced by counsel's performance

> in the guilt phase and he represented himself during the
> penalty phase. . . .  Claim 18 lacks merit based on the
> disposition of [Petitioner's] other claims.

*Allen II*, 854 So. 2d at 1257-58 (footnote 4 omitted).

With regard to the portion of the claim that counsel should have investigate and presented evidence that Petitioner checked into the Buccaneer Lodge with another person at sentencing, the claim was properly denied.  As noted in Claim I.B., Petitioner never actually stated that he was with another person at Ms. Cribbs' house and instead simply stated that this was theory that the evidence did not exclude.  Further, the presence of another person with Petitioner at the hotel after the crime would not have shown that this person was with Petitioner at Ms. Cribbs' house during the murder.  Moreover, the *Strickland* court defined the prejudice needed to state a claim of ineffective assistance of counsel during a death sentencing proceeding as "whether there is a reasonable probability that, absent the errors, the sentencer -- including an appellate court, to the extent it independently reweighs the evidence -- would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.  However, lingering doubt is not a mitigating circumstance. *King v. State*, 514 So. 2d 354, 358 (Fla. 1987); *see also Oregon v. Guzek*, 546 U.S. 517 (2006); *Hannon v. State*, 941 So. 2d 1109, 1128 (Fla. 2006).  As such, the presentation of lingering doubt evidence at sentencing would not

81

have affected the balance of aggravators and mitigators.  As such, not only was it not contrary to, or an unreasonable application of, *Strickland* to reject the claim but also the rejection of the claim was proper. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).  The claim should be denied.

Moreover, the rejection of the claim that the State knowingly presented false testimony from Det. Glover at the sentencing hearing is not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent.  The Florida Supreme Court routinely applies the standard set out in *Giglio* to claims that the State knowingly presented false testimony. *Hannon v. State*, 941 So. 2d 1109, 1140 n.21 (Fla. 2006); *Ponticelli v. State*, 941 So. 2d 1073, 1088 (Fla. 2006); *Suggs v. State*, 923 So. 2d 419, 426 (Fla. 2005); *Mansfield v. State*, 911 So. 2d 1160, 1176 (Fla. 2005); *Guzman v. State*, 868 So. 2d 498, 505 (Fla. 2003); *Ventura v. State*, 794 So. 2d 553, 562 (Fla. 2001); *Maharaj v. State*, 778 So. 2d 944, 956 (Fla. 2000); *Routly v. State*, 590 So. 2d 397, 400 (Fla. 1991).  Moreover, here, Petitioner's claim was that Det. Glover's testimony that the Buccaneer Lodge did not have any record of Petitioner registering was false.  However, Det. Glover did not testify about records of Petitioner registering at the Buccaneer Lodge.  Instead, the testimony was:

> [The State:]   Did you check the records to
> find out if Dortha's Cribbs' car was
> registered to the Buccaneer Lodge from
> December 21, 1991?
> [Det. Glover:] Yes.
> [The State:]   Had it been?
> [Det. Glover:] There was nothing found?

(App. Q-Vol. 8 at 791) Det. Glover also stated that he did not

check to see if Richard Lee Brock was registered at the hotel.

(App. Q-Vol. 8 at 792)  Since Det. Glover did not testify about

Petitioner registering at the hotel, he could not have testified

falsely on the subject.  As such, the rejection of this claim was

not contrary to, or an unreasonable application of, *Giglio*.

*Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).  The claim should

be denied.

While Petitioner suggests that the AEDPA standard does not

apply to his *Giglio* claim because it was not expressly mentioned in

the Florida Supreme Court's opinion, he is incorrect.  The Eleventh

Circuit has held that it is not necessary for a state court to

explain its rejection of a claim for the AEDPA standard to apply.

*Wright v. Moore*, 278 F.3d 1245, 1253-56 (11th Cir. 2002).  As such,

the mere fact that the Florida Supreme Court did not particularly

mention this aspect of Petitioner's claim does not deprive the

claim of AEDPA deference.  As explained above, Petitioner is

entitled to no relief under such deference.  The claim should be

denied.

83

With regard to the portion of the claim asserting that counsel was ineffective for failing to object to the presentation of tape of his radio interview, the claim was properly denied, as counsel cannot be deemed ineffective for failing to raise a nonmeritorious argument. *See Diaz v. Sec'y for the Dept. of Corrections*, 402 F.3d 1136 (11th Cir. 2005); *United States v. Nyhuis*, 211 F.3d 1340, 1345-46 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). During his closing argument before the jury, Petitioner asserted an alternative theory of the crime.  In the radio interview, he provided a few more details of this theory. The State introduced the interview to show that an investigation had been done into some of the allegations and had been revealed them to be unsupported.  As the interview was presented to provide a complete version of Petitioner's new story, it was not irrelevant.  Further, Petitioner has not shown how the introduction of a more complete version of his exculpatory theory would have cause a reasonable probability that he would have received a life sentence.  As such, the claim was properly rejected by the state courts and should be denied by this Court.

To the extent that Petitioner is attempting to assert that he is entitled to relief based on the alleged cumulative effect of the claims that he mentions, he is again entitled to no relief.  The Eleventh Circuit has adopted the Fifth Circuit's test for cumulative error claims. *Cargill v. Turpin*, 120 F.3d 1366, 1386-87

(11th Cir. 1997).  The Fifth Circuit has held that to demonstrate cumulative error, a petitioner must show that the individual errors of a constitutional dimension have merit, that the errors were not procedurally barred and that the errors considered together deprived the petitioner of a fair trial.  *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992).  Here, the Florida Courts found all of Petitioner's claims to be procedurally barred, without merit or both.  As such, the Florida Courts did not act unreasonably in denying the cumulative error claim. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).  The claim should be denied.

## POINT IV.

**THE CLAIM REGARDING THE WAIVER OF MITIGATION SHOULD BE DENIED.**

Petitioner next contends that he is entitled to habeas relief because his counsel was ineffective for failing to investigate potentially mitigating evidence.  He asserts that this failure to investigate rendered Petitioner's waiver of mitigation involuntary. He alleges that Petitioner's self representation during the penalty phase did not obviate his counsel's alleged ineffectiveness.  He also contends that the trial court conducted an inadequate colloquy with Petitioner regarding his waiver of mitigation.  He contends that the finding that the claim was procedurally barred in the post conviction proceedings was erroneous.  Finally, he asserts that his death sentence is unconstitutional because the Florida Supreme Court could not conduct an appropriate proportionality review. However, Petitioner is entitled to no relief.

During the pendency of the direct appeal, Petitioner moved to relinquish jurisdiction to the trial court for resentencing.  (App. X)  In this motion, Petitioner asserted that his waiver of mitigation was inadequate, that his counsel conducted no investigation into the available mitigation and that mitigating evidence was available.[13]  The State objected to the relinquishment

---

[13]The mitigating evidence proffered in the motion to relinquish is almost identical to the mitigation proffer in the motion for post conviction relief.  *Compare* App. X to App. R-Vol. 6 at 822-27.

86

of jurisdiction.   (App. Y) The Florida Supreme Court denied the motion to relinquish.   (App. AA)

On direct appeal, Petitioner asserted that his waiver of mitigation was invalid because his counsel had not conducted an investigation into potential mitigation.  He also claimed that the fact that Petitioner represented himself at the penalty phase did not abrogate counsel's duty to have conducted the investigation, that his waiver was invalid because there was not a sufficient record colloquy supporting it, and that the procedure established in *Koon v. Dugger*, 619 So. 2d 246 (Fla. 1993), should have been applied by the trial court before accepting Petitioner's waiver. (App. A at 29-37) Petitioner also claimed that the trial court erred in allowing him to deny that he was from a troubled family and abused alcohol or drugs during his closing argument in the penalty phase.  (App. A at 38-42) Petitioner asserted that he lied when he made these denials.   *Id.*  In a footnote in the discussion of another issue, Petitioner asserted:

> There was, in Songer's case, unlike the present case, "significant mitigation" presented.  544 So. 2d at 1011. In the present case, there was no mitigation presented, because [Petitioner] had waived mitigation.   The invalidity of that waiver is the subject of Points II and III.   In the absence of any mitigation evidence, this Court cannot of course conduct a proportionality review of [Petitioner's] sentence.

(App. A at 63 n.61)

On cross appeal, the State argued that the trial court had erred in finding Petitioner's family history and military service

as mitigating circumstances.  (App. B at 92-95) The State argued that the only evidence supporting the finding of family history mitigation was a statement in the presentence investigation report (PSI) the trial court had considered that Petitioner's parents had divorced more than 30 years before the crime and that Petitioner chose to live with neither parent after the divorce. *Id.*  Given the time period that had elapsed, the lack of connection to Petitioner's conduct in killing Ms. Cribbs, and Petitioner's own statement that he was from a good family, the State asserted that this mitigation should not have been found. *Id.*  With regard to the military service, the State pointed out that Petitioner's military record was poor and that there was no evidence that Petitioner had been traumatized by his service. As such, the State asserted it should not have been found as mitigation. *Id.*

The Florida Supreme Court rejected all of these issues:

[Petitioner] first asserts that the court erred in accepting his waiver of mitigating evidence where defense counsel did not investigate possible mitigating evidence and there was no record showing of mitigation evidence as required by *Koon*. In *Koon* this Court established the procedure that must be followed when a defendant, against counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase. 619 So. 2d at 250. Counsel must inform the court on the record of the defendant's decision. Based upon an investigation, counsel must indicate whether there is mitigating evidence that could be presented and what that evidence would be. Defendant must then confirm on the record that counsel has discussed these matters with him, and despite counsel's recommendation, the defendant wishes to waive presentation of penalty phase evidence. *Id.* We established this rule because of "the problems inherent in a trial record that does not adequately reflect a

88

defendant's waiver of his right to present any mitigating evidence." *Id.*

In *Koon*, we determined that defense counsel committed no error in following Koon's instruction not to present evidence during the penalty phase because counsel had investigated potential mitigating evidence before trial and argued the existence of mitigating factors based upon testimony presented in the guilt phase. *Id.*

We find the procedure established in *Koon* inapplicable to this case for two reasons: 1) during the penalty proceedings before the jury, [Petitioner] asserted his right of self-representation and the court found him competent to represent himself in the penalty phase; and 2) the opinion in *Koon* did not become final until several months after [Petitioner's] sentencing was conducted.

As noted above, the court conducted a *Faretta* inquiry and determined that [Petitioner's] waiver of the right to counsel was voluntarily and intelligently made. The two mental health experts who examined [Petitioner] at the court's request also concluded that [Petitioner] was competent to proceed to the penalty phase. Thus, unlike *Koon*, in this case the penalty proceeding before the jury was conducted by a defendant who chose to represent himself and decided not to present mitigating evidence. *See Hamblen v. State*, 527 So. 2d 800, 802-04 (Fla. 1988).

However, we note that [Petitioner] was represented by counsel again during the sentencing proceeding. During deliberations as to [Petitioner's] sentence, the jury requested that it be given written copies of the jury instructions and that the penalty phase evidence be submitted to it. When the judge asked [Petitioner] if he had any objections, he requested permission "to step aside and let [defense counsel] take over all the legal things to follow." Defense counsel then re-undertook [Petitioner's] representation and offered no objection to the jury's request. Defense counsel's representation during the penalty proceeding was limited to this single issue, and the jury returned its recommendation of death several hours later.

Counsel, however, also represented [Petitioner] during the sentencing proceeding where the State

89

presented three witnesses to rebut the residual doubt argument that [Petitioner] had made to the jury during closing argument in the penalty proceeding. The State also presented into evidence a radio interview with [Petitioner] that was taped after the jury returned its recommendation of death. During argument to the court at sentencing, defense counsel stated that he had no mitigating factors to present because [Petitioner] refused to provide any and "repeatedly requested that I not plead for life in his case." Counsel further stated that he was "biting his lip" because he was "not allowed to open up and say everything that I would like to say and argue everything that I want to argue," but was instead respecting [Petitioner's] wishes on this matter and would "do exactly what [Petitioner] asked me to do." Although the judge asked defense counsel whether he had informed [Petitioner] about the statutory mitigating factors available, there was no indication that counsel had investigated [Petitioner's] background or history to determine whether particular mitigating evidence was available. Counsel also made no proffer of mitigating evidence that could be presented to the court.

While this procedure arguably fell short of that established in *Koon*, our ruling in *Koon* by its own terms is prospective only. 619 So. 2d at 250; *see also Elam v. State*, 636 So. 2d 1312, 1314 (Fla. 1994). The opinion in *Koon* did not become final until rehearing was denied in June 1993, over three months after sentencing occurred in the instant case. Because the *Koon* procedure was not applicable either during the penalty proceeding before the jury or during the sentencing proceeding before the judge, we find no error on this point.

In issue 3 [Petitioner] claims that the court erred by permitting him to deny the existence of mitigation during the penalty phase before the jury. [Petitioner] disavowed that he had a bad childhood, and stated that he did not have either an alcohol or drug problem. In summary, he stated that "there is not going to be any excuses today and there will not be any mitigating factors here."

We find no error in the trial court's handling of this matter. A defendant has a constitutional right to represent himself. *Faretta*, 422 U.S. at 819-21; *Hamblen*, 527 So. 2d at 804. As discussed above, the court determined that [Petitioner] was clearly competent to do

so. Thus, [Petitioner] was entitled to control the overall objectives of his defense, including the decision to disavow mitigation. *Cf. Farr v. State*, 20 Fla. L. Weekly S211 (Fla. May 4, 1995) (finding the defendant had right to controvert the case for mitigation). Moreover, even if the court erred on this point, any error would be harmless beyond a reasonable doubt. *DiGuilio*. Despite [Petitioner's] disavowal of mitigating factors, the trial court carefully reviewed the record and found two nonstatutory mitigating factors to be present.

On cross-appeal, the State argues that the two mitigating factors found by the court are not supported by the evidence. Even though [Petitioner] refused to present any mitigating evidence and requested the death sentence, the judge carefully analyzed the possible statutory and nonstatutory mitigating evidence contained in the record. The judge stated that he considered both the trial record and the presentence investigation report. While there is no rule requiring presentence investigations in capital cases, we have encouraged trial judges to order them "in at least those cases in which the defendant essentially is not challenging imposition of the death penalty." *Farr*, 20 Fla. L. Weekly at S211. As noted in the sentencing order in this case, even though the two nonstatutory mitigating factors of family background and military service were not argued to the court, the court found evidence of these factors contained within the record. Both the presentence investigation report and the psychological evaluations, which are part of the record in this case, contain evidence to support the mitigating circumstances found by the judge. Accordingly, we find no error on this point.

* * * *

In a footnote to this final issue, [Petitioner] also argues that his waiver of mitigation evidence precludes this Court from conducting a proportionality review of the death sentence. As discussed above, we find no error regarding [Petitioner's] decision to waive presentation of mitigation evidence and to affirmatively assert the non-existence of mitigation. Such a valid waiver of mitigation does not preclude this Court from conducting the required proportionality review. *See Hamblen*. Moreover, we find that the facts of this case warrant the death sentence imposed and that the sentence is proportionate to other sentences of death affirmed by this Court. *See*, *e.g.*, *Carter v. State*, 576 So. 2d 1291

91

> (Fla. 1989)(affirming death sentence where the trial
> court found three aggravating circumstances of committed
> while under a sentence of imprisonment, committed during
> a robbery, and prior violent felony conviction, and one
> nonstatutory mitigating circumstance of a deprived
> childhood), *cert. denied*, 502 U.S. 879, 112 S. Ct. 225,
> 116 L. Ed. 2d 182 (1991).

*Allen I*, 662 So. 2d at 328-30, 331-32.

In his post conviction motion, Petitioner again asserted that
his counsel was ineffective for failing to investigate mitigation.
(App. R-Vol. 6 at 814-29)  He also argued, in a separate claim,
that his waiver of mitigation was invalid.  (App. R-Vol. 6 at 852-
55) He based this claim on the alleged ineffective assistance of
counsel in failing to investigate mitigation and on the alleged
lack of an adequate colloquy regarding the waiver.  *Id.*

The post conviction court rejected these claims:

> **CLAIM III - [PETITIONER] WAS DEPRIVED OF THE
> EFFECTIVE ASSISTANCE OF COUNSEL AT THE PENALTY PHASE OF
> HIS CAPITAL TRIAL. [PETITIONER] WAS DEPRIVED OF HIS RIGHT
> TO A FAIR TRIAL AS GUARANTEED BY THE SIXTH, EIGHT, AND
> FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**
> The entirety of Claim III, *see* Motion, pp. 67-82,
> must be rejected as procedurally barred.
> After the guilt phase, Counsel moved to withdraw
> because [Petitioner] did not want to introduce mitigation
> evidence, but stated his intention to affirmatively seek
> the death penalty.  (T.Tr. 661, 7-662, 21, Exhibit 92)
> Following a *Faretta* hearing, the Court found [Petitioner]
> competent to represent himself in the penalty phase and
> to make the decision fo waive the assistance of counsel.
> (T.Tr. 672, 17-24, Exhibit 93) The Court appointed guilt
> phase Counsel as standby counsel. (T.Tr. 672, 24- 673, 6,
> Exhibit 94)  As a result, [Petitioner] cannot now claim
> ineffective assistance of counsel in the penalty phase.
> > "[A] defendant who represents himself has the
> > entire responsibility for his own defense,
> > even if he has standby counsel.  Such a
> > defendant cannot thereafter complain that the

92

> quality of his defense was a denial of 'effective assistance of counsel.' *Faretta*, 422 U.S. at 835 n.46, 95 S.Ct. at 2541, n.46." *Behr v. Bell*, 655 So.2d 1055, 1056-1057 (Fla. 1996).

[Petitioner's] representation of himself, and the consequences thereof, were briefed on direct appeal, *see* [Petitioner's] initial brief, Arguments II and III[FN12], and were extensively discussed in the resulting opinion:

> "As noted above, the court conducted a Faretta inquiry and determined that [Petitioner's] waiver of his right to counsel was voluntarily and intelligently made. The two mental health experts who examined [Petitioner] at the court's request also concluded that [Petitioner] was competent to proceed to the penalty phase. Thus, unlike Koon, in this case the penalty proceedings before the jury was conducted by a defendant who chose to represent himself and decided not to present mitigating evidence. *See* Hamblen v. State, 527 So.2d 800, 802-04(Fla. 1988)" *Allen* at 329.

> "[Petitioner] disavowed that he had a bad childhood, and stated that he did not have either an alcohol or drug problem. In summary, he stated that "there is not going to be any excuses today and there will not be any mitigating factors here." *Id.*

> "We find no error in the trial court's handling of this matter. A defendant has a constitutional right to represent himself. As discussed above, the court determined that [Petitioner] was clearly competent to do so. Thus, [Petitioner] was entitled to control the overall objectives of his defense, including the decision to disavow mitigation." *Id.*, at 330 (citations omitted).

Having been raised on direct appeal and decided adversely to [Petitioner], Claim III and all of its issues and sub-issues must be denied:

> "A motion for postconviction relief can be denied without a hearing when the motion and record conclusively demonstrate that the movant is entitled to no relief. *See Roberts v. State*, 568 So.2d 1255, 1256 (Fla. 1990).

93

The substantive claims raised by ... [the defendant] are procedurally barred because they either could have been raised on direct appeal or were raised on direct appeal and found to be without merit. See *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983)('Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.'); *Torres-Arboleda v. Dugger*, 636 So.2d 1321, 1323 (Fla. 19940('Proceedings under rule 3.850 are not to be used as a second appeal ....') *Teffeteller*, *supra*, at 1016 (alterations added)(footnotes omitted).

\* \* \* \*

[FN12]   Argument II - The trial court erred in accepting [Petitioner's] waiver of mitigation evidence, where defense counsel had never performed any investigation into the presence of mitigating evidence and consequently there exist no record showing of mitigation evidence in violation of *Koon v. Dugger*, 619 So.2d 246 (Fla. 1993), ....
   Argument III - The trial court erred in permitting [Petitioner] to make unsworn and unsupported denials of applicable mitigating factors before the sentencing jury,....

\* \* \* \*

**CLAIM VI - [PETITIONER'S] RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS WERE VIOLATED WHEN HE WAS ALLOWED TO WAIVE HIS RIGHT TO PRESENT EVIDENCE WITHOUT AN ADEQUATE RECORD INQUIRY TO DETERMINE WHETHER THE WAIVER WAS KNOWING, VOLUNTARY, AND  INTELLIGENT.**
   Claim VI simply reasserts the issues raised by Claim III in not very different language. *See* Claim III, *supra*.
   Claim VI is denied.

(App. R-Vol. 8 at 1076-77, 1080)

On appeal from the denial of the motion for post conviction relief, Petitioner combined the claims and asserted that the lower court had erred in summarily denying these claims. (App. G at 27-53) As part of this argument, Petitioner asserted that the Florida

94

Supreme Court had not decided the issue of whether his waiver of mitigation was knowing, intelligent and voluntary. (App. G at 46-50) The Florida Supreme Court affirmed the summarily denial of these claims, finding that the claims were procedurally barred:

> [Petitioner] raises 18 claims, including subparts. [FN3] We summarily affirm the trial court's denial of 16 of his claims because they are procedurally barred [FN4] or lack merit. . . . [FN3] [Petitioner] alleges: . . . (8) an invalid waiver of mitigation because counsel did not conduct any investigation into mitigation; (9) an invalid waiver of mitigation because the trial court did not inquire into the decision to waive mitigation; (10) an arbitrary and capricious sentence under the Eighth Amendment because counsel failed to investigate and discover any mitigation . . . . [FN4] Claims 8, 9 and 10 were raised on direct appeal. *See Allen*, 662 So. 2d at 328-31. *See also Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983)("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). . . . To the extent these claims allege ineffective assistance of counsel, they are barred nonetheless. *Woods v. State*, 531 So. 2d 79, 82 (Fla. 1988)("Couching a [procedurally] barred claim in terms of ineffective assistance of counsel will not revive such a claim.").

*Allen II*, 854 So. 2d at 1257-58.

In his state habeas petition, Petitioner asked the Florida Supreme Court to reconsider its determination that it was possible to conduct a proportionality review despite the waiver of mitigation based on its subsequent decision in *Muhammad v. State*, 782 So. 2d 343 (Fla. 2001). (App. J at 6-7) The Florida Supreme Court found the request to be procedurally barred:

> [Petitioner] first claims that his waiver of mitigation precludes us from conducting an adequate proportionality review. [Petitioner] raised this same claim on direct appeal, *see Allen*, 662 So. 2d at 331, and cannot raise it again now. *See Smith*, 445 So. 2d at 325 ("Issues which

95

either were or could have been litigated at trial and
upon direct appeal are not cognizable through collateral
attack.").

*Allen II*, 854 So. 2d at 1261-62.

To the extent that Petitioner is asserting that his waiver of
mitigation was unconstitutional because his counsel was ineffective
for failing to investigate mitigation, Petitioner is entitled to no
relief. As seen above, the Florida Supreme Court rejected this
claim because Petitioner was representing himself at the time he
chose not to present mitigation. In *Faretta v. California*, 422
U.S. 806, 834 n.46 (1975), the United States Supreme Court
expressly stated that a defendant who elects to represent himself
cannot later claim ineffective assistance of counsel: "Thus,
whatever else may or may not be open to him on appeal, a defendant
who elects to represent himself cannot thereafter complain that the
quality of his own defense amounted to a denial of 'effective
assistance of counsel.'" As such, the rejection of this claim was
not contrary to, or an unreasonable application of, clearly
established United States Supreme Court precedent. The claim
should be denied.

The cases relied upon by Petitioner do not compel a different
result. In all of the cases upon which Petitioner relies, the
defendants were represented by counsel, and the courts were
resolving claims that counsel had been ineffective during that
representation. *Williams v. Taylor*, 529 U.S. 362 (2000); *Douglas*

*v. Woodford*, 316 F.3d 1079, 1085-90 (9th Cir. 2003); *Silva v. Woodford*, 279 F.3d 825, 836-47 (9th Cir. 2002); *Coleman v. Mitchell*, 268 F.3d 417, 444-52 (11th Cir. 2001); *Battenfield v. Gibson*, 236 F.3d 1215, 1226-34 (10th Cir. 2001); *Carter v. Bell*, 218 F.3d 581, 588-89, 596 (11th Cir. 2000); *Dobbs v. Turpin*, 142 F.3d 1383, 1387-89 (11th Cir. 1998); *Blanco v. Singletary*, 943 F.2d 1477, 1499-1504 (11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1450-52 (11th Cir. 1986); *Blake v. Kemp*, 758 F.2d 523, 533-34 (11th Cir. 1985); *Tyler v. Kemp*, 755 F.2d 741, 744-46 (11th Cir. 1985); *Martin v. Maggio*, 711 F.2d 1273, 1279-80 (5th Cir. 1983); *Beavers v. Balkcom*, 636 F.2d 114, 116 (5th Cir. 1981); *Eutzy v. Dugger*, 746 F. Supp. 1492, 1497-1500 (N.D. Fla. 1989). Here, Petitioner elected to waive his right to be represented by counsel and, by doing so, the claim of ineffective assistance of counsel. As such, cases regarding claims of ineffective assistance of counsel claims are inapplicable to this matter.

While Petitioner asserts that *Coleman* held that *Faretta* does not govern claims where a defendant has waived counsel, this is not true. In *Coleman*, the defendant was represented by counsel. In fact, the court distinguished *Faretta* on the basis that the defendant had not expressed a desire for self-representation and no *Faretta* colloquy was held. *Id.* at 448-49. In fact, the court affirmed the denial of habeas relief in the defendant's other murder case, where the defendant had actively assisted in the

presentation of his case, had not cooperated with counsel in conducting an investigation and had restricted counsel. *Coleman v. Mitchell*, 244 F.3d 533, 543-46 (6th Cir. 2001).

Additionally, contrary to Petitioner's assertions, this is not a case in which counsel chose to follow his client's instructions blindly because counsel has not conducted the necessary investigation pretrial. Instead, the record reflects that counsel advised Petitioner that mitigation needed to be investigated pretrial but Petitioner had instructed counsel to conduct no investigation. (App. Q-Vol. 1 at 188-89) Counsel had discussed the matter at length with Petitioner and had another attorney also advise Petitioner against waiving counsel and mitigation. (App. Q-Vol. 7 at 661) Counsel has also informed Petitioner of what mitigation was and advised Petitioner against not presenting mitigation. (App. Q-Vol. 8 at 803-04) However, despite this advice, Petitioner steadfastly refused to allow mitigation to be presented, disregarded counsel advice and discharged counsel to prevent the presentation of mitigation. In fact, Petitioner denied the very existence of the mitigation that he now claims should have been presented. (App. Q-Vol. 7 at 739-40) Under these circumstances, it cannot be said that counsel blindly followed Petitioner's wishes. The claim should be denied.

Moreover, most of the cases involve pre-AEDPA habeas petitions. *Douglas*, 316 F.3d at 1085; *Silva*, 279 F.3d at 831;

*Coleman*, 268 F.3d at 427; *Carter*, 218 F.3d at 591; *Dobbs*, 142 F.3d at 1385; *Baxter*, 45 F.3d at 1506; *Blanco*, 943 F.2d at 1977; *Stephens*, 846 F.2d at 642; *Thompson*, 787 So. 2d at 1447; *Blake*, 758 F.2d at 523; *Tyler*, 755 F.2d 743; *Martin*, 711 F.2d at 1276; *Beavers*, 636 F.2d at 115; *Eutzy*, 746 F. Supp at 1496.  As such, they do not even address what the United States Supreme Court has held is the only issue that matters in a post-AEDPA petition: whether the state courts' rejection of the claim was contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent.  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).  As such, they do not compel a different result.  The claim should be denied.

While Petitioner asserts that the AEDPA standard of review does not apply to this claim because the Florida Supreme Court never address this claim on the merits, he is entitled to no relief.  Petitioner bases this argument on his assertion that this claim was only raised during the post conviction proceedings. However, the Florida Supreme Court expressly found that Petitioner had presented this issue on direct appeal when he raised this argument in his post conviction appeal.  *Allen II*, 854 So. 2d at 1257 n.3 & 1258 n.4.  Such a determination is one of fact.  *See Parker v. Dugger*, 498 U.S. 308, 320 (1991).  As such, it is entitled to a presumption of correctness unless Petitioner shows by clear and convincing evidence that it is wrong or unreasonable.  28

U.S.C. §2254(e)(1).  Here, Petitioner has not presented any such evidence.  Instead, he merely makes this assertion based on his selective quotation of his direct appeal brief and the Florida Supreme Court's opinion.  However, a review of the Florida Supreme Court's opinion and Petitioner's direct appeal brief show that the issue of whether the waiver was involuntary because counsel had failed to investigate mitigation was presented.  *Allen I*, 662 So. 2d at 328-29; (App. A at 29-37)  In fact, the Florida Supreme Court directly stated on direct appeal that the issue was whether "the court erred in accepting his waiver of mitigating **where defense counsel did not investigate possible mitigating evidence** and there was no record showing of mitigating evidence as required by *Koon*."  *Allen I*, 662 So. 2d at 328 (emphasis added). The mere fact that a record contains evidence that would support a conclusion contrary to that reached by a lower court does not provide a basis for rejecting a factual finding. *See Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985). As such, this Court is bound by this factual finding to reject Petitioner's contrary assertion.  Thus, the AEDPA standard of review does apply.  As argued above, Petitioner is entitled to no relief under that standard.  The claim should be denied.

To the extent that Petitioner is attempting to claim that his decision to waive counsel was involuntary because he did not understand what mitigation was available to him personally, he is

entitled to no relief.   In *Faretta*, the Court required that a defendant be made aware of the dangers of self-representation.  422 U.S. at 835.   However, the Court has held that a waiver is voluntary "if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances--even though the defendant may not know the *specific detailed* consequences of invoking it." *Iowa v. Tovar*, 541 U.S. 77, 92 (2004)(quoting *United States v. Ruiz*, 536 U.S. 622, 629 (2002)).  Further, the Court has noted that defendant's claiming that a waiver was the result of ineffective assistance of counsel must allege and prove that but for counsel's ineffectiveness, there is a reasonable probability that they would not have entered the waiver. *Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000)(requiring showing that defendant would have appeal but for counsel's deficit conduct in waiving right); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)(requiring showing of reasonable probability that plea would not have been entered in claim of ineffective assistance regarding guilty plea).

Here, Petitioner's entire claim is based on his assertion that counsel did not advise him on what specific mitigation could have applied to him and not on what mitigation was generally.  In fact, the record reflects that trial court did inform Defendant of the dangers of self-representation.  (App. Q-Vol. 7 at 662-76)  Counsel did inform Petitioner of what mitigation was generally.  (App. Q-

101

Vol. 8 at 803-04)  Moreover, Petitioner signed a written waiver of counsel months before trial started indicating that he had been advised to allow mitigation to be presented and that he would waive any ineffective assistance claim.  (App. Q-Vol. 1 at 188-89) Further, Petitioner does not now, and did not in state court, claim that but for counsel's failure to advise him of exactly what mitigation could have been presented, he would have permitted the mitigation to be presented.  Under these circumstances, it was not contrary to, or an unreasonable application of, any clearly established United States Supreme Court precedent to find that he had voluntarily waived counsel.  The claim should be denied.

To the extent that Petitioner is asserting that he is entitled to relief because there is no adequate colloquy regarding Petitioner's decision to waive mitigation, the lack of presentation of potential mitigation during such a colloquy rendered his waiver of mitigation involuntary and his counsel was ineffective for failing to make a complete record of the potential mitigation, Petitioner is entitled to no relief.  The Eleventh Circuit recently discussed this issue:

> Petitioner makes several arguments centering on the fact counsel did not state on the record what each penalty phase witness would have testified to had he or she been called. A fair reading of the petition shows he asserts that (1) the post-conviction court should have held a hearing on this claim, (2) counsel was ineffective for failing to make a complete record regarding mitigation witness testimony, and (3) he could not have made a knowing and intelligent waiver of the right to present mitigating evidence because counsel did not

present on the record what the mitigating evidence would have been. The district court focused on the first of these arguments and dismissed the claim for failing to state a ground for federal habeas relief.

It is beyond debate that Petitioner is not entitled to relief on these grounds. We have held the state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief. *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987). Therefore, insofar as Petitioner's claim is based on the state court's failure to hold an evidentiary hearing, jurists of reason would not debate whether the district court properly dismissed this claim.

Moreover, the requirement that counsel state on the record what the mitigating evidence would be is solely a requirement of state law. In *Koon v. Dugger*, the Florida Supreme Court rejected a claim that counsel was unconstitutionally deficient for failing to present evidence in mitigation, concluding the defendant had instructed his counsel not to present such evidence. 619 So. 2d 246, 249-50 (Fla. 1993). Out of concern "with the problems inherent in a trial record that does not adequately reflect a defendant's waiver of his right to present any mitigating evidence," however, the Florida Supreme Court announced the procedure to be followed when a defendant waives the presentation of mitigating evidence:

> [C]ounsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence.

*Id.* at 250 (emphasis added). Although *Koon* requires counsel to state on the record what the evidence in mitigation would be before a defendant can waive his right to present mitigating evidence, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a

constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992). [FN1] Rather, Petitioner must point to a Supreme Court decision to support his argument, and he has failed to do so. Petitioner is, therefore, not entitled to a COA with respect to this claim.

\* \* \* \*

[FN1] Moreover, the Florida Supreme Court addressed the claim counsel was ineffective for failing to state on the record what the evidence in mitigation would be and found it to be without merit. *Anderson*, 822 So. 2d at 1268. The Court explained the rule announced in *Koon* was prospective, and, therefore, counsel could not be deficient for failing to foresee it. *Id.* The Court also noted that "counsel did proffer the witnesses that he believed could have benefitted Anderson, and the trial court did engage in an on-the-record colloquy." *Id.*

*Anderson v. Sec'y for the Dept. of Corrections*, 462 F.3d 1319, 1330-31 (11th Cir. 2006). As the Eleventh Circuit has held that claims related to the nature of the colloquy are not cognizable, the claims related to the nature of the colloquy should be denied.

In fact, the United States Supreme Court has recently rejected a similar claim. In *Schriro v. Landrigan*, 127 S. Ct. 1933 (2007), the defendant actively prevented his counsel for presenting mitigation and told the trial court to impose a death sentence. *Id.* at 1937-38. At the time of the penalty phase, the trial court merely questioned the defendant about whether the decision to waive mitigation was his and whether he understood the consequence. *Id.* at 1937. During post conviction litigation, the defendant claimed that his waiver was the result of counsel's failure to investigate and that had his counsel investigated other mitigation, he would

104

have allowed it presentation. *Id.* at 1937.  The Court determined that this claim did not merit federal habeas relief because it was not unreasonable for a state court to conclude that a defendant who instructed his counsel not to present mitigation could not establish that his counsel was ineffective, it had never required a knowing and voluntary waiver of the right to present mitigation and an affirmative statement by the defendant that he did not care if he was sentenced to death established that the defendant understood the consequence of the waiver he was entering. *Id.* at 1940-41.  Here, all of these same factors apply.  The record reflects that Defendant told his counsel not to present mitigation and Defendant asked the jury to recommend a death sentence.  Thus, under *Landrigan*, Defendant is entitled to no relief.  The claim should be denied.

While Petitioner asserts that he is entitled to habeas relief because the Florida Supreme Court erred in finding that it could conducted a proper proportionality review despite Petitioner's waiver of mitigation, this is not true.  The United States Supreme Court has held that proportionality is an issue of state law and claims of error regarding the conduct of a proportionality review are not cognizable in federal habeas.  *Pulley v. Harris*, 465 U.S. 37 (1984); *see also Walton v. Arizona*, 497 U.S. 655-66 (1990), *overruled on other grounds*, *Ring v. Arizona*, 536 U.S. 584 (2002); *Bush v. Singletary*, 99 F.3d 373, 375 (11th Cir. 1996); *Booker v.*

*Wainwright*, 746 F.2d 1371, 1380 (11th Cir. 1985); *Alvord v. Wainwright*, 725 F.2d 1282, 1300-01 (11th Cir. 1984). As such, this claim is not cognizable in this proceeding and should be denied.

POINT V.

**THE CLAIM THAT COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE PETITIONER'S MENTAL STATE SHOULD BE DENIED.**

Petitioner next asserts that he is entitled to habeas relief because his counsel was ineffective for failing to investigate his mental health and for failing to provide information to mental health experts. Petitioner also asserts that his counsel was ineffective for failing to challenge the qualifications of one of the competency experts. However, Petitioner is entitled to no relief as the rejection of this claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent.

In state court, Petitioner first raised this claim in his motion for post conviction. (App. R-Vol. 6 at 806-13) The post conviction court denied the claim:

> [Petitioner] claims ineffective assistance at both the guilt and penalty phases because Counsel did not obtain am adequate mental health evaluation.
> This claim could be denied because it is purely conclusory and does not allege any specific facts that would put [Petitioner's] competence or sanity in issue. *Ragsdale*, *supra*, *at* 207. Significantly, nowhere in his Motion for postconviction relief does [Petitioner] actually assert that he was insane or incompetent at the time of the crime or sentencing.
> The quote from the transcript in the Motion with respect to the Court's inquiry into [Petitioner's] mental health history does not help him ("I don't mean to be insulting, but have you ever been in a mental health facility or treated for any mental disability?" (T.Tr. 670-24-671, 1, Exhibit 86) The question was posed as part of the *Faretta*[FN11] hearing and was not the reason for it. Although the Court did order a mental evaluation, it was not required. *Sanchez-Velasco*, 702 So.2d 244, 228

107

(Fla. 1997)(If the *Faretta*-type evaluation raises no doubt in the judge's mind as to the defendant's competency, no mental health evaluation is necessary for the competency determination").

**Issue 1 - Counsel was not ineffective for failure to obtain an adequate mental health evaluation during the guilt phase.**

[Petitioner] first cites *Ake v. Oklahoma*, 470 U.S. 68, 82, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985), for the proposition that "A criminal defendant is entitled to expert psychiatric assistance when the state makes his or her mental state relevant to the proceeding." However, there is nothing in the record to suggest that [Petitioner's] mental state ever was or would become an issue.

[Petitioner's] entire defense during the trial was summed up in his penalty phase closing argument; that is, he was innocent (*see* Claim I, Issue 7, *supra*). A claim of innocence in fact and a defense based on the inability to form the specific intent required to commit the crime are mutually exclusive because the latter would necessarily admit that [Petitioner] committed the murder.

> "This claim is without merit as to guilt phase. *** [S]ince a voluntary intoxication defense is, in effect, an admission that you did the crime but lacked the specific intent to be held criminally responsible, ... [the defendant's] unwavering professions or innocence short-circuited any credible voluntary intoxication defense during the guilt phase." *Rivera v. State*, 717 So.2d 477, 485 (Fla. 1998)(alterations added).

Moreover, the claim would be insufficient even if as a witness for [Petitioner], Counsel were to assert in a postconviction proceeding that he should have investigated [Petitioner's] mental state in the penalty phase:

> "'A defendant's mental condition is not necessarily at issue in every criminal proceeding.' [Citing to *Ake v. Oklahoma*.] None of Mills' original attorneys had any idea that his mental health might be at issue. Current counsel's getting those attorneys to admit that they would, today, routinely pursue evidence for the mental health mitigators illustrates the Supreme Court's concern 'that every effort be made to eliminate the distorting effects of hindsight.' *Strickland*,

466 U.S. at 689, 104 S.Ct. at 2065. 'That
current counsel, through hindsight, would now
do things differently than original counsel
did is not  the test for ineffectiveness.'"
*Mills v. Moore*, 786 So.2d 532, 535 (Fla.
2001), *citing to Stano v. State*, 520 So.2d
278, 281 n. 5 (Fla.1998); *Mills v. State*, 603
So.2d 482, 485 (Fla.1992).

There was no reason to question [Petitioner's]
mental competence at the guilt phase. Where Counsel had
no reason to question [Petitioner's] mental condition and
where the theory of defense was inconsistent with putting
[Petitioner's] mental health in issue, Counsel was not
ineffective for failing to obtain a guilt phase mental
health evaluation.

The claim is denied. *Strickland*.

**Issue 2 - Counsel was ineffective for failure to
obtain an adequate mental health evaluation during the
penalty phase.**

[Petitioner] also claims that Counsel was
ineffective for failure to obtain an adequate penalty
phase mental health evaluation.

[Petitioner's] mental condition became a
consideration only after Counsel moved to withdraw based
on [Petitioner's] expressed desire to represent himself
in the penalty phase and seek the death penalty.
Thereupon, the Court conducted a *Faretta* hearing and
inquired into [Petitioner's] age, education, whether
[Petitioner] had ever been hospitalized or treated for
mental disability, his awareness of his right to be
represented by an attorney, his understanding of the
legal process, and his appreciation of the consequences
of the penalty phase. (T.Tr. generally, 662-676, Exhibit
87) At the conclusion of the inquiry, the Court opined
that ,

"... for the record, I don't have a doubt
as to your mental competence. I am also not a
mental health expert. Given the gravity of
the consequences here, I think it would
satisfy me to have you examined by competent
mental health experts so that they might give
me professional opinions as to those issues."
(T.Tr. 675, 24 - 676, 5, Exhibit 88)

The two mental health experts examined [Petitioner]
and testified as to the results of their examinations
with respect to the criteria of Fla.R.Crim.P. 3.211(a).
Both found [Petitioner] was competent to represent
himself (T.Tr., generally, 684-695, Exhibit 89)

109

**Issue 3 - Counsel was ineffective for failure to impeach Dr. Wolfe as to his credentials.**

[Petitioner] claims that Counsel should have impeached Dr. Wolfe with his lack of qualifications to conduct a mental health evaluation because he was not a licensed psychologist.

[Petitioner] does not assert that Dr. Wolfe was not qualified to testify as an expert, but rather that he was not a licensed psychologist. However, particularly when Dr. Wolfe expressed his opinion, a person with a "doctoral level psychological education" degree qualified as an expert in clinical psychology. §490.003(7)(a), Fla.Stat. (1997); *Provenzano v. State*, 750 So.2d 597, 601 (Fla. 1999). Dr. Wolfe's opinion had previously been accepted as that of an expert in the field. *See Wallace v. State*, 766 So.2d 364 (Fla. 3d DCA 2000).

More to the point, [Petitioner], who was representing himself at this time, asserted that he was familiar with Dr. Wolfe's qualifications and stipulated that he was an expert. (T.Tr. 685, 13 - 25, Exhibit 90) Although it is not clearly stated in the record, one can assume [Petitioner] became familiar with Dr. Wolfe's qualifications by consulting with standby Counsel as was the case with Dr. Holbrook. (T.Tr. 691, 1 - 7, Exhibit 91)

The claim is denied. *Strickland*.

(App. R-Vol. 8 at 1071-75)

On appeal from the denial of his motion for post conviction relief, Petitioner again raised this issue. (App. G at 54-57) The Florida Supreme Court affirmed the denial of the claim because prejudice was not sufficiently alleged. *Allen II*, 854 So. 2d at 1257-58 & n.5.

Because the state courts' rejection of these claims is not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, he is entitled to no relief. As can be seen from the foregoing, the state post conviction court correctly identified *Strickland* as providing the standard for

110

adjudicating these claims. The Florida Supreme Court also identified *Strickland* as providing the standard for adjudicating claims of ineffective assistance of counsel and accurately enunciated that standard. *Allen II*, 854 So. 2d at 1261. The facts underlying these claims are not materially indistinguishable from the facts of any of the United States Supreme Court's precedent on ineffective assistance of counsel. As such, the denial of this claim was not contrary to *Strickland*. *Williams*, 529 U.S. at 412-13.

Moreover, the denial of the part of the claim regarding the failure to investigate Petitioner's mental state was not an unreasonable application of *Strickland*. As seen above, the State Courts denied this portion of the claim because Petitioner had not sufficiently plead it. In state court, as here, Petitioner's only assertions regarding the need for a mental health evaluation were that the trial court asked about mental health treatment during a *Faretta* inquiry and that counsel should always have a defendant's mental health evaluated even if he had no reason to do so. (App. R-Vol. 6 at 811)

Under Eleventh Circuit case law, counsel is not ineffective for failing to have his client's mental health evaluated when he has no reason to believe that his client suffers from any mental illness. *Williams v. Head*, 185 F.3d 1223, 1239 (11th Cir. 1999); *Baldwin v. Johnson*, 152 F.3d 1304, 1314-15 (11th Cir. 1998). While Petitioner suggests that *Maudlin v. Wainwright*, 723 F.2d 799 (11th

111

Cir. 1984), holds to the contrary, this is not true.  In *Maudlin*, the Court held that counsel was ineffective for presenting an insanity defense, which was the only available defense, without investigating the defendant's mental health.  Here, Petitioner's defense was reasonable doubt.  *Allen II*, 854 So. 2d at 1261.  Thus, *Maudlin* does not apply, and requiring a showing that counsel had some reason to investigate a defendant's mental state before he is deemed ineffective for failing to investigate a defendant's mental health is consistent with Eleventh Circuit precedent.  While Petitioner asserts that the trial court's inquiry regarding his mental health treatment shows that there were grounds for questioning his mental state, the state court found that the inquiry was simply part of the *Faretta* colloquy and not based on any perception of any mental illness.  (App. R-Vol. 8 at 1071-72, 1074) This finding of fact is presumptively correct because Petitioner has not presented clear and convincing evidence to the contrary.   28 U.S.C. §2254(e)(1).   Moreover, the finding is supported by the record, which shows that both counsel and the trial court stated they had no reason to question Petitioner's mental state.  (App. Q-Vol. 7 at 661,672, 675-76) Under these circumstances, it was not an unreasonable application of *Strickland* to find that Petitioner did not sufficiently allege deficiency.  *Williams*, 529 U.S. at 411. The claim should be denied.

It was also not unreasonable to find that prejudice was not sufficiently alleged. In state court, as here, the allegations regarding prejudice were limited to:

> The assistance of a mental health expert is necessary to determine whether a client is competent and sane, as well as to determine the applicability of diminished capacity defenses. In regard to the penalty phase, the client's background and family history must be investigated for the presence of statutory and nonstatutory mitigation. **As a result of counsel's failure to secure the assistance of a mental health expert and to conduct an adequate background investigation, the jury that convicted and sentenced [Petitioner] to die was deprived of relevant information necessary to a fair trial and a reliable sentencing.**

(App. R-Vol. 6 at 811-12) These allegations did not assert that Petitioner was incompetent or insane or that any mitigation would have been found. Moreover, Florida does not recognize diminished capacity defenses. *Chestnut v. State*, 538 So. 2d 820 (Fla. 1989); *Wheeler v. State*, 344 So. 2d 244 (Fla. 1977), *cert. denied*, 440 U.S. 924 (1979); *Campbell v. State*, 227 So. 2d 873 (Fla. 1969); *Holston v. State*, 208 So. 2d 98 (Fla. 1968); *Van Eaton v. State*, 205 So. 2d 298 (Fla. 1967); *Piccott v. State*, 116 So. 2d 626 (Fla. 1959); *Everett v. State*, 97 So. 2d 241 (Fla. 1957), *cert. denied*, 355 U.S. 941 (1958); *Tremain v. State*, 336 So. 2d 705 (Fla. 4th DCA 1976), *cert. denied*, 348 So. 2d 954 (Fla. 1977). Finding that such conclusory allegations are insufficient to demonstrate prejudice is in accordance with Eleventh Circuit case law. *Baldwin*, 152 F.3d at 1315. As such, it was not an unreasonable application of

113

*Strickland* to find the claim insufficiently plead. *Williams*, 529 U.S. at 411. The claim should be denied.

The denial of the portion of the claim concerning the attempt to impeach Dr. Wolfe was also not unreasonable. As seen above, the trial court determined that attempting to impeach Dr. Wolfe would not have been meritorious. Denying a claim of ineffective assistance of counsel because the claim counsel failed to raise was not meritorious is in accordance with Eleventh Circuit precedent. *See Diaz v. Sec'y for the Dept. of Corrections*, 402 F.3d 1136 (11th Cir. 2005); *United States v. Nyhuis*, 211 F.3d 1340, 1345-46 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). Moreover, under Florida law, it was not necessary for Dr. Wolfe to be licensed to be qualified. *State ex. rel Huie v. Lewis*, 80 So. 2d 685, 690 (Fla. 1955); *see also Provenzano v. State*, 750 So. 2d 597, 601-02 (Fla. 1999)(finding that person who had a doctorate of education in psychology who practiced psychology was qualified as an expert). As issues regarding the admissibility of evidence are issues of state law, this Court is bound by that determination. *Breedlove v. Moore*, 279 F.3d 952, 963 (11th Cir. 2002). Under these circumstances, there was nothing unreasonable about rejecting this claim. *Williams*, 529 U.S. at 411. The claim should be denied.

To the extent that Petitioner may assert that *Ake v. Oklahoma*, 470 U.S. 68 (1985), provides the clearly established United States

Supreme Court precedent against which this claim should be measured, he is entitled to no relief. *Ake* required a state court to appoint an expert to assist the defense when a defendant made a sufficient showing that his mental state was at issue. *Id.* at 82-83. The Court specifically noted that a defendant's mental state was not at issue in every case. *Id.* at 82. In *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992), the Eleventh Circuit address the necessary showing required to support a claim that a state court denied a defendant the assistance of competent mental health experts. The court held that a defendant must identify some ruling by the trial court that deprived him of the assistance of competent mental health assistance. Here, Petitioner had not identified any such ruling by the trial court. As such, *Ake* does not provide the clearly established United States Supreme Court precedent against which this claim is to be measured; *Strickland* does. As the rejection of the claim was not contrary to, or an unreasonable application of, *Strickland*, this claim should be denied.

115

## POINT VI.

### THE CLAIM OF INNOCENCE OF THE DEATH PENALTY SHOULD BE DENIED.

Petitioner next contends that he is innocent of the death penalty. Petitioner based this claim on the alleged ineffective assistance of counsel in failing to investigate and present mitigation, on alleged errors in the finding of the heinous, atrocious and cruel (HAC) and pecuniary gain aggravating circumstances, on the alleged disproportionality of his sentence, on alleged errors under *Caldwell v. Mississippi*, 472 U.S. 320 (1985), and on alleged errors in the penalty phase jury instructions. With regard to HAC, Petitioner contends that it was improperly based on the knowing presentation of false testimony. With regard to pecuniary gain, Petitioner asserts that the evidence was insufficient to support it. With regard to the penalty phase jury instructions, Petitioner alleged that they unconstitutionally shift the burden of proof. Petitioner also asserts that in considering this claim, this Court should consider the cumulative effect of the other errors he alleges. However, Petitioner is entitled to no relief.

On direct appeal, Petitioner asserted that the trial court erred in finding the pecuniary gain aggravating circumstance. (App. A at 42-52) Petitioner also claimed that trial court erred in finding HAC. (App. A at 53-59) In a footnote in the discussion of another issue, Petitioner asserted:

116

> There was, in Songer's case, unlike the present case, "significant mitigation" presented. 544 So. 2d at 1011. In the present case, there was no mitigation presented, because [Petitioner] had waived mitigation. The invalidity of that waiver is the subject of Points II and III. In the absence of any mitigation evidence, this Court cannot of course conduct a proportionality review of [Petitioner's] sentence.

(App. A at 63 n.61)

The Florida Supreme Court rejected the claims regarding the aggravating circumstances, found that it could conduct a proportionality review and found Petitioner's death sentence proportionate:

> [Petitioner] also argues that court improperly found the aggravating factor that the murder was committed for pecuniary gain. According to [Petitioner], because he was acquitted of robbery during the guilt phase, the court was estopped from finding the pecuniary gain aggravating factor in the penalty phase. While the sentencing order recognizes that the court granted [Petitioner] "a judgment of acquittal for the specific elements of the offense of robbery," it also states that there was ample evidence in the record to support the finding of pecuniary gain, including "the statements of the Defendant, the contents of the victim's purse strewn across the bed, and the subsequent discovery of the victim's car."
>
> To establish the pecuniary gain aggravating circumstance, the State must prove a pecuniary motivation for the murder. *Hill v. State*, 549 So. 2d 179, 183 (Fla. 1989); *Scull v. State*, 533 So. 2d 1137, 1142 (Fla. 1988), *cert. denied*, 490 U.S. 1037, 109 S. Ct. 1937, 104 L. Ed. 2d 408 (1989). We agree with [Petitioner] that the taking of Cribbs' car would not support the finding of pecuniary gain. In light of the fact that the car was apparently abandoned shortly after the murder, it is possible that the car was taken to facilitate escape rather than as a means of improving [Petitioner's] financial worth. *See Scull*, 533 So. 2d at 1142; *Peek v. State*, 395 So. 2d 492, 499 (Fla. 1980), *cert. denied*, 451 U.S. 964, 101 S. Ct. 2036, 68 L. Ed. 2d 342 (1981).

117

However, in this case the trial court also relied on [Petitioner's] own statements to the jury that he was a con man and that his job "is to steal the money and to get away." Although [Petitioner] denied killing Cribbs, he candidly admitted during his radio interview that he had lied to gain Cribbs' confidence and that he intended to steal her money. Thus, by his own admission, [Petitioner's] entire association with Cribbs was motivated by pecuniary gain. He also stated that he witnessed the sale of the trailer on the day before Cribbs' murder and saw her put $4100 in cash in her purse. Neither the cash nor Cribbs' diamond ring were found at the scene. However, the other contents of Cribbs' purse were scattered across the bed at the murder scene. Based upon this evidence, we uphold the trial court's finding that the pecuniary gain aggravating circumstance is present in this case.

In issue 5, [Petitioner] argues that the heinous, atrocious, or cruel (HAC) aggravating factor was not applicable in this case.  We disagree. The medical examiner testified that Cribbs was alive when her ankles and wrists were bound as there was bleeding under the ligature marks. The medical examiner also testified that Cribbs was alive when she was stabbed on the right side of her face as blood was present on the surface of these wounds. Based upon the lack of defensive wounds and the fact that the blood was confined to the immediate area of the body, the medical examiner opined that Cribbs was bound at the time the wounds were inflicted. The fatal wound was a four to five inch stab wound to the left neck that extended into Cribbs' mouth and severed her left carotid artery. Cribbs bled to death fifteen to thirty minutes after this wound was inflicted. The medical examiner also testified that she would have remained conscious for fifteen minutes after the artery was severed.  We find that these facts establish HAC beyond a reasonable doubt. *See*, *e.g.*, *Pittman v. State*, 646 So. 2d 167, 173 (Fla. 1994) (finding HAC where victims stabbed and bled to death), *cert. denied*, 115 S. Ct. 1982, 131 L. Ed. 2d 870 (1995).

* * * *

In a footnote to this final issue, [Petitioner] also argues that his waiver of mitigation evidence precludes this Court from conducting a proportionality review of the death sentence. As discussed above, we find no error

118

regarding [Petitioner's] decision to waive presentation
of mitigation evidence and to affirmatively assert the
non-existence of mitigation. Such a valid waiver of
mitigation does not preclude this Court from conducting
the required proportionality review. *See Hamblen*.
Moreover, we find that the facts of this case warrant the
death sentence imposed and that the sentence is
proportionate to other sentences of death affirmed by
this Court. *See*, *e.g.*, *Carter v. State*, 576 So. 2d 1291
(Fla. 1989) (affirming death sentence where the trial
court found three aggravating circumstances of committed
while under a sentence of imprisonment, committed during
a robbery, and prior violent felony conviction, and one
nonstatutory mitigating circumstance of a deprived
childhood), *cert. denied*, 502 U.S. 879, 112 S. Ct. 225,
116 L. Ed. 2d 182 (1991).

*Allen I*, 662 So. 2d at 330-32.

In his post conviction motion, Petitioner asserted that he was

innocent of the death penalty.  (App. R-Vol. 6 at 842-51)  The post

conviction court denied this claim:

To prevail on this claim, [Petitioner] would have to
have shown that no statutory aggravator is applicable to
the facts of his case or that his death sentence is
disproportionate. *In re Medina*, 109 F.3d 1556, 1566-67
(11th Cir. 1997). However, both parts of the required
showing are procedurally barred because the issues[FN13]
were raised on direct appeal and decided adversely to
[Petitioner].
"[B]y his own admission, [Petitioner's]
entire association with Cribbs was motivated
by pecuniary gain. He also stated that he
witnessed the sale of the trailer on the day
before Cribbs' murder and saw her put $ 4100
in cash in her purse. Neither the cash nor
Cribbs' diamond ring were found at the scene.
However, the other contents of Cribbs' purse
were scattered across the bed at the murder
scene. Based upon this evidence, we uphold the
trial court's finding that the pecuniary gain
aggravating circumstance is present in this
case." *Allen*, *supra*, at 330.
And,

119

"The medical examiner testified that Cribbs was alive when her ankles and wrists were bound as there was bleeding under the ligature marks. The medical examiner also testified that Cribbs was alive when she was stabbed on the right side of her face as blood was present on the surface of these wounds. Based upon the lack of defensive wounds and the fact that the blood was confined to the immediate area of the body, the medical examiner opined that Cribbs was bound at the time the wounds were inflicted. The fatal wound was a four to five inch stab wound to the left neck that extended into Cribbs' mouth and severed her left carotid artery. Cribbs bled to death fifteen to thirty minutes after this wound was inflicted. The medical examiner also testified that she would have remained conscious for fifteen minutes after the artery was severed. We find that these facts establish HAC beyond a reasonable doubt." *Id.*, at 331 (citation omitted).

Moreover, [Petitioner] does not challenge the third aggravator, that the capital offense was committed by a person under the sentence of imprisonment. §921.141(5)(a), Fla.Stat. (1991).

Finally, [Petitioner's] claim that he was denied a realistic proportionality review because his own failure to presented mitigation was raised on direct appeal, albeit in a footnote, and decided adversely by the Supreme Court:

In a footnote[FN14] to this final issue, [Petitioner] also argues that his waiver of mitigation evidence precludes this Court from conducting a proportionality review of the death sentence. As discussed above, we find no error regarding [Petitioner's] decision to waive presentation of mitigation evidence and to affirmatively assert the non-existence of mitigation. Such a valid waiver of mitigation does not preclude this Court from conducting the required proportionality review. *See Hamblen* [*v. State*, 527 So.2d 800 (Fla. 1988)]. Moreover, we find that the facts of this case warrant the death sentence imposed and that the sentence is proportionate to other sentences of death affirmed by this Court.

120

> See, e.g., Carter v. State, 576 So.2d 1291
> (Fla. 1989) (affirming death sentence where
> the trial court found three aggravating
> circumstances of committed while under a
> sentence of imprisonment, committed during a
> robbery, and prior violent felony conviction,
> and one nonstatutory mitigating circumstance
> of a deprived childhood), cert. denied, 502
> U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182
> (1991). Id., at 331-32 (alterations added).
>
> Claim V is denied.
>                      * * * *
>
> [FN13]    Argument IV - The trial court erred in finding,
> as an aggravating factor, that the murder was committed
> for pecuniary gain ....
>          Argument V - The trial court erred in finding
> as an aggravating factor, that the murder was especially
> heinous, atrocious and cruel ....
>
> [FN14]    Footnote 61 to [Petitioner's] Initial Brief:
> "There was, in Songer's case [Songer v. State, 544 So.2d
> 1010 (Fla. 1989)], unlike the present case, 'significant
> mitigation' presented.  544 So. 2d at 1011.  In the
> present case, there was no mitigation presented, because
> the defendant had waived mitigation.  The invalidity of
> that waiver is the subject of Points II and III.  In the
> absence of any mitigation evidence, this Court cannot of
> course conduct a proportionality review of [Petitioner's]
> sentence.

(App. R-Vol. 8 at 1078-80)

Petitioner again raised the issue in the appeal from the

denial of his motion for post conviction relief.  (App. G at 58-62)

The Florida Supreme Court affirmed the denial of this claim:

> [Petitioner] raises 18 claims, including subparts.
> [FN3] We summarily affirm the trial court's denial of 16
> of his claims because they are procedurally barred or
> lack merit. [FN5] . . . [FN3] [Petitioner] alleges: . .
> . (12) innocence of the death penalty; . . . [FN5] . . .
> Claim 12 lacks merit because [Petitioner] has not alleged
> that all of the aggravating circumstances supporting his

death sentence are invalid and this Court already conducted a proportionality review on direct appeal.

*Allen II*, 854 So. 2d at 1257-58 (footnote 4 omitted).

To the extent that Petitioner is attempting to assert a freestanding claim that he is innocent of the death penalty, he is entitled to no relief. In *Sawyer v. Whitley*, 505 U.S. 333 (1992), the United States Supreme Court discussed the standard against which to judge the fundamental miscarriage of justice exception to the procedural default doctrine in context of capital sentencing proceedings. As such, *Sawyer* discussed the gateway claim of innocence of the death penalty and not a freestanding claim of innocence of the death penalty, as was true of *Schlup v. Delo*, 513 U.S. 298 (1995), regarding innocence of the underlying crime. Thus, *Sawyer* does not support the existence of a freestanding claim of innocence of the death penalty.

Moreover, the rationale behind the Court's refusal to recognize a freestanding claim of actual innocence regarding a conviction in *Herrera v. Collins*, 506 U.S. 390 (1993), would also apply to a freestanding claim of actual innocence of the death penalty. *Herrera* based its refusal to recognize the claim on the fact that a trial was the "decisive and portentous event" at which issues of guilt or innocence were to be resolved and that federal habeas proceedings were not intended to permit federal courts to become "forums in which to relitigate state trials." *Id.* at 401 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977), and *Barefoot*

122

*v. Estelle*, 463 U.S. 880, 887 (1983)).  Instead, the Court stated that "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact." *Id.* at 400. The Court further opined that "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."  These same reasons would apply to recognizing a freestanding claim of innocence of the death penalty.  As such, such a claim should not be cognizable, and the claim should be denied.

To the extent that Petitioner is attempting to raise this claim merely as a gateway to have his procedurally defaulted, Petitioner is again entitled to no relief.  Petitioner does not identify the defaulted claims about which his innocence would be grounds to lift the default.  Moreover, as argued about the individual penalty phase claims about which the State is arguing procedural default, the claims are without merit even if they were not defaulted.  As such, there is no reason to determine whether Petitioner can overcome the procedural default.  The claim should be denied.

Even if Petitioner has identified a defaulted claim that had merit, he would still be entitled to no relief.  The United States Supreme Court has held that to prove a claim of actual innocence of the death penalty, a defendant must show "based on the evidence

123

proffered plus all record evidence, a fair probability that a rational fact finder would have entertained a reasonable doubt as to the existence of those facts which are prerequisites under state or federal law for the imposition of the death penalty." *Sawyer v. Whitley*, 505 U.S. 333, 346 (1992)(quoting *Sawyer v. Whitley*, 945 F.2d 812 (5th Cir. 1991)). The Court further noted that "the 'actual innocence' requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error." *Id.* at 347. In applying this test to Florida's sentencing law, the Eleventh Circuit stated:

> a petitioner may make a colorable showing that he is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates <u>all</u> of the aggravating factors found to be present by the sentencing body. That is, but for the constitutional error, the sentencing body <u>could not</u> have found <u>any</u> aggravating factors and thus petitioner was ineligible for the death penalty.

*Johnson v. Singletary*, 938 F.2d 1166, 1183 (11th Cir. 1991)(en banc). This formulation was cited with approval in *Sawyer*. *Sawyer*, 505 U.S. at 347 & n.15.

Here, the trial court found three aggravating factors in support of Defendant's death sentence: under a sentence of imprisonment, for pecuniary gain and HAC. (App. Q-Vol. 1 at 239) Petitioner did not challenge the propriety of the finding of the under a sentence of imprisonment aggravator in state court and has

124

not done so in his petition.  Since Petitioner did not challenge this aggravator, he did not show that all of the aggravating circumstances were improperly found.  As such, he did not sufficiently allege that he is innocent of the death penalty under *Sawyer* or *Johnson*.  The Florida Courts' rejection of this claim was not contrary to, or an unreasonable application of, clear established United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  The claim should be denied.

To the extent that Petitioner is merely using this claim as a method of raising and re-reraising, the individual issues he mentions in this claim, he is entitled to no relief.  The claims regarding the alleged ineffective assistance of counsel at the penalty phase and sentencing, the alleged presentation of false testimony at the sentencing hearing, the alleged violation of *Caldwell*, the alleged burden shifting in the penalty phase jury instructions, the alleged unconstitutionality of the HAC jury instruction and the alleged problem with the comments in penalty phase closing are raised in Points III, IV and VII.  For the reasons asserted in the response to those points, those claims should be denied.

With regard to the claim concerning the medical examiner, Petitioner did not appeal the denial of this claim.  As such, this claim is unexhausted. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). Because the claim is unexhausted, this Court cannot grant relief on

125

this claim; it can only be reviewed to the extent it can be denied. 28 U.S.C. §2254(b)(1)(A).

Here, the claim can be denied because it is procedurally barred. When a claim has not been exhausted in the state courts but would be barred if it were presented there, a federal court may rely upon the applicable state rules and bar the claims, since exhaustion would be futile. *Teague v. Lane*, 489 U.S. 288, 297-299 (1991); *Tower v. Phillips*, 7 F.3d 206 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989). Under Florida law, a claim cannot be raised in a successive motion for post conviction relief when the basis for the claim existed at the time last post conviction motion was filed. Fla. R. Crim. P. 3.851(d)(2); *Davis v. State*, 742 So. 2d 233, 236 (Fla. 1999)(claim that could have been discovered through an exercise of due diligence at time that previous post conviction motion was filed are barred); *Buenoano v. State*, 708 So. 2d 941, 952-52 (Fla. 1998); *Zeigler v. State*, 632 So. 2d 48 (Fla. 1993)(claim barred where information could have been discovered earlier), *cert. denied*, 513 U.S. 830 (1994); *Agan v. State*, 560 So. 2d 222 (Fla. 1990)(same); *Demps v. State*, 515 So. 2d 196 (Fla. 1987)(same). Moreover, there is no provision under Florida law for a second appeal of the denial of a motion for post conviction relief to raise claims that were not raised in the appeal from the denial of the first motion. Here, Petitioner does not assert that the facts underlying this claim were not available

through an exercise of due diligence at the time that the prior motion for post conviction was heard.  The claim is not based on any fundamental change of constitutional law that has been declared retroactive.  As such, if Petitioner were to attempt to raise this claim in state court at this time, it would be deemed procedurally barred.  The claim should be denied.

Even if the claim was exhausted and not procedurally barred, Petitioner would still be entitled to no relief.  The testimony that Petitioner asserts was "false" is the medical examiner's estimation that because 1/16 of the blood volume of a person flows through a carotid artery and blood fully circulates through the body in one minute, Ms. Cribbs might have taken between 16 and 30 minutes to bleed to death and his guess that Ms. Cribbs would have remained conscious for close to 15 minutes.  (App. Q-Vol. 4 at 419-20)  The alleged basis for asserting that this testimony is false is that counsel could have presented a different expert to state that the medical examiner's estimation and guess were wrong. (Petition at 82).  However, to demonstrate that the State knowingly presented false testimony, a defendant must show more than an inconsistency in testimony or mere memory lapse, unintentional error or oversight. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989); *see also United States v. Bailey*, 123 F.3d 1381, 1395-96 (11th Cir. 1997)(proof of perjury requires more than showing of mere memory lapse, unintentional error or oversight);

*United States v. Michael*, 17 F.3d 1383, 1385 (11th Cir. 1994)(conflicts in testimony are insufficient to show perjury). As Petitioner's entire claim is based on a conflict in testimony between experts regarding an estimation and guess, he has not met this standard. The claim should be denied.

Moreover, while Petitioner suggests that his counsel was ineffective for failing to call his own pathologist to testify about the length of time it took Ms. Cribbs to bleed to death, the claim is devoid of merit. The state post conviction court rejected this claim because Petitioner asserted only that a new expert would challenge the amount of time that it took Ms. Cribbs to bleed to death, not the manner of death or the fact that Ms. Cribbs was conscious when she was stabbed. It determined that presenting such a challenge would not create a reasonable probability of a different result. (App. R-Vol. 8 at 1960-61) This is particularly true as "[t]he HAC aggravating circumstance has been consistently upheld where the victim was repeatedly stabbed. *See, e.g., Finney v. State*, 660 So. 2d 674 (Fla. 1995); *Pittman v. State*, 646 So. 2d 167 (Fla. 1994); *Atwater v. State*, 626 So. 2d 1325 (Fla. 1993)." *Guzman v. State*, 721 So. 2d 1155, 1159 (Fla. 1998); *Francis*, 808 So. 2d at 134. Under these circumstances, it was not contrary to, or an unreasonable application of, *Strickland* to reject this claim. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). The claim should be denied.

128

With regard to the claim that the evidence was insufficient to support the finding of HAC, Petitioner is entitled to no relief. In reviewing a claim that the evidence is insufficient to prove an aggravating factor, a federal habeas court is restricted to determining whether any rational factfinder could have found the factor to exist, viewing the evidence in the light most favorable to the prosecution. *Lewis v. Jeffers*, 497 U.S. 764, 780-84 (1990)(citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). In applying this test, the determination of the facts necessary to prove the aggravator are a matter of state law, which is binding upon this Court. *Jeffers*, 497 U.S. at 782-83.

Applying these standards to this matter, Petitioner is entitled to no relief. Under Florida law, HAC applies to crimes that are conscienceless or pitiless and unnecessarily torturous to the victim. *Francis v. State*, 808 So. 2d 110, 134 (Fla. 2001). In determining the application of HAC, "'the fear and emotional strain preceding the death of the victim may be considered as contributing to the heinous nature of a capital felony." *Id.* at 135. This is so because this aggravator is focused on "the victim's perceptions of the circumstances as opposed to those of the perpetrator." *Lynch v. State*, 841 So. 2d 362, 369 (Fla. 2003). It also looks at "the means and manner in which death is inflicted and the immediate circumstances surrounding the death." *Brown v. State*, 721 So. 2d 274, 277 (Fla. 1998). "The HAC aggravating circumstance has been

129

consistently upheld where the victim was repeatedly stabbed. *See, e.g., Finney v. State*, 660 So. 2d 674 (Fla. 1995); *Pittman v. State*, 646 So. 2d 167 (Fla. 1994); *Atwater v. State*, 626 So. 2d 1325 (Fla. 1993)." *Guzman v. State*, 721 So. 2d 1155, 1159 (Fla. 1998); *Francis*, 808 So. 2d at 134.

Here, the evidence showed that Ms. Cribbs was stabbed three times, twice on the right side of her face and once through the left side of her neck. Even in his post conviction proceedings, Petitioner has not challenged these facts or the fact that Ms. Cribbs was alive when stabbed and had been bound. Instead, he has only suggested that the length of time it took Ms. Cribbs to bleed to death is subject to challenge. Under these circumstances, it cannot be said that no reasonable factfinder would have found this aggravator unproven, much less that the Florida Supreme Court acted contrary to any United States Supreme Court precedent or unreasonably in rejecting this claim. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The claim should be denied.

With regard to the claim that the evidence was insufficient to support the finding of the pecuniary gain aggravator, again Petitioner is entitled to no relief. Again, in reviewing a claim that the evidence is insufficient to prove an aggravating factor, a federal habeas court is restricted to determining whether any rational factfinder could have found the factor to exist, viewing the evidence in the light most favorable to the prosecution. *Lewis*

130

*v. Jeffers*, 497 U.S. 764, 780-84 (1990)(citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).  In applying this test, the determination of the facts necessary to prove the aggravator are a matter of state law, which is binding upon this Court.  *Jeffers*, 497 U.S. at 782-83.

While Petitioner suggests that pecuniary gain must have been the primary motive for the murder for this aggravator to apply under Florida law, this is not true.  Instead, the State is required to prove that the murder was motivated, at least in part, by the desire for financial gain.  *Hildwin v. State*, 727 So. 2d 193, 195 (Fla. 1998)("We also note that, although the trial court found that pecuniary gain was the 'primary motivation for the murder,' in order to establish this aggravator the state must prove beyond a reasonable doubt only that 'the murder was motivated, at least in part, by a desire to obtain money, property or other financial gain.'")(quoting *Finney v. State*, 660 So. 2d 674, 680 (Fla. 1995)).  *Peek v. State*, 395 So. 2d 492, 499 (Fla. 1980), does not hold or even state that financial gain must be the primary motivation for the murder.  Instead, as the Florida Supreme Court explained in *Rodgers v. State*, 783 So. 2d 980, 993 (Fla. 2001), the rejection of the pecuniary gain aggravator based on the theft of a car that was subsequently abandon was based on the belief that the "defendants likely stole the vehicles to facilitate their escapes from the murder scenes."  As such, Florida law does not require the

State to show that pecuniary gain was the primary motive, only that it was a motive.

Moreover, while Petitioner asserts that Florida law estopped the State from relying on the pecuniary gain aggravator because the trial court granted a judgment of acquittal of robbery, this is again not true.  Under Florida law, collateral estoppel applies if it is shown that an issue of fact was actually determined in the prior proceedings.  When the prior acquittal is based on a general verdict, a court is permitted to examine the prior record, including the pleadings and evidence, to determine whether the jury could have acquitted the defendant based on an issue other than the one which the defendant claims preclusion. *Alvord v. State*, 332 So. 2d 533, 539 (Fla. 1975); *see also Ashe v. Swanson*, 397 U.S. 436, 475-76 (1970).  If the prior acquittal did not actually decide the issue on which preclusion is claimed, collateral estoppel does not apply.  *Gragg v. State*, 429 So. 2d 1204, 1206 (Fla. 1983).

With regard to the pecuniary gain aggravating circumstance in Florida, it is only necessary for the State to prove the murder was motivated by financial gain.  *Hildwin*, 727 So. 2d at 195; *Finney*, 660 So. 2d at 680.  As such, it is not necessary for the State to prove that the murder occurred during the course of a robbery to prove this aggravator.  See Zeigler v. State, 580 So. 2d 127, 129 (Fla. 1991); Antone v. State, 382 So. 2d 1205 (Fla. 1980).  As such, collateral estoppel would only bar the finding of the

pecuniary gain aggravator if it could be said that the acquittal of the robbery charge was based on a finding that Petitioner did not intend to obtain the property.  However, a review of the record regarding the judgment of acquittal showed that the trial court's concern was a lack of connection between the violence and the taking and not a concern with Petitioner's motivation.  (App. Q-Vol. 5 at 520-33)  As such, Petitioner's assertion that reliance on this evidence was barred under Florida law is untrue.

Petitioner further asserts that the Florida courts should not have considered Petitioner's unsworn statements at closing as evidence.  However, the determination of what evidence is admissible is a matter of state law, and this Court is bound by the Florida courts' determination that it was admissible as evidence. *Breedlove v. Moore*, 279 F.3d 952, 963 (11th Cir. 2002).  Under Florida law, admissions by a party opponent are admissible as evidence when offer by the adverse party. §90.803(18), Fla. Stat. As such, there was nothing improper about using Petitioner's own statements against him.

Given the evidence that Ms. Cribbs had $4100 in her purse before she was killed, the money was missing after the murder, the other contents of the purse were strewn on Ms. Cribbs' bed, the fact that Petitioner paid for a cab with a $100 after the murder and Petitioner's admissions that his entire association with Ms. Cribbs was motivated by his desire to steal from her, it was

133

neither contrary to, nor an unreasonable application of, any clearly established United States Supreme Court precedent for the state courts to find that a rational factfinder could have found the factor to exist. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). The claim should be denied.

With regard to the claim that the sentence is disportionate, again Petitioner is entitled to no relief. The United States Supreme Court has held that proportionality is an issue of state law and claims of error regarding the conduct of a proportionality review are not cognizable in federal habeas. *Pulley v. Harris*, 465 U.S. 37 (1984); *see also Walton v. Arizona*, 497 U.S. 655-66 (1990), *overruled on other grounds*, *Ring v. Arizona*, 536 U.S. 584 (2002); *Bush v. Singletary*, 99 F.3d 373, 375 (11th Cir. 1996); *Booker v. Wainwright*, 746 F.2d 1371, 1380 (11th Cir. 1985); *Alvord v. Wainwright*, 725 F.2d 1282, 1300-01 (11th Cir. 1984). Since the claim is not cognizable, it should be denied.

To the extent that Petitioner is attempting to assert that he is entitled to relief based on the alleged cumulative effect of the claims that he mentions, he is again entitled to no relief. The Eleventh Circuit has adopted the Fifth Circuit's test for cumulative error claims. *Cargill v. Turpin*, 120 F.3d 1366, 1386-87 (11th Cir. 1997). The Fifth Circuit has held that to demonstrate cumulative error, a petitioner must show that the individual errors of a constitutional dimension have merit, that the errors were not

134

procedurally barred and that the errors considered together deprived the petitioner of a fair trial. *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992). Here, the Florida Courts found all of Petitioner's claims to be procedurally barred, without merit or both. As such, the Florida Courts did not act unreasonably in denying the cumulative error claim. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). The claim should be denied.

POINT VII.

**THE CLAIM REGARDING COMMENTS AND INSTRUCTIONS REGARDING THE PENALTY PHASE SHOULD BE DENIED.**

Petitioner next asserts that he is entitled to habeas relief because comments by the trial court and State and the penalty phase jury instructions violated *Caldwell v. Mississippi*, 472 U.S. 320 (1985), in that they informed the jury that it was making an advisory recommendation regarding sentencing, and because counsel was ineffective for failing to object to them. Further, Petitioner asserts that his counsel was ineffective for failing to object to a penalty phase jury instruction that allegedly shifted the burden of proof regarding the death penalty. Petitioner also contends that his counsel was ineffective for failing to claim that the jury instruction on HAC was unconstitutionally vague in that it did not inform the jury that the State allegedly had to prove that Petitioner intended to torture the victim. He also asserts that the State made improper comments in the penalty phase closing argument that referred to non-statutory aggravating circumstances and to the conscious of the community and that his counsel was ineffective for failing to object to these comments. However, these claims should be denied as they are procedurally barred and without merit.

A.   *Caldwell*.

Petitioner first raised this claim in his motion for post conviction relief. (App. R-Vol. 6 at 758-60, 784-85, 829-31) The

136

post conviction court denied this claim as procedurally barred and

without merit:

> [Petitioner] claims that Counsel was ineffective for permitting the Trial Court and the State to diminish the veniremembers' sense of responsibility for sentencing in a death penalty case contrary to *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The *Caldwell* claim is procedurally barred:
>
>> "This Court has repeatedly held that *Caldwell* claims can and should be raised on direct appeal and are procedurally barred in postconviction proceedings." *Teffeteller v. Dugger*, 734 So.2d 1009, 1026 (Fla. 1999) (citation omitted).
>
> Moreover, even if it had been properly raised, the claim would be unavailing because the comments of the Trial Court and the State were accurate statements of the law.
>
>> THE COURT:    In ... [the penalty] phase, testimony is presented to you in combination ... [with] what you have already heard, to what we refer to as aggravating factors presented by the State and mitigating factors presented by the defense, those factors are then weighed by you and you return as a jury with a recommendation to the Court as to whether or not the death penalty should be imposed.
>>
>> It is the Court who make the determination as to whether the death penalty is imposed. However, great weight and great attention is paid to the recommendation of the jury. I in no way wish to minimize the importance of the jury's recommendation to the Court in reaching that decision (T.Tr. 26, 28-27, 6, Exhibit 13)
>
> And to the same effect:
>
>> [THE STATE:]   In the ... [penalty] part of the trial you are given more facts and information and arguments, and you decide whether or not the defendant should be given the death penalty. That recommendation is made to the Court. The Court makes the final decision on the penalty. But the second part of that bifurcated trial is where you give a

recommendation to the Judge.  (T.Tr. 43,
14021, Exhibit 14)
Inasmuch as [Petitioner] later raises the same issue
with respect to the instructions given to the jury[FN4],
it should be noted that that issue had been repeatedly
raised and resolved in that context also (and will not be
revisited in this order):
"[The Defendant] ... argues that the
standard jury instruction in capital cases
denigrates the jury's true role in sentencing
in violation of *Caldwell* ....  This Court has
held that the standard jury instruction fully
advises the jury of the importance of its
role, correctly states the law, and does not
denigrate the role of the jury." *Brown v.
State*, 721 So.2d 274, 283 (Fla.
1998)(citations omitted)(alteration added).

(App. R-Vol. 8 at 1035-36)

Petitioner raised the denial of this claim on appeal.  (App.

G at 63-64) However, Petitioner did not present any argument

regarding why the claim was improperly denied.  *Id.*  The Florida

Supreme Court affirmed the finding that this claim was procedurally

barred.  *Allen II*, 854 So. 2d at 1257-58 & n.4.

This claim is procedurally barred.  Both the Florida Supreme

Court and the state trial court expressly found this claim to be

procedurally barred.  As such, this Court cannot hear this claim,

absent a showing of cause and prejudice. *Coleman v. Thompson*, 501

U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977).  As

Petitioner has not even attempted to make such a showing, this

claim should be denied.

Even if the claim was not procedurally barred it should still

be denied.  The state trial court alternatively rejected this claim

138

on the grounds that the comments were not improper and that counsel was not ineffective for failing to make the nonmeritorious claim that they were.  This holding is not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent.  In *Romano v. Oklahoma*, 512 U.S. 1 (1994), the Court held, "[t]o establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law."  *Id.* at 9 (quoting *Dugger v. Adams*, 489 U.S. 401, 407 (1989)).  The Florida Supreme Court has recognized that the jury's penalty phase decision is merely advisory and that the judge does make the final sentencing decision.  *Combs v. State*, 525 So. 2d 853, 855-58 (Fla. 1988).  As such, the comments about which Petitioner complains properly stated the jury's role under Florida law and did not violate *Caldwell*.  *Johnson v. Singletary*, 162 F.3d 630, 642-44 (11th Cir. 1998).  Moreover, because the comments were proper, counsel cannot be deemed ineffective for failing to make the nonmeritorious claim that they were not.  *Id.*  Thus, the Florida Courts' rejection of these claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent.  *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).  The claim should be denied.

139

B.   Burden Shifting.

Petitioner first raised this claim in his motion for post conviction relief.  (App. R-Vol. 6 at 831) The post conviction court denied this claim as procedurally barred.  (App. R-Vol. 8 at 1075-77)  Petitioner raised the denial of this claim on appeal. (App. G at 63-64) However, Petitioner did not present any argument regarding why the claim was improperly denied.  *Id.* The Florida Supreme Court affirmed the finding that this claim was procedurally barred.  *Allen II*, 854 So. 2d at 1257-58 & n.4.

This claim is procedurally barred.  Both the Florida Supreme Court and the state trial court found that this claim was procedurally barred.  As such, this Court cannot hear this claim, absent a showing of cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977). As Petitioner has not even attempted to make such a showing, this claim should be denied.

Even if the claim was not barred, it should still be denied. Counsel cannot be deemed ineffective for failing to raise a nonmeritorious claim. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).  In *Walton v. Arizona*, 497 U.S. 639 (1990), *overruled on other grounds*, *Ring v. Arizona*, 536 U.S. 584 (2002), the Court held that it was not unconstitutional for a state to require a defendant to show that the mitigating circumstances were

140

sufficient to call for leniency. *Walton*, 497 U.S. at 649-51; *see also Kennedy v. Dugger*, 933 F.2d 905, 915 (11th Cir. 1991). In *Kansas v. Marsh*, 126 S. Ct. 2516 (2006), the Court reaffirmed that this was the law and that this holding of *Walton* had not been overruled. Thus, Petitioner's claim that informing the jury that the mitigating circumstances had to outweigh the aggravating circumstances was not unconstitutional is meritless, and counsel cannot be deemed ineffective for failing to claim otherwise. The claim should be denied.

To the extent that Petitioner may contend that he is entitled to relief under *Ring*, this is untrue. First, the United States Supreme Court stated that it was only overruling *Walton* to the extent that it held that a judge could determine whether an aggravating circumstances existed. *Id.* at 589. Moreover, the Court stated that it was not addressing any issue with regard to mitigation. *Id.* at 597 n.4. Thus, the portion of *Walton* that addressed the burden of proof was left untouched by *Ring*. *Kansas v. Marsh*, 126 S. Ct. 2516 (2006). Moreover, both the United States Supreme Court and the Eleventh Circuit have held that *Ring* does not apply retroactively. *Schriro v. Summerlin*, 542 U.S. 348 (2004); *Turner v. Crosby*, 339 F.3d 1247 (11th Cir. 2003). Thus, Petitioner is entitled to no relief. The claim should be denied.

141

C.   HAC.

Petitioner raised this claim for the first time in his motion for post conviction relief.  (App. R-Vol. 6 at 831-33)  The post conviction court denied this claim as procedurally barred.  (App. R-Vol. 8 at 1075-77)

Petitioner raised the denial of this claim on appeal.  (App. G at 64) However, Petitioner did not present any argument regarding why the claim was improperly denied.  *Id.*  The Florida Supreme Court affirmed the finding that this claim was procedurally barred. *Allen II*, 854 So. 2d at 1257-58 & n.4.

This claim is procedurally barred.  Both the Florida Supreme Court and the state trial court expressly found the claim was procedurally barred.  As such, this Court cannot hear this claim, absent a showing of cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977). As Petitioner has not even attempted to make such a showing, this claim should be denied.

Even if the claim was not procedurally barred, it should still be denied as it is without merit.  In *Proffitt v. Florida*, 428 U.S. 242, 255-56 (1976), the Court held that Florida's HAC aggravator was not unconstitutionally vague, given that Florida had limited its application to consciousless or pitiless crimes, which were unnecessarily torturous to the victim.  In *Sochor v. Florida*, 504 U.S. 527 (1992), the Court noted that the failure to instruct the

142

jury about this limiting construction was improper.  In *Espinosa v. Florida*, 505 U.S. 1079 (1992), the Court applied *Sochor* to invalidate a death sentence where the jury was not instructed on the limiting construction.[14]  Taken together, these cases stand for the proposition that a Florida jury must be instructed as part of the HAC aggravator that HAC applies to consciousless or pitiless crimes that are unnecessarily torturous to the victim.

Here, the jury was instructed on the limiting construction approved in *Proffitt*.  The jury was told:

> Three, that the crime for which the defendant is to be sentenced was especially heinous, atrocious or cruel. Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wick and vile.  Cruel means designed to inflict a high degree of pain with utter indifference to, or even the enjoyment of, the suffering of others.  **The kind of crime intended to be included as heinous, atrocious or cruel, is one accompanied by additional acts that show the crime was consciousless or pitiless and was unnecessarily tortuous to the victim.**

(App. Q-Vol. 7 at 765) As such, the jury instruction was proper. Counsel cannot be deemed ineffective for failing to claim otherwise.  *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).  The claim should be denied.

While Petitioner asserts that the instruction was improper because the jury was not instructed that he had to intend to

---

[14]In *Sochor*, the claim could not be directly addressed by the Court because the Florida Supreme Court had held the claim to be barred.

torture the victim for HAC to apply, intent to torture is not an element of HAC under Florida law. *Belcher v. State*, 851 So. 2d 678, 683-84 (Fla. 2003); *Lugo v. State*, 845 So. 2d 74, 112 (Fla. 2003); *Bowles v. State*, 804 So. 2d 1173, 1177 (Fla. 2001); *Hitchcock v. State*, 755 So. 2d 638, 644 (Fla. 2000); *Guzman v. State*, 721 So. 2d 1155, 1160 (Fla. 1998); *Brown v. State*, 721 So. 2d 274, 277 (Fla. 1998).  This is consistent with the limiting construction approved in *Proffitt*, which requires only that the crime be consciousless or pitiless and unnecessarily torturous to the victim and not that a defendant intent it to be so.  Moreover, in *Lewis v. Jeffers*, 497 U.S. 764, 779-80 (1990), the Court stated that once an limiting construction of an aggravator had been adopted and applied in a case, the Constitution was satisfied and the issue became on of state law.  Here, the Florida Supreme Court has adopted a limiting construction of HAC, which was approved in *Proffitt*, and the jury was instructed on that limiting construction.  As such, the Constitution was satisfied.  Thus, it cannot be said that the jury instructions' failure to include as an element that which is not an element under state law was not error.  Counsel cannot be deemed ineffective for failing to make an nonmeritorious claim to the contrary.  *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984).  The claim should be denied.

D.   Comments in Closing.

On direct appeal, Petitioner claimed that the State had introduced evidence of nonstatutory aggravating circumstances through its comments about Petitioner's escape.  (App. A at 60-63) The Florida Supreme Court rejected this claim as procedurally barred and without merit:

> As his final issue, [Petitioner] argues that the prosecutor improperly argued the nonstatutory aggravating factor of future dangerousness during the penalty phase before the jury and during the sentencing proceeding before the judge. While arguing to the jury that the aggravating circumstance of "committed by a person under a sentence of imprisonment" applied in this case, the prosecutor reminded the jury that [Petitioner] had escaped from a work release facility in Kansas in 1990. The prosecutor also argued that "no form of control, whether it was probation or parole or prison or work release was adequate to take care of this defendant. Had he served out his term of years in Kansas at the time, this crime might not have been committed 13 months later." [Petitioner] contends that the prosecutor was in essence arguing that he should be executed because he would escape from prison and kill again, which constitutes a nonstatutory aggravating factor that the sentencer may not consider. *See Teffeteller v. State*, 439 So. 2d 840, 845 (Fla. 1983) ("There is no place in our system of jurisprudence for [future dangerousness] argument."), *cert. denied*, 456 U.S. 1074, 104 S. Ct. 1430, 79 L. Ed. 2d 754 (1984).

> Initially, we note that this issue has not been preserved for appeal as the defense neither objected to the prosecutor's argument during either proceeding nor made a motion for mistrial. *Parker*, 456 So. 2d at 443. However, even if the issue of the prosecutor's argument to the jury had been preserved, it would have no merit. The prosecutor did not predict that [Petitioner] would murder again if he were sentenced to life imprisonment and paroled after twenty-five years, which is the type of argument that this Court condemned in *Teffeteller*, 439 So. 2d at 844-45. Instead, the prosecutor's comment in

this case was very similar to the one that we found proper in *Parker*, 456 So. 2d at 443.

Even if defense counsel had preserved the issue of the prosecutor's argument during the sentencing proceeding, any error would be harmless in this case. The sentencing order specifically provides that the court's decision to impose the death sentence was based solely on the three statutory aggravating factors of committed by a person under a sentence of imprisonment, committed for pecuniary gain, and HAC. The order further provides that "the Court did not allow any other aggravating factors to be argued to the jury and the Court finds that those aggravating factors do not exist or there was insufficient evidence in the record to support them."

*Allen I*, 662 So. 2d at 331.

In his motion for post conviction relief, Petitioner raised the issue regarding these comments again, as part of his claim that counsel was ineffective during the penalty phase.  (App. R-Vol. 6 at 834-37) He also added a claim asserting counsel was ineffective for failing to object to a comment that allegedly referred to the conscience of the community.  (App. R-Vol. 6 at 838) The post conviction court denied this claim as procedurally barred.  (App. R-Vol. 8 at 1075-77)

Petitioner raised the denial of this claim on appeal.  (App. G at 64) However, Petitioner merely stated that the lower court had erred in denying this claim without presenting any argument regarding why this was true.  *Id.*  The Florida Supreme Court affirmed the finding that this claim was procedurally barred. *Allen II*, 854 So. 2d at 1257-58 & n.4.

146

This claim is procedurally barred.  The Florida Supreme Court found the substantive claim procedurally barred when it was raised on direct appeal.[15]  Both the Florida Supreme Court and the state trial court found the claim procedurally barred in the post conviction proceedings.  As the Florida Courts found this claim to be barred, this Court cannot hear this claim, absent a showing of cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977). As Petitioner has not even attempted to make such a showing, this claim should be denied.

Even if the claim was not barred, Petitioner would still be entitled to no relief.  The Florida Supreme Court alternatively found on direct appeal that the comment considering Petitioner's prior prison sentence was proper and did not refer to Petitioner's alleged future dangerousness. *Allen I*, 662 So. 2d at 331.  Issues regarding the propriety of comments in closing are generally issues of state law, unless the comment refers to a specific constitutional right. *See Houston v. Estelle*, 569 F.2d 372, 380 (5th Cir. 1978); *Martin v. Wainwright*, 428 F.2d 356 (5th Cir. 1970); *see also Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). While Petitioner contends that the presentation of nonstatutory

---

[15]The United States Supreme Court has recognized that the Florida Supreme Court's statement that a claim was not preserved for review is a finding of a procedural bar. *Sochor v. Florida*, 504 U.S. 527, 534-35, 112 S. Ct. 2114, 2120 (1992)(same language sufficient to provide plain statement that denial of claim rested on adequate and independent state law ground).

aggravation does refer to a specific constitutional right, this is not true. There is no constitutional prohibition against the presentation of nonstatutory aggravation, and instead the issue is one of state law. *Wainwright v. Goode*, 464 U.S. 78 (1983). As such, this Court is bound by the Florida Supreme Court's determination that the comment was proper. *Breedlove v. Moore*, 279 F.3d 952, 963-64 (11th Cir. 2002). Counsel could not be deemed ineffective for failing to claim otherwise. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). The claim should be denied.

The claim regarding the comment that allegedly appeal to the conscious of the community is also without merit. It is not clear that the State's comment was even improper under State law. During its argument to the trial judge at the sentencing hearing, the State first summarized the evidence that it had presented in support of the aggravating circumstances. (App. Q-Vol. 8 at 797-800) The State then reminded the judge of the jury's recommendation by stating: "I think that the community has spoken to you through their eleven to one jury decision in favor of the death penalty." (App. Q-Vol. at 800) The Florida Supreme Court has emphasized that the reason why a jury's recommendation in a capital sentencing phase is entitled to great weight under Florida law is because "[w]e choose juries to serve as democratic representatives of the community, expressing the community's will regarding the penalty to

be imposed." *Stevens v. State*, 613 So. 2d 402, 403 (Fla. 1992). Viewed in this context, the State's comment was merely a reminder to the trial court of its duty to afford great weight to the jury's recommendation. In fact, the Florida Supreme Court has recently determined that a similar comment was not improper under Florida law. *Rodriguez v. State*, 919 So. 2d 1252, 1282-83 (Fla. 2005). As such, the comment was not even improper, and counsel cannot be been ineffective for failing to claim otherwise. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). Petitioner is entitled to no relief.

The cases relied upon by Petitioner do not compel a contrary result. First, the cases all arise in the context of federal criminal proceedings, over which federal courts have a broader scope of review. *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Second, the cases hold that "appeals for the jury to act as 'the conscious of the community' are not impermissible, unless calculated to inflame." *United States v. Bascaro*, 742 F.2d 1335, 1354 (11th Cir. 1984); *United States v. Kopituk*, 690 F.2d 1289, 1342-43 (11th Cir. 1982); *see also United States v. Beasley*, 2 F.3d 1551, 1556 & n.24 (11th Cir. 1993). Here, the comments were not intended to inflame but to emphasize the great weight to be accorded the jury's recommendation. As such, Petitioner's reliance on these cases is misplaced.

Even if Petitioner has shown that the comments were improper, he would still be entitled to no relief.  In order to succeed on this ineffective assistance of counsel claim, Petitioner would need to be able to prove that but for counsel's failure to object to this comment, there is a reasonable probability that he would not have been sentenced to death.  *Strickland*, 466 U.S. at 694. However, immediately after the State finished its argument, the trial court, to whom the argument was made, stated, "For the record, I am considering the State's argument only as it applied to those aggravating factors which were submitted to the jury." (App. Q-Vol. 8 at 800) Since the judge affirmatively stated that he was not going to consider any improper comment the State may have made, Petitioner cannot show that but for counsel's failure to object to this comment, there is a reasonable probability that the result of the proceeding would have been different.  The claim is without merit and should be denied.

## POINT VIII.

### AS *RING* IS NOT RETROACTIVE, THIS CLAIM IS BARRED.

Petitioner next contends that Florida's capital sentencing scheme is unconstitutional pursuant to *Ring v. Arizona*, 536 U.S. 584 (2002). Specifically, he contends that *Ring* is violated because the jury's penalty phase recommendation does not have to be unanimous, the recommendation does not specify what the jury found, the recommendation is a recommendation, the judge writes the sentencing order, the aggravating circumstances are not charged in the indictment, and the burden of proof was shifted to Petitioner in the penalty phase. He further contends that *Ring* shows that the Sixth Amendment was violated in his case by the admission of hearsay at the penalty phase. However, this claim should be denied.

In his state habeas petition, Petitioner claimed that his death sentence was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (App. J at 8-15) Specifically, Petitioner asserted that *Apprendi* was violated because he did not have notice of the aggravating circumstances, the judge wrote the sentencing order, there was no way to tell if the jury was unanimous regarding the existence of any aggravating circumstance and the judge found any aggravating circumstances applicable. *Id.* In his reply, Petitioner asserted that *Ring* showed that Florida's capital sentencing scheme was unconstitutional for all of the reasons

asserted in his federal habeas petition except the claim regarding the confrontation clause.  (App. M at 1-19) The Florida Supreme Court rejected these arguments:

> [Petitioner] also claims that Florida's capital sentencing scheme is unconstitutional in light of *Ring v. Arizona*, 536 U.S. 584, 153 L. Ed. 2d 556, 122 S. Ct. 2428 (2002). We recently rejected such an argument in *Doorbal v. State*, 837 So. 2d 940, 963 (Fla. 2003). Moreover, one of the aggravating factors in this case was that the murder was committed while [Petitioner] was under a sentence of imprisonment. Such an aggravator need not be found by the jury. *Cf. Apprendi v. New Jersey*, 530 U.S. 466, 490, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000) (holding that the fact of a prior conviction need not be submitted to a jury for determination). Therefore, we deny both claims.

*Allen II*, 854 So. 2d at 1262.

In *Schriro v. Summerlin*, 542 U.S. 348 (2004), the Court held that *Ring* did not apply retroactively to cases that were final before *Ring* issued.  As such, federal habeas claims based upon *Ring* by petitioners whose cases were final before *Ring* are barred by *Teague v. Lane*, 489 U.S. 288 (1989).  Even before *Summerlin*, the Eleventh Circuit had reached the same conclusion regarding a *Ring* claim raised by a Florida death row defendant.  *Turner v. Crosby*, 339 F.3d 1247, 1279-86 (11th Cir. 2003), *cert. denied*, 124 S. Ct. 2104 (2004).

Here, Petitioner's convictions and sentences became final on March 26, 1996, when the United States Supreme Court denied certiorari review from direct appeal.  (App. U) *Ring* was not decided until June 24, 2002.  As Petitioner's convictions and

152

sentences were final when *Ring* issued, this claim is barred by

*Teague*.  *Summerlin*; *Turner*.  It should be denied.

## POINT IX.

**THE CLAIM REGARDING JUROR INTERVIEWS IS NOT COGNIZABLE, PROCEDURALLY BARRED AND WITHOUT MERIT.**

Petitioner next asks this Court to hold that Rule 4-3.5(d)(4), R. Regulating Fla. Bar. is unconstitutional, or in the alternative to appoint social scientists to interview the jury in his case. Petitioner contends that such a holding is necessary so that he can interview the jury to determine if there was "jury misconduct or bias that may be inherent in the jury's verdict." Petition at 127. However, this claim should be denied because it is not cognizable in this proceeding, is procedurally barred and is without merit.

Petitioner first raised this claim in state court in his motion for post conviction relief. (App. R-Vol. 6 at 840-41)  The state post conviction court denied the claim summarily:

> The assertion that a defendant should be permitted to claim on postconviction relief a denial of a right to interview the jurors had been repeatedly raised and rejected:
>
> > "The trial court did not address ... [the defendant's] claim that he was prohibited from interviewing jurors.  While we normally send an unaddressed claim back for the trial court to rule upon, we conclude that remand on this issue is unnecessary because the claim is both procedurally barred and legally insufficient. Any claims relating to ... [the defendant's] inability to interview jurors should and could have been raised on direct appeal. Furthermore, ... [the defendant] did not make a prima facie showing of any juror misconduct in his postconviction motion below.  Instead, he appears to be complaining about a defendant's inability to conduct "fishing expedition" interviews with jurors after a guilty verdict is returned.  Thus, even if the

154

claim were not procedurally barred, ... [the
defendant] would not be entitled to any relief
on the grounds he asserted and no evidentiary
hearing was required on this claim." *Arbelaez
v. State*, 775 So.2d 909, 920 (Fla.
2000)(citations and footnotes
omitted)(alterations added).
    *See also to the same effect, Jennings v. State*, 782 So.2d
853, 864 (Fla. 2001); *Brown v. State*, 755 So.2d 616, 620
n. 4, 621 n. 7(Fla. 2000); *Gaskin v. State*, 737 So.2d
509, 512 n. 5, 513 n. 6 (Fla. 1999).
    Claim IV is denied as legally insufficient and
procedurally barred.

(App. R-Vol. 8 at 1078). Petitioner again raised this issue in the

appeal for the denial his motion for post conviction relief. (App.

G at 64-65) The Florida Supreme Court affirmed the denial of this

claim:

        [Petitioner] raises 18 claims, including subparts.
    [FN3] We summarily affirm the trial court's denial of 16
    of his claims because they are procedurally barred [FN4]
    or lack merit. . . . [FN3] Petitioner alleges: . . . (15)
    that the rules prohibiting interviewing jurors are
    unconstitutional; . . . [FN4] Claims 14, 15, and 16
    should have been raised during the direct appeal. . . .
    *Rose v. State*, 774 So. 2d 629, 637 n.12 (Fla.
    2000)(claims challenging the constitutionality of the
    rules of the rules governing juror interviews should be
    brought on direct appeal)(claim 15).

*Allen I*, 854 So. 2d at 1258-59.

    Initially, the State would note that this issue is not

cognizable in this proceeding because it does not challenge the

legality of his detention. Pursuant to 28 U.S.C. §2254(a), a

federal habeas petition by a state inmate is cognizable "only on

the grounds that he is in custody in violation of the Constitution

or laws or treaties of the United States." The Eleventh Circuit

has held that "where a petitioner's claim goes to an issues unrelated to the cause of petitioner's detention, that claim does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1261 (11th Cir. 2004)(claim that judge that preside over state post conviction proceedings should have been disqualified); *see also Spradley v. Dugger*, 825 F.2d 1566, 1568 (11h Cir. 1987)(claim that state court erred in post conviction proceeding by denying motion without holding an evidentiary hearing or attaching portions of the record); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995)(claims of error in a state post conviction proceeding not cognizable in federal habeas).  The Eleventh Circuit has also refused to rule on the facial constitutionality of a state statute because such a ruling did not directly affect whether the petitioner was illegally detained.  *See Jones v. Goodwin*, 982 F.2d 464, 471-72 (11th Cir. 1993).  Additionally, the Court has held that courts on federal habeas do not have the jurisdiction to issue mandatory injunctions that do not concern the legality of the petitioner's detention.  *Pierre v. United States*, 525 F.2d 933 (5th Cir. 1976).[16]

Here, Petitioner requests that this Court hold a rule regulating the practice of lawyers in Florida unconstitutional, or appoint people not restricted by the rule, so that he can conduct

_____

[16]Cases decided by the former Fifth Circuit on or before September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

a fishing expedition in the hopes of finding a post conviction claim. However, such a claim does not itself affect the legality of Petitioner's detention. Instead, it merely asserts an alleged flaw in the State's post conviction procedure, seeks to declare a state rule unconstitutional on its face and seeks a mandatory injunction unrelated to his detention. As such, the claim is not cognizable. *Quince*; *Jones*; *Pierre*. The claim should be denied.

Even if the claim was cognizable, Petitioner would still be entitled to no relief. The claim is procedurally barred. The Florida Supreme Court expressly stated that it was affirming the denial of this claim because it was procedurally barred as it was not raised on direct appeal and should have been. When a state court has ruled that a claim is procedurally barred, this Court cannot address the merits of this claim unless Petitioner shows cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977). As Petitioner had not tried to do so, the claim should be denied.

Even if the claim was cognizable and not procedurally barred, Petitioner would still be entitled to no relief because the claim is without merit. It has long been the law in this circuit that juror interviews should only be granted if the movant shows that an illegal or prejudicial intrusion into the jury process occurred. *United States v. Venske*, 296 F.3d 1284, 1290-91 (11th Cir. 2002); *United States v. Prosperi*, 201 F.3d 1335, 1340-41 (11th Cir.

2000)(inquiry of jurors improper without evidence of influence from an outside source); *United States v. Hooshmand*, 931 F.2d 725, 736-37 (11th Cir. 1991); *United States v. Cuthel*, 903 F.2d 1381, 1382-83 (11th Cir. 1990); *O'Rear v. Fruehauf*, 554 F.2d 1304, 1309-10 (5th Cir. 1977); *see also Tejada v. Dugger*, 941 F.2d 1551, 1560-61 (11th Cir. 1991)(relying on federal case law regarding when juror interviews are appropriate to deny habeas claim regarding state court's refusal to allow juror interview).  The showing must include "clear, strong, substantial and incontrovertible evidence . . . that a specific, nonspeculative impropriety has occurred." *Cuthel*, 903 F.2d at 1383 (internal quotation omitted).  The Eleventh Circuit has specifically rejected claims that this requirement, and a local rule of this Court that mirrors the requirements of R. Regulating Fla. Bar 4-3.5, violate the First and Sixth Amendments.[17]  *Hooshmand*, 931 F.2d at 736-37; *United States v. Griek*, 920 F.2d 840 (11th Cir. 1991).

Here, Petitioner has not presented any evidence of any act of misconduct on the part of any juror, either in this Court or in state court.  Instead, he merely seeks to have the Florida rule prohibiting contacting jurors set aside so that he can conduct a fishing expedition.  Given that the Eleventh Circuit has already

---

[17]In fact, the Eleventh Circuit has held that the Sixth Amendment is not violated by exclusion of evidence of juror misconduct that was obtain in contravention of a similar rule prohibiting juror contact.  *Venske*, 296 F.3d at 1291-92.

rejected challenges to similar rules and requirements in federal courts, this claim has no merit and should be denied.

Moreover, one of the purposes that Petitioner asserts that he seeks to fulfill by interviewing the jurors is to determine whether any of the jurors possessed any "bias that may be inherent in the jury's verdict." Petition at 127.  However, under both the Florida and Federal Evidence Codes, evidence regarding such biases is inadmissible. Fed. R. Evid. 606(b); §90.607(2)(b), Fla. Stat.  The United States Supreme Court upheld this rule as early as 1915. *McDonald v. Pless*, 238 U.S. 264 (1915).  As such, permitting Petitioner to interview jurors for this purpose would be a futile endeavor, as nothing found could be used.  The claim is without merit and should be denied.

## POINT X.

**THE CLAIM REGARDING THE CONSTITUTIONALITY OF FLORIDA'S CAPITAL SENTENCE STATUTE IS PROCEDURALLY BARRED AND WITHOUT MERIT.**

Petitioner finally contends that Florida's capital sentence law is unconstitutional.  Specifically, he asserts that Florida's law does not adequately channel the jury's discretion, does not provide a standard of proof for determining whether the mitigating circumstances outweigh the aggravating circumstances, and does not define sufficient aggravating circumstances.  Further, he contends that the Florida Supreme Court must independently reweigh the aggravating and mitigating circumstances on direct appeal, that juries are given vague instructions on aggravating circumstances and that Florida law includes an unconstitutional presumption of death if one aggravator is present.  However, this claim should be denied, as it is procedurally barred and without merit.

Petitioner first raised this claim in state court in his motion for post conviction relief.  (App. R-Vol. 6 at 857-60)  The post conviction court denied this claim, stating:

> The constitutionality of the death penalty could and should have been raised on direct appeal.  *Arbelaez*, *supra*, at 919.  Further challenges to the constitutionality of the death penalty have been made repeatedly and rejected as often.  *See Farina v. State*, 26 Fla.L.Weekly S527, 530 (Fla. August 16, 2001), *citing to Provenzano v. Moore*, 744 So.2d 413 (Fla. 1999), cert. denied, 528 U.S. 1182, 120 S.Ct. 1222, 145 L.Ed.2d 1122 (2000); *Jones v. State*, 701 So.2d 76, 79 (Fla. 1997); *Medina v. State*, 690 So.2d 1241, 1244 (Fla. 1997).
> Claim VIII is denied as procedurally barred.

(App. R-Vol. 8 at 1081)

On appeal from the denial of his motion for post conviction relief, Petitioner again raised the denial of this claim as a issue.  (App. G at 65) However, Petitioner presented no argument regarding this issue.  *Id.*  The Florida Supreme Court affirmed, finding the claim procedurally barred:

> [Petitioner] raises 18 claims, including subparts. [FN3]
> We summarily affirm the trial court's denial of 16 of his
> claims because they are procedurally barred [FN4] or lack
> merit.
>
> * * * *
>
> [FN3] [Petitioner] alleges: . . . (16) that Florida's
> capital sentencing statute is unconstitutional;
>
> * * * *
>
> [FN4] . . . Claims 14, 15, and 16 should have been raised
> during the direct appeal. . . .  *Arbelaez v. State*, 775
> So. 2d 909, 919 (Fla. 2000)(challenges to the
> constitutionality of Florida's death penalty scheme
> should be raised on direct appeal) (claim 16).

*Allen II*, 854 So. 2d at 1257-58.

This claim is procedurally barred.  Both the Florida Supreme Court and the state post conviction court ruled expressly that this claim was procedurally barred.  As such, this Court cannot hear this claim, absent a showing of cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977). As Petitioner has not even attempted to make such a showing, this claim should be denied.

Even if the claim was not procedurally barred, it should still be denied as without merit.  The United States Supreme Court has upheld Florida's capital sentencing scheme against claims that it fails to narrow adequately the class of death eligible defendants and does not sufficiently define aggravating circumstances. *Proffitt v. Florida*, 428 U.S. 242 (1976).  The claim that statute is vague because it does not provide a burden of proof for the weighing process has also been rejected.  *Foster v. Strickland*, 707 F.2d 1339, 1345 (11th Cir. 1983); *Ford v. Strickland*, 696 F.2d 804, 817-19 (11th Cir. 1983).  The same is true of the claim that the statute creates a presumption of death, so long as the jury is not instructed to presume death is the proper punishment, which was not done here.  *Henderson v. Dugger*, 925 F.2d 1309, 1317-18 (11th Cir. 1991); *Bertolotti v. Dugger*, 883 F.2d 1503, 1524-25 (11th Cir. 1989); *but see Jackson v. Dugger*, 837 F.2d 1469 (11th Cir. 1988)(where jury expressly instructed to presume death sentence appropriate, constitutional error occurred).  Moreover, the Eleventh Circuit has recognized that the Florida Supreme Court's proportionality review is the "reweighing" that the *Proffitt* court envisioned.  *Bolender v. Singletary*, 16 F.3d 1547, 1568 (11th Cir. 1994).  The Florida Supreme Court does conduct a proportionality review in every case.  *See Booker v. State*, 441 So. 2d 148, 152-53 (Fla. 1983).  It did so in this case.  *Allen I*, 662 So. 2d at 331-32.  As such, the claim is without merit and should be denied.

162

## IV.   CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus should be denied without an evidentiary hearing.

Respectfully Submitted,

BILL MCCOLLUM
Attorney General


/s/Sandra S. Jaggard
SANDRA S. JAGGARD
Assistant Attorney General
Florida Bar Number 0012068
Office of the Attorney General
444 Brickell Avenue, Suite 950
Miami, Florida 33131
TEL (305) 377-5441
FAX (305) 377-5655


## V.   CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of August 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Leor Veleanu, Assistant CCRC-South, 101 N.E. 3rd Avenue, Suite 400, Ft. Lauderdale, Florida 33301.


/s/Sandra S. Jaggard
SANDRA JAGGARD
Assistant Attorney General

163