**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 03-10077-CIV-HIGHSMITH

**LLOYD CHASE ALLEN,**                    )
                                          )
                                          )
                                          )
                       Petitioner,        )
                                          )
v.                                        )
                                          )
**WALTER A. MCNEIL,**                     )
Secretary, Florida Department             )
of Corrections,                           )
                                          )
                       Respondent.        )
_____ /

**PETITIONER'S REPLY TO RESPONSE TO**
**PETITION FOR WRIT OF HABEAS CORPUS**

**COMES NOW,** Petitioner**,** LLOYD CHASE ALLEN**,** by and through undersigned

counsel, and pursuant to this Court's order hereby submits his Reply to Response to Petition for

Writ of Habeas Corpus.   Mr. Allen submits the following:

Mr. Allen filed his Petition for Writ of Habeas Corpus with this Court on October 14, 2003.

On August 7, 2007, Respondent served on undersigned counsel its Response of James McDonough

to Order to Show Cause Why Petition for Writ of Habeas Corpus Should Not be Granted.   On

September 4, 2007, Petitioner filed Petitioner's Motion for Leave to File Traverse.   On February 27,

2008, this Court issued an Order Granting Petitioner's Motion for Leave to File Traverse, allowing

Petitioner until April 28, 2008 to file a traverse.

1

In this reply, Mr. Allen addresses a limited number of issues. However, Mr. Allen fully detailed the merits of his claims in his initial petition. In an effort to avoid filing a Traverse which is a "mere pro forma refutation of the [response]" disfavored by the Advisory Committee on Rules Governing Section 2254 cases, Mr. Allen relies on the arguments and authorities in his petition in response to Respondent's answer on the merits to each of the grounds raised in the petition. Mr. Allen submits that he is entitled to relief based upon the merits of his claims raised in his petition Although Mr. Allen does not address every claim or issue raised in his Petition for Writ of Habeas Corpus, he expressly does not abandon or waive the issues and claims not specifically replied to herein. For all claims not addressed in this Reply, Mr. Allen relies on his Petition to refute the assertions and arguments set forth by the Respondents.

Reference to Respondent's Response shall be "(Response, p. ____)." References to the state court record shall be as designated in Mr. Allen's Petition for Writ of Habeas Corpus. Other references cited herein shall be self-explanatory.

## RESPONSE TO RESPONDENT'S "ROAD MAP" DISCUSSION

_____As to the standards governing evidentiary hearings, Respondent argues that 28 U.S.C. §2254 (e)(2), and *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1982), establish that the burden is on Mr. Allen to demonstrate his entitlement to an evidentiary hearing and that Mr. Allen must show cause and prejudice for failing to present evidence in state court (Response at 16-17). These concepts are not applicable to Mr. Allen's case.

By its own terms, §2254 (e)(2) applies only when a habeas petitioner has failed to develop the factual basis of a claim in state court proceedings. If a habeas petitioner has requested, but was denied, an evidentiary hearing, he cannot be deemed to have "failed" to develop the facts and,

2

therefore, §2254 (e)(2) does not apply.  *See Breedlove v. Moore*, 279 F. 3d 952, 960 (11th Cir. 2002).

Similarly, the cause and prejudice test of *Keeney* does not apply where a state court has not allowed

a defendant the opportunity to present his claims at an evidentiary hearing.  Because §2254 (e)(2)

does not apply, pre-AEDPA standards apply to the granting of an evidentiary hearing.  *See Townsend

v. Sain*, 372 U.S. 293 (1963).  Under this standard, the Court reviews *de novo* the issue of whether

Mr. Allen has alleged facts which, if true, could constitute the basis for habeas relief.  If so, an

evidentiary hearing is required.  *See, e.g. Stano v. Dugger*, 901 F. 2d 898 (11th Cir. 1990).  Under

*Townsend*, if the merits of the factual dispute were not resolved in a state court hearing, a federal

hearing is mandatory.  *Id*. at 899; *Glock v. Singletary*, 84 F. 3d 385, 386 (11th Cir. 1996).

Respondent also discusses the Court's procedure in assessing Mr. Allen's constitutional

claims for relief, arguing that the provisions of the AEDPA "bar *de novo* review in federal court"

(Response at *19-24.*).  While a federal court's power to grant habeas relief has been limited under

the AEDPA, it is important to note that this Court's role is not to simply "rubber-stamp" the result

reached by the state courts.  "Even in the context of federal habeas, deference [to state court findings]

does not imply judicial abandonment or abdication of judicial review."  *Miller-El v. Cockrell*, 537

U.S. 322, 340 (2003).

<u>**PETITIONER'S CLAIMS**</u>

**CLAIM I**

**MR. ALLEN WAS DENIED HIS RIGHT TO AN ADVERSARIAL TESTING AT THE GUILT PHASE OF HIS CAPITAL TRIAL DUE TO THE CUMULATIVE EFFECTS OF INEFFECTIVE ASSISTANCE OF COUNSEL AND THE WITHHOLDING OF MATERIAL EVIDENCE, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

In his habeas petition Mr. Allen alleged that the state withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963): 1) a laboratory report from the Florida Department of Law Enforcement ("FDLE") establishing that two hairs found on or in the victim's hand were not Mr. Allen's hair and also indicating that FDLE could not determine whether or not the victim herself was the source of the two hairs because police contaminated the victim's hair samples that had been removed at the autopsy and sent to FDLE for comparison purposes; (2) notations contained in the FDLE hair sample report indicating that samples of the victim's hair were contaminated and could not be tested, and (3) another FDLE laboratory report indicating that no latent prints found in the victim's car matched Mr. Allen's fingerprints.

Respondent asserts that the Florida Supreme Court properly analyzed these claims in Mr. Allen's postconviction appeal. (Response at 33). This argument is not compelling when considered in light of the lack of analysis in the state court opinion.. The state court did not conduct a proper cumulative analysis of Mr. Allen's claim under *Brady,* by looking at the suppressed evidence collectively. Respondent points to two footnotes[1] in the Florida Supreme Court's postconviction

---

[1]*Allen v. State*, 854 So.2d 1255 at 1257  n. 3 and 1258 n.5

4

appeal opinion to show that the state court "expressly rejected his claim that he was entitled to relief based on the alleged cumulative effect of the errors." (Response at 33).    In fact these footnotes demonstrate that the opinion completely failed to provide a cumulative analysis.

Footnote 3 on page 1257 of the Florida Supreme Court's postconviction appeal opinion sets out the claims in Mr. Allen's postconviction appeal. Although Mr. Allen in his initial brief treated the issue as a single *Brady* claim (Point I) with three subparts for the purpose of a cumulative analysis, the state court's opinion separated them into separate *Brady* claims, claims 1, 2, and 3:

> Allen alleges: (1) a violation of *Brady v. Maryland*, concerning hairs found in the victim's hand; (2) a *Brady* violation concerning an FDLE report that indicated Allen's fingerprints were not found in the victim's car; (3) a *Brady* violation concerning a report of the Florida Department of Law Enforcement (FDLE) that indicated a contamination problem with some of the evidence sent for testing; (4) ineffective assistance of counsel for failing to request a Frye hearing; (5) ineffective assistance of counsel for advancing a suicide theory; (6) ineffective assistance of counsel for failing to impeach Larry Woods; (7) ineffective assistance of counsel for failing to elicit the testimony of Tania McLean; (8) an invalid waiver of mitigation because counsel did not conduct any investigation into mitigation; (9) an invalid waiver of mitigation because the trial court did not inquire into the decision to waive mitigation; (10) an arbitrary and capricious sentence under the Eighth Amendment because counsel failed to investigate and discover any mitigation; (11) a denial of competent mental health assistance; (12) innocence of the death penalty; (13) ineffective assistance of counsel for failing to challenge the State's evidence; (14) ineffective assistance of counsel for failing to object to jury instructions and comments to the jury by the prosecutor that unconstitutionally diluted the jury's role in sentencing; (15) that the rules prohibiting interviewing jurors are unconstitutional; (16) that

> Florida's capital sentencing statute is unconstitutional; (17) denial of effective assistance of postconviction counsel by the lack of funding and unprecedented workload of Capital Collateral Regional Counsel, Southern Region (CCRC-South); and (18) deprivation of a fair trial due to procedural and substantive errors as a whole.

*Allen v. State*, 854 So. 2d, 1255, 1258 n.3 (Fla. 2003). This piecemeal treatment of the *Brady* claim is contrary to Respondent's assertion that the court conducted a cumulative analysis.   Further, footnote 5 on page 1258 shows that the state court did not consider the parts of the *Brady* claim relating to evidence of contaminated hair samples or the fingerprint report (claims 2 and 3), much less consider them together with the withheld hair evidence in a cumulative *Brady* analysis:

> Claims 2, 3, 4, 6, 7, and 11 lack merit because Allen was not prejudiced by the alleged errors.

*Allen v. State*, 854 So. 2d at, 1258, n.5. The court explicitly stated that it was conducting the analysis of the *Brady* violation without considering those parts of the claim:

> We address only claims 1 and 5, asserting a *Brady* violation concerning hairs found in or on the victim's hand and ineffective assistance of counsel for advancing a suicide theory at trial.

*Id*. at 1258. This left out the other two subparts of Mr. Allen's *Brady* claim, the evidence of contaminated hair samples and the fingerprint report. Respondent's assertion that the state court conducted a cumulative analysis is incorrect.

Respondent also asserts that Mr. Allen's trial counsel could have discovered the withheld evidence through due diligence. (Response at 39-40). Respondent claims that since Mr. Allen was aware that the state did not present evidence that the hairs matched his, he should have then known

that the hair test results were favorable to him.  (Response at 40).  To suggest that a defendant must

guess at the results of forensic testing by observing which evidence is presented by the state is

completely contrary to *Brady* and it's requirement for the disclosure of exculpatory evidence.  Mr.

Allen was entitled to the test results.  Further, the Florida Supreme Court accepted as true that the

hair evidence was suppressed:

> We next consider whether the State suppressed the evidence. To
> comply with *Brady*, "the individual prosecutor has a duty to learn of
> any favorable evidence known to others acting on the government's
> behalf in the case,"and to disclose that evidence if it is material.
> Whether the State suppressed evidence is a question of fact that can
> be resolved by an evidentiary hearing. Again, because the trial court
> did not conduct an evidentiary hearing, we must accept Allen's
> allegations to the extent the record does not refute them. Allen alleges
> that the State withheld an FDLE report that contained the result of the
> hair analysis. Because the record does not refute this fact, we accept
> it as true for purposes of this appeal.

*Allen v. State*, 854 So. 2d 1255, 1259 (Fla. 2003) (citations omitted).

The cases Respondent cites to support its contention are distinguishable from Mr. Allen's

case.  In *United States v. Grintjes*, 237 F.3d 876 (7th Cir. 2001) the evidence at issue consisted of

verification forms that the defendant had in his possession well before trial, which the court found

that if Grintjes had been interested in investigating whether they were forged he could have easily

done so.  In Mr. Allen's case his trial attorney did not have the same access to the information that

the trial attorney had in *Grintjes*.  In fact, Mr. Allen had no ability to obtain the test results and

memorandum unless the agencies were willing to turn them over to him.

Similarly, Respondent's reliance on *United States v. Corrado*, 227 F.3d 528, 538 (6th Cir.

2000) is also misplaced. In *Corrado*, the evidence consisted of transcripts of grand jury members of

several alleged bookmakers and gamblers whose names were mentioned in recorded conversations involving the defendants.  In the instant case, Mr. Allen's counsel did not have equal or greater access to the information then the state.  Counsel had far less access to FDLE reports than the State.

Respondent also cites *United States v. Maloof*, 205 F.3d 819, 827 (5th Cir. 2000) which can be easily distinguished from Mr. Allen's case. In *Maloof*, the defendant contended on appeal that the government's failure to disclose a statement made by Danny Fang to the FBI violated *Brady*. The Federal District Court held that the statement made by Fang to FBI agents on was not *Brady* material because Maloof's defense counsel had obtained Fang's version of the facts from his attorney.  Mr. Allen did not learn of the FDLE reports from any source.  Furthermore, despite denying Mr. Allen an evidentiary hearing, the state circuit court judge found that:

> [T]he state incorrectly argues that because counsel was put on notice of the state's intention to seek analysis of the hairs, the State had no duty to disclose the results.
>
> This argument is flawed in light of *Strickler*[2] and *Kyles*[3] which squarely place the burden on the State to disclose all information in its possession that is exculpatory. *Id.*, at 440.

*See* State court's "Order Denying Motion For Postconviction Relief Without An Evidentiary Hearing", p.19; PC ROA 1044 (citing *Hoffman v. State*, 800 So. 2d 174, 179 (Fla. 2001).

With respect to Petitioner's argument that the Florida Supreme Court improperly evaluated the *Brady* evidence using a sufficiency of the evidence test contrary to *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995),  Respondent argues that the Florida Supreme Court enunciated the proper

---

[2] *Strickler v. Greene*, 527 U.S. 263 (1999).

[3] *Kyles v. Whitley*, 514 U.S. 419 (1995).

standard and nothing in their statement that "the analysis neither supported nor negated Allen's argument that an unidentified third person committed the murder" amounts to a sufficiency of the evidence test.  However, as detailed in his petition, whether or not the results of the suppressed hair analysis excluding Mr. Allen as the source of the hairs found in the victim's hand "supported" Mr. Allen's defense that he did not kill the victim "is for the jury to decide." *Dilosa v. Cain*, 279 F.3d 259, 264 (5th Cir. 2002)(state court applied rule of law contrary to that of *Kyles* by considering the "sufficiency of the evidence in light of its potential to exculpate [the defendant] instead of through the lens of its confidence in the verdict."  The fact that someone's hair, other than Mr. Allen's, was found in the victim's hand supports his reasonable doubt defense.  The state court's conclusion that the hair analysis results do not support Mr. Allen' argument that an unidentified third person committed the murder ignores the fact that by eliminating Mr. Allen as a source, the likelihood that the hairs came from a third party increased.  The evidence therefore would have supported the third party theory.  The state court's conclusion to the contrary is unreasonable and amounts to an improper sufficiency of the evidence test.  When viewed under the proper standard that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," *Strickler v. Greene*, 527 U.S. 263 (1999), it becomes evident that there remains no confidence in Mr. Allen's guilty verdict. While Respondent speculates about the "multitude of possible explanations for the hair" (Response at 37), this speculation lacks any factual support.  Respondent simply tries to downplay the material significance of hairs found in the victim's hand which did not belong to Mr. Allen.  Due to the state's suppression of the evidence, Mr. Allen was never able to use this critical information in supporting his reasonable doubt defense to the jury.

## CLAIM II

**MR. ALLEN IS INNOCENT OF FIRST-DEGREE MURDER. EVIDENCE THAT WAS NOT PRESENTED TO THE JURY DUE TO STATE MISCONDUCT AND TRIAL COUNSEL'S INEFFECTIVENESS PROVES THAT MR. ALLEN IS INNOCENT. THE JURY WAS DEPRIVED OF EVIDENCE NECESSARY TO ITS DETERMINATION IN THE GUILT PHASE OF MR. ALLEN'S TRIAL IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS.**

Petitioner relies on his Petition to refute the assertions and arguments set forth by the

Respondent.

## CLAIM III

**MR. ALLEN WAS DENIED AN ADVERSARIAL TESTING AT THE SENTENCING PHASE OF HIS CAPITAL TRIAL BECAUSE TRIAL COUNSEL WAS INEFFECTIVE AND RESPONDENT KNOWINGLY PRESENTED FALSE EVIDENCE. MR. ALLEN WAS DEPRIVED OF A FAIR TRIAL AS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Petitioner relies on his Petition to refute the assertions and arguments set forth by the

Respondent.

## CLAIM IV

**MR. ALLEN DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE SENTENCING PROCEEDINGS OF HIS CAPITAL TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND DID NOT KNOWINGLY AND VOLUNTARILY WAIVE THE PRESENTATION OF MITIGATION EVIDENCE. MR. ALLEN AS A RESULT WAS ALSO DENIED A MEANINGFUL PROPORTIONALITY REVIEW IN VIOLATION OF THE EIGHTH AMENDMENT.**

In his habeas petition Mr. Allen alleged ineffective assistance of counsel because counsel conducted absolutely no investigation into mitigation.   Furthermore, because trial counsel conducted no investigation, Mr. Allen did not knowingly, intelligently, and voluntarily waive his constitutional right to present the available mitigation evidence.

Respondent claims that this claim is procedurally defaulted because Mr. Allen raised this claim on direct appeal. However, direct appeal counsel did not raise an ineffective assistance of counsel claim.  Rather, on direct appeal Mr. Allen alleged:

> THE TRIAL COURT ERRED IN ACCEPTING THE DEFENDANT'S WAIVER OF MITIGATION EVIDENCE, WHERE DEFENSE COUNSEL HAD NEVER PERFORMED ANY INVESTIGATION INTO THE PRESENCE OF MITIGATING EVIDENCE, AND CONSEQUENTLY THERE EXISTS NO RECORD SHOWING OF MITIGATION EVIDENCE, IN VIOLATION OF *KOON V. DUGGER*, 619 SO. 2D 246 (FLA. 1993), AND THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, §§ 2, 9, 9, 16, 17 AND 22 OF THE FLORIDA CONSTITUTION.

(Initial Brief of Appellant on direct appeal p.29).  This was not an ineffective assistance of counsel claim and the Florida Supreme Court did not treat it as such.  The direct appeal opinion set forth the issues raised by Mr. Allen, including the waiver of mitigation issue (issue 2):

> On appeal, Allen raises six issues as error: 1) the admission of a photograph and victim impact testimony, and prosecutorial argument thereon; 2) the waiver of the presentation of mitigation evidence without meeting the requirements of *Koon v. Dugger*, 619 So. 2d 246 (Fla. 1993); 3) Allen's unsworn and unsupported denials of applicable mitigating factors in argument to the jury during the penalty phase; 4) application of the pecuniary gain aggravating factor; 5) application of the heinous, atrocious, or cruel (HAC) aggravating factor; and 6) prosecutorial argument of a nonstatutory aggravating factor during the penalty phase.

*Allen v. State*, 662 So. 2d 323, 327 (Fla. 1995).

The waiver of mitigation issue was disposed of without considering ineffective assistance of counsel. The only issues considered was whether the procedure in *Koon* was applicable to Mr. Allen's case and whether it's requirements were met:

> Allen first asserts that the court erred in accepting his waiver of mitigating evidence where defense counsel did not investigate possible mitigating evidence and there was no record showing of mitigation evidence as required by *Koon*. In *Koon* this Court established the procedure that must be followed when a defendant, against counsel's advice, refuses to permit the presentation of mitigating evidence in the penalty phase. Counsel must inform the court on the record of the defendant's decision. Based upon an investigation, counsel must indicate whether there is mitigating evidence that could be presented and what that evidence would be. Defendant must then confirm on the record that counsel has discussed these matters with him, and despite counsel's recommendation, the defendant wishes to waive presentation of penalty phase evidence. We established this rule because of "the problems inherent in a trial record that does not adequately reflect a defendant's waiver of his right to present any mitigating evidence."
>
> In *Koon*, we determined that defense counsel committed no error in following Koon's instruction not to present evidence during the penalty phase because counsel had investigated potential mitigating evidence before trial and argued the existence of mitigating factors based upon testimony presented in the guilt phase.
>
> We find the procedure established in *Koon* inapplicable to this case for two reasons: 1) during the penalty proceedings before the jury, Allen asserted his right of self-representation and the court found him competent to represent himself in the penalty phase; and 2) the opinion in *Koon* did not become final until several months after Allen's sentencing was conducted.
>
> As noted above, the court conducted a *Faretta* inquiry and determined that Allen's waiver of the right to counsel was voluntarily and intelligently made. The two mental health experts who examined Allen at the court's request also concluded that Allen was competent to proceed to the penalty phase. Thus, unlike *Koon*, in this case the penalty proceeding before the jury

was conducted by a defendant who chose to represent himself and decided not to present mitigating evidence.

However, we note that Allen was represented by counsel again during the sentencing proceeding. During deliberations as to Allen's sentence, the jury requested that it be given written copies of the jury instructions and that the penalty phase evidence be submitted to it. When the judge asked Allen if he had any objections, he requested permission "to step aside and let [defense counsel] take over all the legal things to follow." Defense counsel then re-undertook Allen's representation and offered no objection to the jury's request. Defense counsel's representation during the penalty proceeding was limited to this single issue, and the jury returned its recommendation of death several hours later.

Counsel, however, also represented Allen during the sentencing proceeding where the State presented three witnesses to rebut the residual doubt argument that Allen had made to the jury during closing argument in the penalty proceeding. The State also presented into evidence a radio interview with Allen that was taped after the jury returned its recommendation of death. During argument to the court at sentencing, defense counsel stated that he had no mitigating factors to present because Allen refused to provide any and "repeatedly requested that I not plead for life in his case." Counsel further stated that he was "biting his lip" because he was "not allowed to open up and say everything that I would like to say and argue everything that I want to argue," but was instead respecting Allen's wishes on this matter and would "do exactly what [Allen] asked me to do." Although the judge asked defense counsel whether he had informed Allen about the statutory mitigating factors available, there was no indication that counsel had investigated Allen's background or history to determine whether particular mitigating evidence was available. Counsel also made no proffer of mitigating evidence that could be presented to the court.

While this procedure arguably fell short of that established in *Koo*n, our ruling in *Koon* by its own terms is prospective only. The opinion in *Koon* did not become final until rehearing was denied in June 1993, over three months after sentencing occurred in the instant case. Because the *Koon* procedure was not applicable either during the penalty proceeding before the jury or during the sentencing proceeding before the judge, we find no error on this point.

13

*Allen v. State*, 662 So. 2d 323, 329 (Fla. 1995)

Therefore the issue raised and considered by the Florida Supreme Court on direct appeal was whether or not the trial court erred by allowing Mr. Allen to waive the presentation of mitigation evidence when the trial court failed to follow the procedural requirements set forth in *Koon*. This is a separate and distinct claim from the instant claim, which was subsequently raised by Mr. Allen in state post-conviction court, that trial counsel was ineffective for doing no mitigation investigation and, as a direct result of counsel's failure, Mr. Allen did not - and could not have - knowing and voluntarily waived his constitutional right to present mitigation evidence.

The reference in the State's response to Appellant's Motion to Relinquish Jurisdiction for Resentencing (Response at 86-87), which was filed by Mr. Allen's direct appeal counsel while the direct appeal was pending, is irrelevant. As set forth in Mr. Allen's petition to this court, this was non-record evidence discovered by direct appeal counsel. Because this was non-record evidence, the Florida Supreme Court could not and did not consider it on direct appeal.

Respondent argues that Mr. Allen's counsel did not blindly follow his client's directions not to investigate mitigation:

> [T]his is not a case in which counsel chose to follow his client's instructions blindly because counsel has not conducted the necessary investigation pretrial. Instead, the record reflects that counsel advised Petitioner that mitigation needed to be investigated pretrial but Petitioner had instructed counsel to conduct no investigation. Counsel had discussed the matter at length with Petitioner and had another attorney also advise Petitioner against waiving counsel and mitigation. Counsel has also informed Petitioner of what mitigation was and advised Petitioner against not presenting mitigation.

(Response at 98). Nowhere does the state claim that trial counsel actually conducted investigation

14

into mitigation- precisely what Mr. Allen's ineffective assistance of counsel claim is based in.
Merely advising his client in a general way not to waive mitigation, when the client has no idea what
mitigation exists because counsel has not investigated it, is deficient performance.   Counsel
conducted absolutely no investigation into mitigation. As counsel himself explained:

> I don't have any mitigating factors to present simply
> because -- he does not have the attitude or spirit of
> uncooperativeness but he refused to provide me with
> mitigating factors.  He also repeatedly requested I not
> plead for his life in this case.

(TRT 801).

**Trial counsel rendered deficient performance**

Counsel's performance was deficient under the 2003 American Bar Association Standards
of Criminal Justice and Guidelines for the Performance of Counsel in Death Penalty Cases.   In
*Wiggins v. Smith*, 539 U.S. 510 (2003), the United States Supreme Court reaffirmed the right of a
capital defendant to the effective assistance of counsel. *Wiggins* clarifies that applicable professional
standards require investigation. *Id.* at 524.   Applicable professional standards are set forth in the
ABA Guidelines. *Wiggins* refers to the version of the Guidelines that was promulgated in 1989.  The
ABA Guidelines were originally promulgated in 1989 and revised in 2003[4].  The 2003 version spells
out in more detail the reasonable professional norms that trial counsel should have utilized in
investigating Mr. Allen's mitigation.  Notwithstanding the fact that Mr. Allen was tried in 1993,
there is no doubt as to the applicability of the 2003 Guidelines to his case.  The United States

---

[4]  31 Hofstra L. Rev. 813 (2003)

Supreme Court has recently reaffirmed the applicability of the 2003 Guidelines to those cases tried

before the revision.  In *Rompilla v. Beard*, 545 U.S. 374 (2005) (which was decided after Mr. Allen's

habeas petition was filed), in which case the trial took place in 1989 and prior to the promulgation

of either the 1989 or the 2003 Guidelines, the Supreme Court applied not only the 1989 Guidelines

but also the 2003 Guidelines to the case.  *Id.* at 387 n. 7.

The 2003 ABA Guidelines affirm that trial counsel has a duty to investigate mitigation:

> Counsel's duty to investigate and present mitigating evidence is now
> well established. The duty to investigate exists regardless of the
> expressed desires of a client.  Nor may counsel "sit idly by, thinking
> that investigation would be futile." Counsel cannot responsibly advise
> a client about the merits of different courses of action, the client
> cannot make informed decisions, and counsel cannot be sure of the
> client's competency to make such decisions, unless counsel has first
> conducted a thorough investigation with respect to both phases of the
> case.

Commentary to Guideline 10-7 (Investigation), 2003 ABA Guidelines; 31 Hofstra L. Rev. 913, 1021.

A client's desire not to present mitigating  evidence does not terminate counsel's duty to

conduct an investigation into potential  mitigation. *See, Blanco v. Singletary*, 943 F.2d 1477 (11th

Cir. 1991).  The client's uncooperativeness or refusal to supply information is irrelevant to counsel's

duty to investigate and prepare for the penalty phase. *See, Williams v. Taylor*, 120 S.Ct. 1495 (2000).

Mr. Hooper's explanation that Mr. Allen "refused to provide" him "with mitigating factors" is

inadequate to excuse his failure to investigate.

> The sole source of mitigating factors cannot properly
> be that information which defendant may volunteer;
> counsel must make some effort at independent
> investigation in order to make a reasoned, informed
> decision as to their utility.  We find that reluctance on
> [the defendant's] part to present a mental health
> defense or to testify should not preclude counsel's
> investigation of these potential factors.

16

*Carter v. Bell*, 218 F.3d 581, 596-97 (6th Cir. 2000).  It is not the client's responsibility to know what mitigating factors apply to his case or to understand what in his background constitutes mitigation. The client's uncooperativeness or refusal to supply information is irrelevant to counsel's duty to investigate and prepare for the penalty phase. *See Williams v. Taylor*, 120 S.Ct. 1495 (2000).   Trial counsel Mr. Hooper did not conduct a mitigation investigation because, contrary to Respondent's assertions, he latched onto Mr. Allen's desire to seek death and blindly followed Mr. Allen's wish not to present mitigation.

**Waiver of mitigation was  not knowing, intelligent, or voluntary**.

In his habeas petition, Mr. Allen alleged that his purported waiver of his constitutional right to present mitigation at trial was not knowing, intelligent, or voluntary.  Trial counsel's failure to conduct a constitutionally adequate pretrial investigation into potential mitigation evidence prevented counsel from competently advising Mr. Allen regarding penalty phase proceedings, thus rendering the client's purported waiver of his right to present mitigation neither knowing nor voluntary.  The Florida Supreme Court has recognized that a defendant's decision to waive mitigation is not valid unless counsel has completely investigated mitigation and advised the defendant as to available mitigation and the consequences of the waiver:

> [T]he obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated -- this is an integral part of a capital case. Although a defendant may waive mitigation, he cannot do so blindly; counsel must first investigate all avenues and advise the defendant so that the defendant reasonably understands what is being waived and its ramifications and hence is able to make an informed, intelligent decision.

*State v. Lewis,* 838 So. 2d 1102, 1113 (Fla. 2002).

Mr. Allen's representation of himself during the penalty phase did not vitiate trial counsel's obligation to investigate mitigation, as counsel had an obligation to begin the investigation well before the guilt phase had begun. The ABA guidelines provide that trial counsel should not wait to begin the investigation:

> The mitigation investigation should begin as quickly as possible, because it may affect the investigation of first phase defenses (e. g., by suggesting additional areas for questioning police officers or other witnesses), decisions about the need for expert evaluations (including competency, mental retardation, or insanity), motion practice, and plea negotiations.

Commentary to Guideline 10-7 (Investigation), 2003 ABA Guidelines; 31 Hofstra L. Rev. 913, 1023.

Respondent cites *Schriro v. Landrigan*, 127 S. Ct. 1933 (U.S. 2007), where at defendant Landrigan's express request, his biological mother and ex-wife refused to testify in mitigation at sentencing that the mother used drugs and alcohol during her pregnancy with defendant and that defendant was a good father. Defendant also stated to the sentencing court that he did not wish to present any mitigating evidence, and defendant repeatedly interrupted counsel's efforts to raise matters in mitigation. The U.S. Supreme Court held that it was well within the lower court's discretion to determine that, even with the benefit of an evidentiary hearing, defendant could not develop a factual record that would entitle him to habeas relief and that Landrigan could not show prejudice from any failure of counsel to investigate additional mitigating evidence, since the record indicated that Landrigan would have interrupted and refused to allow his counsel to present any such evidence.

However, the result in *Landrigan* was driven by the highly specific facts at issue in that case are distinguishable from Mr. Allen's. There is no evidence in the record that Mr. Allen would have

18

interrupted a presentation of mitigation in the penalty phase.  During the sentencing, where Mr. Allen was again represented by counsel, counsel did not even attempt to present mitigation.  Also, the majority in *Landrigan* did not dispute that counsel provided deficient performance.  Instead, they held that Landrigan could not show prejudice because of the obstreperous manner in which he subverted trial counsel's attempts to present mitigation.

## CLAIM V

**MR. ALLEN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE GUILT AND PENALTY PHASES OF HIS CAPITAL TRIAL BECAUSE TRIAL COUNSEL FAILED TO OBTAIN AN ADEQUATE MENTAL HEALTH EXAMINATION.  MR. ALLEN'S RIGHTS UNDER THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE FLORIDA CONSTITUTION WERE VIOLATED.**

In his habeas petition, Mr. Allen alleged that trial counsel was ineffective because counsel failed to investigate and discover information needed in order for a mental health expert to render a professionally competent evaluation and failed to provide Mr. Allen with competent mental health assistance.

**Counsel rendered deficient performance**

Respondent asserts that counsel was not ineffective for failing to have his client's mental health evaluated because he had no reason to believe that his client suffers from a mental illness. (Response at 111).  Contrary to Respondent's assertions, trial counsel was deficient for relying on his own observations of Mr. Allen's mental conditions.  The ABA Guidelines provide:

Counsel's own observations of the client's mental

19

status, while necessary, can hardly be expected to be sufficient to detect the array of conditions (e.g., post-traumatic stress disorder, fetal alcohol syndrome, pesticide poisoning, lead poisoning, schizophrenia, mental retardation)that could be of critical importance. Accordingly, Subsection A(2) mandates that at least one member of the defense team (whether one of the four individuals constituting the smallest allowable team or an additional team member) be a person qualified by experience and training to screen for mental or psychological disorders or defects and recommend such further investigation of the subject as may seem appropriate.

Commentary to Guideline 4-1 (The Defense Team and Supporting Services), 2003 ABA Guidelines; 31 Hofstra L. Rev. 913, 956-957.

Even if trial counsel was not able to perceive Mr. Allen's mental health problems, counsel should have had someone on the defense team who would have been able to recognize Mr. Allen's mental health issues, as provided by the ABA Guidlines:

GUIDELINE 4.1 - THE DEFENSE TEAM AND SUPPORTING SERVICES

A. The Legal Representation Plan should provide for assembly of a defense team that will provide high quality legal representation.

1. The defense team should consist of no fewer than two attorneys qualified in accordance with Guideline 5.1, an investigator, and a mitigation specialist.

**2. The defense team should contain at least one member qualified by training and experience to screen individuals for the presence of mental or psychological disorders or impairments.**

Guideline 4-1 (The Defense Team and Supporting Services), 2003 ABA Guidelines; 31 Hofstra L.

20

Rev. 913, 952 (emphasis added).

Had trial counsel investigated mitigation as he was obliged to do, he would have discovered records of Mr. Allen's criminal convictions and incarcerations.  Examination of these records would have revealed abundant  evidence of alcohol abuse and severe depression. As noted in Mr. Allen's habeas petition, several penal institutions have recommended that Mr. Allen receive substance abuse counseling.   He was briefly enrolled in a seven-step program. Trial counsel would also have discovered that when Mr. Allen was incarcerated at the Kansas Department of Corrections, i 1986, a Shipley Hartford scale intellectual functioning test was administered to him . The results indicated a wide discrepancy between Mr. Allen's vocabulary I.Q. and his conceptual I.Q., suggesting an inability to use abstract reasoning and suggesting organicity.  The testing psychiatrist noted that this "is often associated with people who have used drugs and alcohol for a long period of time."  Had trial counsel investigated and found this evidence,  it would have suggested mental health evaluation.

### CLAIM VI

**MR. ALLEN WAS DENIED AN ADVERSARIAL TESTING AT THE PENALTY AND SENTENCING PHASES OF HIS CAPITAL TRIAL BECAUSE, BUT FOR TRIAL COUNSEL'S INEFFECTIVENESS AND RESPONDENT'S KNOWING PRESENTATION OF FALSE EVIDENCE,  MR. ALLEN WOLD HAVE BEEN FOUND INNOCENT OF THE DEATH PENALTY. MR. ALLEN WAS DEPRIVED OF A FAIR TRIAL AS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Petitioner relies on his Petition to refute the assertions and arguments set forth by the Respondent.

## CLAIM VII

**MR. ALLEN WAS DEPRIVED OF A FAIR SENTENCING PROCEEDING AS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION DUE TO TRIAL COUNSEL'S INEFFECTIVENESS IN FAILING TO OBJECT TO PREJUDICIAL JURY INSTRUCTIONS AND TO IMPROPER COMMENTS AND ARGUMENTS BY THE PROSECUTION.**

In his habeas petition, Mr. Allen alleges that his trial counsel was ineffective for failing to object to jury instructions that violated *Caldwell v. Mississippi*, 472 U.S. 320 (1985), that unconstitutionally shifted the burden to Mr. Allen, and that gave unconstitutionally vague instructions on the heinous, atrocious, or cruel aggravating factor and for failing to object to improper comments by the State Attorney.

Respondent asserts that the claim regarding the jury instructions is procedurally barred because it should have been raised on direct appeal and that the claim regarding improper prosecutorial comments is procedurally barred as it was raised on direct appeal but had not been preserved.

On direct appeal, Mr. Allen alleged as Argument 6:

> THE PROSECUTOR'S COMMENTS TO THE JURY, DURING THE PENALTY PHASE, THAT ONLY A SENTENCE OF DEATH WOULD PREVENT THIS DEFENDANT, WHO HAD PREVIOUSLY ESCAPED FROM A WORK RELEASE FACILITY, FROM KILLING SOMEONE ELSE CONSTITUTED IMPROPER ARGUMENT OF A NONSTATUTORY AGGRAVATING FACTOR, IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, §§ 2, 9, 16, 17, AND 22 OF THE

22

FLORIDA   CONSTITUTION   AND   §921.141,
F.S.A.(1993).

The Florida Supreme Court denied the claim because it had not been preserved for appeal by trial

counsel, and alternatively, on the grounds that it had no merit.  *Allen v. State*, 662 So. 2d 323, 331

(Fla. 1995).

In his postconviction appeal, Mr. Allen alleged that:

> The lower court also erred by denying Mr. Allen's claim that trial
> counsel was ineffective for failing to object to jury instructions and
> comments to the jury by the prosecutor that unconstitutionally diluted
> the jury's sense of its responsibility at sentencing and shifted the
> burden to Mr. Allen to prove that life is an appropriate sentence.  *See*
> (PCR 829-31); *See Caldwell v. Mississippi*, 472 U.S. 320 (1985);
> *Mullany v. Wilbur*, 421 U.S. 684 (1975).  Mr. Allen also claims that
> counsel was ineffective for failing to object to vague instructions on
> the heinous, atrocious, or cruel aggravating factor.  *See* (PCR 831-
> 33).  The lower court erred by denying these claims.
>
> Finally, the lower court also erred by denying Mr. Allen's claims that
> the trial counsel was ineffective for failing to object to the
> prosecutor's improper argument at the penalty phase that suggested
> that the jury must sentence Mr. Allen to death to prevent him from
> escaping and committing crimes in the future and for failing to object
> to the prosecutor's improper argument at the sentencing hearing that
> urged the court to consider the conscience of the community. *See*
> (PCR 834-38).

(Initial postconviction brief at 71).

The Florida Supreme Court in its postconviction appeal opinion denied the ineffective

assistance of counsel (IAC) claim relating to penalty phase jury instructions, and the IAC claim

regarding the prosecutor's improper comments diluting the jury's responsibility, on grounds that they

should have been raised on direct appeal.  *Allen v. State*, 854 So. 2d 1255, 1258 (Fla. 2003), despite

the fact that these were IAC claims which are proper in postconviction.  The opinion explicitly stated

23

that despite being IAC claims, they were procedurally barred because they can only have been raised on direct appeal:

> To the extent these claims allege ineffective assistance of counsel, they are barred nonetheless. *Woods v. State*, 531 So. 2d 79, 82 (Fla. 1988). ("Couching a [procedurally] barred claim in terms of ineffective assistance of counsel will not revive such a claim.").

*Allen v. State*, 854 So. 2d 1255, 1258 (Fla. 2003).

This finding of a procedural bar was in error. These issues could not have been raised on direct appeal because they were not preserved by trial counsel (and when Mr. Allen raised the issue of the prosecutor's comments on future dangerousness on direct appeal the issue was found to be barred because trial counsel had not preserved it for appeal) – which is the very reason why Mr. Allen alleged in his postconviction appeal that counsel was ineffective. When Mr. Allen alleged IAC for counsel's failure to raise them, the state court found them barred because they should have been raised on direct appeal– which was of course futile because they were not preserved. The state court has placed Mr. Allen in a double bind where these claims evade review through no fault of his own but because the state court has set up an unconstitutional bar to IAC claims in violation of Mr. Allen's due process rights.

As stated by the dissent in *Woods v. State*, 531 So. 2d 79 (Fla. 1988), this circular reasoning could bar review of any ineffective assistance claims:

> I believe the majority fails to analyze appellant's claim of ineffective assistance of counsel under the applicable law. The sweeping statement that "couching a barred claim in terms of ineffective assistance of counsel will not revive such a claim," majority opinion, at 84, is at best unclear and at worst a rule that would vitiate virtually any claim of ineffectiveness of counsel. Ineffective assistance

necessarily concerns matters counsel failed to raise below, which by definition thus are procedurally barred. The issue in any claim of ineffectiveness is not the procedural bar, but whether counsel's deficiency, if any, led to a "reasonable probability that . . . the result of the proceeding would have been different."The facile standard applied by the majority could result in every claim of ineffectiveness being summarily dismissed as a subterfuge for raising barred claims.

*Woods v. State*, 531 So. 2d 79, 84 (Fla. 1988) (Barkett, J., dissenting) (citations omitted).

As for Mr. Allen's postconviction appeal claim that counsel was ineffective for failing to object to the prosecutor's comments about the future dangerousness nonstatutory aggravator, the Florida Supreme Court simply failed to address it.   *Allen v. State*, 854 So. 2d 1255.

## CLAIM VIII

**THE FLORIDA CAPITAL SENTENCING PROCEDURES AS EMPLOYED IN MR. ALLEN'S CASE VIOLATED HIS SIXTH AMENDMENT RIGHT TO HAVE A UNANIMOUS JURY RETURN A VERDICT ADDRESSING HIS GUILT OF ALL THE ELEMENTS NECESSARY FOR THE CRIME OF CAPITAL FIRST DEGREE MURDER, IN VIOLATION OF *RING V. ARIZONA*.**

Petitioner relies on his Petition to refute the assertions and arguments set forth by the Respondent.

## CLAIM IX

**MR. ALLEN IS DENIED HIS RIGHTS UNDER THE FIRST, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE FLORIDA CONSTITUTION AND IS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN PURSUING HIS POSTCONVICTION REMEDIES BECAUSE OF THE RULES PROHIBITING HIS LAWYERS FROM INTERVIEWING JURORS TO DETERMINE IF CONSTITUTIONAL ERROR WAS PRESENT**

Petitioner relies on his Petition to refute the assertions and arguments set forth by the Respondent.

## CLAIM X

**FLORIDA'S CAPITAL SENTENCING STATUTE IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED BECAUSE IT FAILS TO PREVENT THE ARBITRARY AND CAPRICIOUS IMPOSITION OF THE DEATH PENALTY, AND IT VIOLATES THE CONSTITUTIONAL GUARANTEES OF DUE PROCESS AND PROHIBITING CRUEL AND UNUSUAL PUNISHMENT**

Petitioner relies on his Petition to refute the assertions and arguments set forth by the Respondent.

## CONCLUSION

Based on his habeas petition and the reply set forth above, Mr. Allen submits habeas relief should issue.

Respectfully Submitted,

/S/ Leor Veleanu

LEOR VELEANU

Florida Bar No. 0139191

Assistant CCRC

Capital Collateral Regional Counsel-South

101 N.E. 3rd Avenue, Suite 400

Fort Lauderdale, FL  33301

(954) 713-1284

(954) 713-1299 Fax

veleanul@ccsr.state.fl.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing  to Sandra Jaggard, Assistant Attorney General, Department of Legal Affairs, Rivergate Plaza, Suite 950, 444 Brickell Avenue, Miami, Florida 33131.

Respectfully Submitted,

/S/ Leor Veleanu

LEOR VELEANU

Florida Bar No. 013919

27