UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-10077-CIV-COHN

**LLOYD CHASE ALLEN,**

**SCANNED**

Petitioner,

vs.

**WALTER A. MCNEIL,** Secretary,
Florida Department of Corrections[1],

Respondent.

_____/

## FINAL ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** came before the Court on Petitioner, Lloyd Chase Allen's Petition

for Writ of Habeas Corpus by a Person in State Custody, filed on October 14, 2003.

[D.E. 1]. Mr. Allen is currently on death row at the Union Correctional Institution in

Raiford, Florida following convictions in 1992 for first-degree murder and grand theft of

an automobile.  On March 16, 2005, the Petitioner filed a motion to hold federal

proceedings in abeyance until Petitioner exhausted the issue of DNA testing in state

court proceedings. [D.E. 5]. On April 5, 2005, the Honorable Shelby Highsmith issued

an Order granting the motion and the federal proceedings were held in abeyance. [D.E.

6]. After the state courts denied Petitioner's motion for DNA testing, the Respondent

filed a motion to lift stay on May 1, 2007.  [D.E. 9].  On August 1, 2007, the Court

_____

[1] Walter A. McNeil has replaced James R. McDonough as Secretary of the Florida
Department of Corrections, and is now the proper respondent in this proceeding. McNeil
should, therefore, "automatically" be substituted as a party under Federal Rule of Civil
Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the
Respondent.

granted the motion and lifted the stay of federal proceedings. [D.E. 14]. Thereafter, the

Respondent filed its response and Petitioner has filed his reply. [D.E. 15, 19]. In total,

the Petitioner claims ten main grounds for relief. This matter is now ripe.[2]

The Court has considered the written submissions, the entire record of Mr.

Allen's state court proceedings, and applicable law. For the reasons that follow, the

Petition for Writ of Habeas Corpus is **DENIED**.

## I.    **FACTUAL BACKGROUND**

The factual summary in this section is quoted from the opinion of the Supreme

Court of Florida:

> Allen was indicted for the first-degree murder of Dortha Cribbs
> in Summerland Key, Florida, on November 13, 1991. He was
> also charged with kidnaping, robbery with a deadly weapon,
> grand theft, and grand theft of an automobile.
>
> Cribbs left home in Ohio to drive to Florida in November 1991.
> She apparently met Allen at a truck stop in Atlanta. Allen
> accompanied Cribbs during a visit with friends in Jacksonville
> Beach and during a stop in Bunnell to sell her trailer.
>
> Allen, whom Cribbs introduced as "Lee Brock," told Cribbs'
> friends in Jacksonville Beach and Bunnell that he owned a
> ranch in Texas and a trucking rig. Cribbs told the friends that
> she was going into the trucking business with Allen after she
> sold her trailer in Bunnell and her vacation home in
> Summerland Key. Cribbs was paid $4100 in hundred dollar
> bills for the trailer.  Allen witnessed this transaction on
> November 12. The friends in both locations stated that Cribbs
> was wearing a diamond-studded horseshoe-shaped ring,
> which was valued at $8,000.
>
> A man working at the house across the street from Cribbs'

---

[2] By Administrative Order 2008-11 dated May 13, 2008, this case was reassigned to the undersigned judge.

Summerland Key house saw her exit and re-enter the house
early on the morning of November 13. He also observed Allen
exit and re-enter the house around 11 a.m. The worker left for
lunch at 11:45 a.m. When he returned a little after 1 p.m., the
worker noticed Cribbs' 1988 Ford Taurus was gone.

The real estate agent who managed Cribbs' property arrived
between 12:30 and 1 p.m. to investigate Cribbs' unexpected
arrival at the house. When no one responded to his knocks,
the agent used his own key to enter the house. The television
set, which was on high volume, was emitting loud static and a
snowy picture. The coffee pot was turned on and half-full. The
agent discovered Cribbs' body on the floor of the master
bedroom. She was lying face down on a pillow and her body
was surrounded by a puddle of blood.

The medical examiner placed the time of death between 4 a.m.
and 2 p.m. on November 13. There were two stab wounds to
the right side of Cribbs' face, ligature marks on her wrists and
ankles, and a stab wound to her left neck that severed the
carotid artery. The angle of the neck wound indicated that it
was inflicted as Cribbs lay face down. The left stab wound
caused Cribbs to bleed to death. The medical examiner
estimated that Cribbs lived for fifteen to thirty minutes after this
wound was inflicted and was conscious for fifteen minutes.
Based upon the lack of defensive wounds and blood spatter,
the medical examiner opined that Cribbs was bound at the
time that she was stabbed.

The following items were recovered from the scene: a suitcase
containing a blue shirt and a camera loaded with undeveloped
film depicting Allen; a pair of grey lizard skin boots; a pair of
blue jeans containing a blood stain on the right knee, found at
the foot of the bed; a sperm-stained hand towel, found by the
side of the bed; a piece of window sash cord found under
Cribbs' left arm consistent with the ligature marks and also
consistent with a cord that had been cut in the spare bedroom;
and a sheathed knife and a rag found in the spare bedroom.
The contents of Cribbs' purse were scattered across the bed;
the $4100 and diamond ring were missing. There were no
signs of forcible entry and no fingerprints of value were found.
The interior of the house and its contents appeared to have
been wiped clean with a damp rag.

3

Expert witnesses testified that the body fluids found on the hand towel were consistent with Cribbs' and Allen's blood types and DNA genotypes; the blood on the jeans was consistent with Cribbs' blood. The suitcase, boots, and shirt recovered from the scene were identified by witnesses as items that Allen had or wore in Jacksonville Beach and Bunnell. Pursuant to the State's motion granted by the court, Allen tried on these items of clothing, which with the exception of the jeans, fit him. Allen's inability to fit into the jeans was explained by a considerable weight gain following his arrest.

A taxi driver testified that he picked up Allen at the Buccaneer Lodge Tiki Lounge between 12:30 and 12:45 p.m. on November 13, that he took Allen to Key Largo, and that Allen paid the eighty-dollar fare with a hundred-dollar bill. Cribbs' automobile was located in the parking lot of the Buccaneer Lodge on December 23. The car was covered with debris, indicating that it had been parked there for some time. Allen's prints were lifted from the car. A trucker's log book containing a credit card number and a sequence of telephone numbers led the police to Allen's location in California, where he was arrested on February 18, 1992.

*Allen v. State*, 662 So. 2d 323, 325-27 (Fla. 1995).

## II.   **PROCEDURAL BACKGROUND**

On February 26, 1992, Mr. Allen was indicted on one count of first degree murder. (*See* [D.E. 16] at 4). On March 10, 1992, Mr. Allen was also charged by information with one count of robbery with a deadly weapon, two counts of grand theft, and one count kidnaping. (*See* [D.E. 16] at 6). On April 28, 1992, Mr. Allen entered a written plea of not guilty to all counts. (*See* [D.E. 16] at 31). After trial by jury, Mr. Allen was found guilty of one count of first degree murder and one count of grand theft but not guilty on the second count of grand theft.[3] (*See* [D.E. 16] at 656).

---

[3] The trial court had previously entered a judgment of acquittal on the additional counts charged in the information. (*See* [D.E. 16, App. A]).

Thereafter, Mr. Allen made a motion to proceed *pro se* at the sentencing phase. (*See* [D.E.16] at 661). The trial court conducted a *Faretta*[4] inquiry and "concluded that Allen knowingly and voluntarily waived his right to counsel and was competent to represent himself." (*See* [D.E. 16] at 664-78); *see also* ([D.E. 16] at 661). The trial court also ordered a psychological competency evaluation of Mr. Allen. (*See* [D.E. 16] at 661). Mr. Allen was then evaluated by two psychologists for competency. Both psychologists testified that Mr. Allen was competent to represent himself during the sentencing phase of his trial. (*See* [D.E. 16] at 688, 694). After hearing, the trial court granted Mr. Allen's motion to proceed *pro se* and appointed Mr. Allen's prior trial counsel as stand by counsel. (*See* [D.E. 16] at 695).

During his closing argument to the jury, Mr. Allen specifically requested imposition of the death penalty. (*See* [D.E. 16] at 760). Mr. Allen "expressly denied the existence of mitigating evidence and specifically denied that he was abused in childhood or that he suffered from alcoholism or drug abuse." *Allen*, 662 So. 2d at 327. He further "asserted his factual innocence of murder, he also urged the jury to vote for death because he felt responsible and remorseful for Cribbs' death." *Id.* The jury recommended a sentence of death by a vote of 11-1. (*See* [D.E. 16] at 777). On March 3, 1993, the trial court found three aggravating factors and two mitigating factors and followed the jury's recommendation and imposed a sentence of death. (*See* [D.E. 16] at 241).

On March 30, 1994, Mr. Allen filed his direct appeal to the Florida Supreme

---

[4] *Faretta v. State of California*, 95 S. Ct. 2525 (1975).

Court. (See [D.E. 16, App. A]). In his appeal, Mr. Allen argued the following six

grounds:

> The trial court's error in admitting, in guilt/innocence phase of trial, unduly prejudicial photograph of victim cuddling grandchild in her lap, as well as other victim impact evidence and prosecutorial argument thereon, violated the defendant's right to a fair trial, under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 16, 17 and 22 of the State Constitution.

> The trial court erred in accepting the defendant's waiver of mitigation evidence where defense counsel had never performed any investigation into the presence of mitigating evidence, and consequently there exists no record showing of mitigation evidence in violation of Koon v. Dugger, 619 So. 2d 246 (Fla. 1993), and the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 16, 17 and 22 of the State Constitution.

> The trial court erred in permitting the defendant to make unsworn and unsupported denials of applicable mitigating factors, before the sentencing jury in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 16, 17 and 22 of the State Constitution.

> The trial court erred in finding, as an aggravating factor, that the murder was committed for pecuniary gain, where the trial court had entered a judgment of acquittal for robbery of the victim's cash and where the theft of the victim's car was for the purpose of escape, in violation of the defendant's rights under the double jeopardy clauses of the federal and state constitutions, the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 16, 17 and 22 of the Florida Constitution, and §921.141(5)(F), F.S.A. (1993).

> The trial court erred in finding as an aggravating factor, that the murder was especially heinous, atrocious and cruel, where the entire basis for that finding was the testimony of medical examiner Nelms to his "guess" that the victim was conscious

> for fifteen minutes after the fatal stabbing in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 16, 17 and 22 of the Florida Constitution, and §921.141(5)(H), F.S.A. (1993).
>
> The prosecutor's comments to the jury during the penalty phase that only a sentence of death would prevent this defendant, who had previously escaped from a work release facility, from killing someone else constituted improper argument of a nonstatutory aggravating factor, in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 16, 17 and 22 of the Florida Constitution and §921.141, F.S.A. (1993).

[D.E. 16, App. A]; see also, Allen v. State, 662 So. 2d 323 (Fla. 1995).

On July 20, 1995, the Florida Supreme Court affirmed Mr. Allen's conviction and sentence. Allen v. State, 662 So. 2d 323 (Fla. 1995). On January 16, 1996, Mr. Allen petitioned for writ of certiorari to the United States Supreme Court. (See [D.E. 16, App. D]). On March 25, 1996, Mr. Allen's petition for writ of certiorari was denied. See Allen v. Florida, 517 U.S. 1107 (1996).

On March 16, 2001, Mr. Allen filed an amended motion for post-conviction relief in the trial court. (See [D.E. 16, App. I]). The trial court summarily denied the motion on December 17, 2001. (See [D.E. 16, App. I]). Thereafter, on May 10, 2002, Mr. Allen appealed the denial to the Florida Supreme Court. In his appeal, Mr. Allen argued the following grounds for relief.

> The lower court erred in summarily denying Mr. Allen's claim that critical exculpatory evidence was not presented in violation of Brady v. Maryland, 373 U.S. 83 (1963).
>
> The lower court erred in summarily denying Mr. Allen's claim that Mr. Allen received ineffective assistance of counsel in the

7

guilt phase of his trial.

Error to deny evidentiary hearing on Mr. Allen's involuntary waiver of mitigation.

Error to deny evidentiary hearing on denial of Mr. Allen's right to competent mental health assistance.

Error to deny evidentiary hearing on claim that Mr. Allen [sic] innocent of the death penalty.

Error to deny evidentiary hearing on claim that trial counsel failed to challenge state's evidence and object to unconstitutional jury instructions.

Trial court erred in denying postconviction counsel's request to interview jurors; the rules prohibiting appellant's lawyers from interviewing jurors are unconstitutional.

Florida's capital sentencing statute is unconstitutional.

Mr. Allen is being denied his right to effective representation by the lack of funding available to fully investigate and prepare his postconviction pleadings. Understaffing, and the unprecedented workload on present counsel and staff.

Procedural and substantive errors which as a whole deprived Mr. Allen of a fair trial.

[D.E. 16, App. I].

Additionally, on May 6, 2002, Mr. Allen filed a petition for writ of habeas corpus in the Florida Supreme Court. (*See* [D.E. 16, App. J]). In his writ, Mr. Allen claimed two grounds for relief. The first claimed "[t]his court should re-visit the issue of proportionality; petitioner's waiver of mitigation precluded this court from conducting a constitutionally sufficient proportionality review" and the second claimed "[t]he court's decision to affirm the sentence of death must be revisited in light of *Apprendi v. New*

Jersey." [D.E. 16, App. J]. On July 10, 2003, the Florida Supreme Court, in a single decision, affirmed the denial of Mr. Allen's postconviction motion and denied his writ of habeas corpus. See Allen v. State, 854 So. 2d 1255 (Fla. 2003).

On October 14, 2003, the Petitioner filed his petition under 28 U.S.C. §2254 for writ of habeas corpus by a person in state custody with this Court. (See [D.E. 1]). On March 16, 2005, before the State filed its response, Petitioner filed a motion to hold federal proceedings in abeyance pending resolution of a Motion for Post-Conviction DNA Testing filed in state circuit court. (See [D.E. 5]). This Court granted Mr. Allen's motion on April 5, 2005 and the proceedings were held abeyance.

On February 15, 2007, the Florida Supreme Court per curiam denied Mr. Allen's motion. See Allen v. State, 957 So.2d 635 (Fla. 2007). On May 1, 2007, the State filed a Motion to Lift Stay which was granted on August 1, 2007. (See [D.E. 9, 14]). On August 7, 2007, the State filed its Response to the Order to Show Cause with exhibits. (See [D.E. 15, 16]). The Petitioner replied on August 28, 2007. (See [D.E. 19]). On May 13, 2008, this matter was reassigned to the undersigned. (See [D.E. 20]). In total, eighteen claims for relief, including subparts, are pending before this Court: [5]

> I. Mr. Allen was denied his right to an adversarial testing at the guilt phase of his capital trial due to the cumulative effects of ineffective assistance of counsel and the withholding of material evidence, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
>
> II. Mr. Allen is innocent of first-degree murder. Evidence

---

[5] Mr. Allen's petition contains multiple sub-claims within the ten main claims. For brevity's sake, only a summary of the main claims will be listed. However, this Court will address each sub-claim later in the Order.

9

that was not presented to the jury due to state misconduct and trial counsel's ineffectiveness proves that Mr. Allen is innocent. The jury was deprived of evidence necessary to its determination in the guilt phase of Mr. Allen's trial in violation of the Sixth, Eighth, and Fourteenth Amendments.

III.    Mr. Allen was denied an adversarial testing at the sentencing phase of his capital trial because trial counsel was ineffective and Respondent knowingly presented false evidence. Mr. Allen was deprived of a fair trial as guaranteed by the Sixth, Eighth, and

Fourteenth Amendments to the United States Constitution.

IV.    Mr. Allen did not receive the effective assistance of counsel at the sentencing proceedings of his capital trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and did not knowingly and voluntarily waive the presentation of mitigation evidence. Mr. Allen as a result was also denied a meaningful proportionality review in violation of the Eighth Amendment.

V.    Mr. Allen was denied the effective assistance of counsel at the guilt and penalty phases of his capital trial because trial counsel failed to obtain an adequate mental health examination. Mr. Allen's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution were violated.

VI.    Mr. Allen was denied an adversarial testing at the penalty and sentencing phases of his capital trial because, but for trial counsel's ineffectiveness and Respondent's knowing presentation of false evidence , Mr. Allen would have been found innocent of the death penalty. Mr. Allen was deprived of a fair trial as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

VII.    Mr. Allen was deprived of a fair sentencing proceeding as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution due to prejudicial jury instructions and to improper comments and arguments by the prosecution.

VIII. The Florida Capital Sentencing Procedures as employed in Mr. Allen's case violated his Sixth Amendment right to have unanimous jury return a verdict addressing his guilt of all the elements necessary for the crime of capital first degree murder, in violation of *Ring. v. Arizona*.

IX. Mr. Allen was denied his rights under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution and is denied effective assistance of counsel in pursuing his postconviction remedies because of the rules prohibiting his lawyers from interviewing jurors to determine if constitutional error was present.

X. Florida's Capital Sentencing Statute is unconstitutional on its face and as applied because it fails to prevent the arbitrary and capricious imposition of the death penalty, and it violated the constitutional guarantees of due process and prohibiting cruel and unusual punishment.

## III.   **STANDARD OF REVIEW**

Section 104(d) of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. §2254(d), sets out a significant restriction upon the ability of

federal courts to grant habeas corpus relief. It provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on

> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court interpreted this provision as follows:

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion
> opposite to that reached by this Court on a question of law
> or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies
> the correct governing legal principle from this Court's
> decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

"Clearly established federal law" refers to the holdings of the United States Supreme Court as of the time of the relevant state court decision. *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court's decision is "contrary to" clearly established federal law if the state court 1) applied a rule that contradicts United States Supreme Court case law, or 2) arrived at a result different from that reached in a United States Supreme Court decision when faced with materially indistinguishable facts. *Id.*; *see also, Fugate v. Head*, 261 F.3d 1206, 1215-16 (11th Cir. 2001). A state court arrives at an "unreasonable application" of clearly established federal law if it 1) unreasonably applies a correct legal principle for Supreme Court case law to the facts of a petitioner's case, or 2) unreasonably extends or declines to extend a legal principle from Supreme Court case law to a new situation. *Id.* In this context, an "unreasonable application" is an "objectively unreasonable" application. *Williams v. Taylor, supra* at

409.

The Eleventh Circuit has stressed the importance of this standard, stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Crawford, supra* at 1295 (quoting *Bell v. Cone*, 535 U.S. 685 (2002)).

Thus, AEDPA "establishes a 'general framework of substantial deference' for reviewing 'every issue that the state courts have decided.'" *Fotopoulos v. Secretary*, 516 F.3d 1229, 1232 (11th Cir. 2008) (citing *Crowe v. Hall*, 490 F.3d 840, 844 (11th Cir. 2007)(quoting *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1141 (11th Cir. 2005)). This court is to affirm the decision of the state court unless the decision "'was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court,' 28 U.S.C. §2254(d)(1), or there was an 'unreasonable determination of the facts,' *id.* §2254(d)(2)". *Fotopoulos,* 516 F.3d at 1232.

The Court is further bound by the restrictions set forth in 28 U.S.C. §2254(e). Section 2254(e) provides:

> **(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue

13

made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

For the following reasons, habeas relief is denied.

## IV.    ANALYSIS

### *Cumulative Effect of Ineffective Assistance of Counsel and the Withholding of Material Evidence*

Mr. Allen's first claim for habeas relief is as follows:

Mr. Allen was denied his right to an adversarial testing at the guilt phase of his capital trial due to the cumulative effects of ineffective assistance of counsel and the withholding of material evidence, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

([D.E. 1] at 13).

Mr. Allen argues two distinct sub-claims within his claim of cumulative effect of specific errors which violated his rights guaranteed under the United States Constitution. First, Mr. Allen argues that the Respondent withheld material evidence. This sub-claim has three components: the "hair analysis results" ([D.E. 1] at 14-16), "notes revealing contaminated evidence" ([D.E. 1] at 16) and a "fingerprint report." ([D.E. 1] at 17-23). Second, Mr. Allen argues that he was rendered ineffective assistance of counsel due to his counsel's "failure to investigate and discover evidence of innocence" ( [D.E. 1] at 24-26), "failure to challenge DNA evidence" ([D.E. 1] at 26-29), "trial counsel's suicide argument" ([D.E. 1] at 29-33), "failure to impeach Larry

14

Woods", ([D.E. 1] at 33-35) and "failure to impeach Tonia McClain." ([D.E. 1] at 35).

In support of his cumulative error claim, Mr. Allen argues "the combination of the above-described errors - both the *Brady* violations and counsel's deficient performance - rendered the results of the trial unreliable. Absent these errors, there is a more than a reasonable probability that the outcome would have been different." ([D.E. 1] at 35). Mr. Allen exhausted these claims and sub-claims[6] in his Fla. R. Crim. P. 3.850 post-conviction motion and petition for writ of habeas corpus. *See Allen v. State*, 854 So. 2d 1255 (Fla. 2003). The trial court denied Mr. Allen's post-conviction motion stating:

> The Court found no merit in any of the individual claims, issues and/or sub-issues raised by the Defendant. It follows that there can be no cumulative error. *See Downs v. State*, 740 So. 2d 506, 509 (Fla. 1999)(finding that where allegations of individual error are found without merit, a cumulative error argument based thereon must also fail).

([D.E. 16, App. R.] at 1043).

"A determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e). For the reasons that follow, Mr. Allen has not met this burden.

### A)   Withholding of Material Evidence

Mr. Allen's first claim for habeas relief is that he was "denied his right to due

---

[6] Mr. Allen did not appeal his claim that he was denied effective assistance of counsel where his attorney failed "to investigate and discover evidence of innocence" to the Florida Supreme Court. (*See* [D.E. 16, App. I]). The denial of this claim based on failure to exhaust and a procedural bar will be addressed later herein.

process of law under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny because Respondent withheld favorable evidence material to guilt or innocence." ([D.E. 1] at 13). Specifically, Mr. Allen asserts that the Respondent withheld laboratory reports from the Florida Department of Law Enforcement ("FDLE") indicating that (1) two hairs found on the victim or in the victim's hand were not Mr. Allen's; (2) those hair samples were contaminated, and therefore could not be tested and (3) a different FDLE report establishing that no latent fingerprints in the victim's car matched Mr. Allen. (*See* [D.E. 1] at 13).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a *Brady* violation must demonstrate: (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. *United States v. Severdija*, 790 F.2d 1556, 1558 (11th Cir. 1986). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Stewart*, 820 F.2d 370, 374 (11th Cir. 1987)(*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985)).

In addition, due process claims involving allegations of the state's failure to preserve evidence are governed by *Arizona v. Youngblood*, 488 U.S. 51 (1988). Whether the failure to preserve evidence already gathered constitutes a due process violation depends on the individual facts of the case. If the trial court is unable to determine

16

whether the evidence would have been exculpatory, a due process violation arises only if there is a finding of bad faith in the failure to preserve the evidence. Absent bad faith, the failure to preserve evidence that could have been subjected to testing by the defense, and was possibly exculpatory, does not result in a deprivation of due process. *Id.; United States v. Brown*, 9 F.3d 907 (11th Cir. 1993); *Redman v. Dugger*, 866 F.2d 387 (11th Cir. 1989); *United States v. Nabors*, 707 F.2d 1294, 1297 (11th Cir. 1983). For the reasons that follow habeas relief is denied.

### Hair analysis

Mr. Allen's first sub-claim is:

> Had Respondent not suppressed the evidence that FDLE test results established that the two hairs found on or in the victim's hand did not belong to Mr. Allen, Mr. Allen could have argued to the jury that it was a reasonable possibility that the hairs found in the victim's hand belonged to a third party, who was the true killer, and because FDLE excluded Mr. Allen as the source of the hairs, Mr. Allen was not the killer.

([D.E. 1] at 14).

The State responded by arguing "both the State courts properly identified *Brady* as the standard for evaluating this claim and accurately enunciated that standard" and "[g]iven the multitude of possible explanations for the hair, there is nothing unreasonable about the Florida Supreme Court holding that the alleged failure to inform Petitioner that the hair did not match his did not create a reasonable probability of a different result." ([D.E. 15] at 33, 37)(footnote omitted).

The trial court, in denying Mr. Allen's motion, found as to his claim that the State withheld material evidence regarding hair analysis results:

17

> Here, the victim was found lying face down on the bedroom floor. In or on her hands were found two hairs that did not come from the Defendant. Examination of the hairs did not eliminate the Victim herself as the source of the questioned hairs because no samples of her hair were kept for comparison. The source of the hairs remains unidentified.

> However, unlike the facts of *Hoffman*, there is no question that the Defendant was in the Victim's house from the night before the murder when the two arrived in Summerland Key until he left sometime after 11:45 a.m., on the 13th of November. The presence of the hairs in or on the Victim's hands neither inculpates nor exculpates the Defendant. Therefore, the State's failure to disclose the FDLE report concerning the results of the hair analysis did not constitute a violation because the third prong of the *Brady* test was missing: there is no reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *Hoffman*.

([D.E. 16, App. R] at 1043-44).

On appeal to the Florida Supreme Court, the court summarily affirmed the trial court's denial of sixteen of his eighteen claims because they were procedurally barred or lacked merit. *See Allen v. State*, 854 So.2d 1255 (Fla. 2003) (footnotes omitted). The Florida Supreme Court addressed only claim one (asserting a *Brady* violation concerning hairs found in or on the victim's hand) and claim five (ineffective assistance of counsel for advancing a suicide theory). *Allen*, 854 So.2d 1255. Ultimately, the Florida Supreme Court affirmed the denial of Mr. Allen's claim that he was denied his right to due process of law under *Brady* because the FDLE withheld laboratory reports indicating that two hairs found on the victim or in the victim's hands were not Mr. Allen's. *Allen*, 854 So. 2d at 1259-61. In doing so, the court found the result of the hair analysis was favorable to Allen, and

18

the State withheld the FDLE report that contained the result of the hair analysis. Once the State obtained the result of the hair analysis, it was required to disclose them to the defendant. *Allen*, 854 So. 2d at 1259. However, the court concluded that to obtain relief, Mr. Allen must still show that the "failure to disclose this evidence prejudiced [him]. To satisfy this prong of *Brady*, a defendant must show that the suppressed evidence was material." *Allen*, 854 So. 2d at 1260. In denying the claim, the Florida Supreme Court held:

> Here, the result of the hair analysis could not reasonably place the case in such a different light as to undermine the confidence in the verdict. Although the hair analysis excluded Allen as the source, it did not exclude the victim; and due to contamination, the two hairs excluded Allen as the source, it did not exclude the victim; and due to contamination, the two hairs cannot be examined further. Thus, the analysis neither supported or negated Allen's argument that an unidentified third person committed the murder.
>
> * * *
>
> Here, two hairs were found in or on the victim's hand - not clutched in it. In addition, it is undisputed that Allen was present at the scene shortly before the victim's death. He hailed a taxi from the Buccaneer Lodge shortly after the victim's death, and the victim's car was later found at the Buccaneer Lodge. Allen paid the taxi driver with a hundred-dollar bill. The jury concluded that Allen killed the victim, stole her $4100, fled with her car to the Buccaneer Lodge, abandoned the car there and continued his getaway in a taxi. The fact that two hairs found in or on the victim's hand did not belong to Allen does not place the case in such a different light as to undermine confidence in the verdict.

*Allen*, 854 So.2d at 1260.

Our review of the decisions of the state courts is limited   and the AEDPA

established a "'general framework of substantial deference' for reviewing 'every issue that the state courts have decided.'" *Fotopoulos,* 516 F.3d at 1232. Accordingly, this court is to affirm the decision of the state court unless the decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court. *See id.*

After careful review of Mr. Allen's *Brady* violation claim regarding the hair analysis results, there is nothing in the record to suggest that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court or that there was an unreasonable determination of the facts. *See Fotopoulos*, 516 F.3d at 1232. Therefore, the foregoing resolution of his assertion of a violation of due process rights was reasonable and in accord with applicable federal authority, and should not be disturbed. *Williams v. Taylor,* 529 U.S. 362 (2000), *supra*.

### Contaminated Evidence

Mr. Allen's second sub-claim is "FDLE lab technicians refused to test some of the evidence because the incompetence of the Monroe County Sheriff's Office resulted in contaminated samples that could not yield scientifically sound results" and "[t]hese notes reveal that Respondent was aware prior to trial that crucial crime scene evidence had been lost due to the police investigators botched handling of physical evidence." ([D.E. 1] at 16). Mr. Allen further argues the failure to disclose this information resulted in the deprivation of powerful impeachment evidence "that would have impugned the reliability of the police investigation." ([D.E. 1] at 16).

The State responded that "[p]etitioner had ample information about the fact that evidence had been mishandled. Petitioner was aware that the State had submitted the evidence for RFLP DNA testing that had failed." ([D.E. 15] at 39). The State further argued that Mr. Allen had put forth evidence 'that the medical examiner had failed to note that Ms. Cribbs' feet had been tied and had erred regarding the cause of death in an unrelated case." ([D.E. 15] at 39).

As to Mr. Allen's claim that the State withheld material evidence regarding notes revealing contaminated evidence, the trial court found:

> Evidence may have been lost or contaminated as the Defendant alleges. However, conceding for sake of argument that the loss or contamination may have resulted from bad decisions or even incompetence on the part of the State, nothing in the record even suggests that the State acted in bad faith. See Arizona v. Youngblood, 488 U.S. 51, 57-59, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); see also Merck v. State, 664 So.2d 939, 942 (Fla. 1995). Thus, in addition to being procedurally barred, Cook, Patton, Teffeteller, Kelley, supra, the Defendant's claim is legally insufficient.

The claim is denied.

([D.E. 16, App. R] at 1047).

On appeal, the Florida Supreme Court summarily denied this claim as lacking merit "because Allen was not prejudiced by the alleged errors." Allen v. State, 854 So. 2d 1255, 1258, fn.5 (Fla. 2003). This Court concurs. Mr. Allen has failed to establish that, to the extent that evidence was indeed contaminated or lost, it was due to bad faith on the part of the State of Florida. Since there has been no showing that the evidence would have been exculpatory and no showing whatsoever that the failure to preserve it was motivated

21

by bad faith, no due process violation occurred when the State did not disclose that evidence was mishandled. *Arizona v. Youngblood, supra; United States v. Brown, supra.* Mr. Allen has likewise been unable to show that he was prejudiced by the action or inaction on the part of the State. Under these circumstances, the state court's rejection of this claim was not contrary to or an unreasonable application of federal constitutional principles, and therefore should not be disturbed here. *Williams v. Taylor, supra.* Habeas relief is denied as to this claim.

## Fingerprint Report

Mr. Allen's third sub-claim is "Respondent also withheld an FDLE report regarding latent fingerprints lifted from the inside of the victim's car. The report indicates that *none of the latent prints match known prints of Mr. Allen.*" ([D.E. 1] at 17). Mr. Allen now argues that "[t]his evidence would have strongly supported [his] reasonable doubt defense by placing doubt on Respondent's theory of the case, by proving that Respondent presented false evidence, and by providing yet another example of how Respondent's investigation in this case was fraught with sloppiness and critical error." ([D.E. 1] at 17).

The State argues "there was nothing unreasonable about the rejection of the claim that the State suppressed the fingerprint report or presented testimony about it." ([D.E. 15] at 37-8). Similar to its argument regarding the hair samples, the State argues that "petitioner did not assert that the report showed that the fingerprint did not belong to someone who was known to have been in the house or car." ([D.E. 15] at 38).

In denying Mr. Allen's motion relating to his claim that the State withheld material evidence regarding the fingerprint report, the trial court found:

22

> The Defendant asserts that the evidence of the State's fingerprint expert was false because she testified that she identified the Defendant's fingerprints in the Victim's vehicle whereas the FDLE report indicated that there were no matches.
>
> This claim is insufficient because the Defendant does not allege how he was prejudiced.
>
> The evidence established that the Defendant had traveled over 900 miles in the Victim's automobile. The fact that the Defendant's fingerprints were found the vehicle [sic] is, once again, neither inculpatory nor exculpatory. Even if Counsel attempted to impeach the State's expert with the FDLE report, confidence in the outcome of the trial would not have been undermined. *Kyles; Strickler.*
>
> The claim is denied.

([D.E. 16, App. R] at 1044).

Likewise, on appeal, the Florida Supreme Court summarily denied this claim as lacking merit "because Allen was not prejudiced by the alleged errors." *Allen v. State*, 854 So. 2d 1255, 1258, fn.5 (Fla. 2003). Mr. Allen argues that this evidence would have strongly supported his reasonable doubt defense by placing doubt on Respondent's theory of the case, by proving that Respondent presented false evidence, and by providing yet another example of how Respondent's investigation in this case was fraught with sloppiness and critical error. This argument standing alone does not show that the fingerprint report was evidence suppressed that was favorable to the defendant or exculpatory. *See Brady*, 373 U.S. 83 (1963). A conclusory and speculative contention falls far short of establishing that a *Brady* violation occurred. A court cannot speculate as to what evidence the defense might have found if the information had been disclosed. *Wright*

v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999). Since Mr. Allen essentially has done no more than speculate that the fingerprint report might have established reasonable doubt in some unspecified way, his claim of a Brady violation fails. Therefore, habeas relief is also denied as to this sub-claim.

### B) Ineffective Assistance of Counsel

Mr. Allen's second claim for habeas relief is that the Florida Supreme Court's decision on Mr. Allen's "claim of ineffective assistance of counsel cannot be squared with the proper Strickland analysis. The Court's decision is contrary to Strickland because the court clearly failed to review 'the record as a whole' in assessing whether Mr. Allen was denied the effective assistance of counsel.'" ([D.E. 1] at 23).

To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668 (1984). Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994). Second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

In order to establish a claim of ineffective assistance of counsel, "a defendant must

show that his counsel's representation fell below an 'objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993)(citing *Strickland*, 466 U.S. at 688, 694).

For the reasons that follow habeas relief is also denied as to these claims.

## Failure to investigate and discover evidence

Mr. Allen did not appeal to the Florida Supreme Court the denial of his claim that he was denied effective assistance of counsel where his attorney failed "to investigate and discover evidence of innocence."[7] (*See* [D.E. 16, App. I]). As such, this claim is unexhausted. To exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

Ordinarily, a federal habeas corpus petition which contains unexhausted claims is dismissed pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982), allowing the petitioner to return to the state forum to present his unexhausted claim or claims. However, such a result in this instance would be futile, since the petitioner's unexhausted claim is now incapable of

---

[7] Mr. Allen argues that this claim was, in fact, "Claim 13" of the order denying his post-conviction motion which the court denied as lacking merit because Mr. Allen wasn't prejudiced. (*See* [D.E. 1] at 25). However, a review of the record shows that Mr. Allen did not raise this as a specific claim on his appeal to the Florida Supreme Court but rather asserted only four ineffective assistance of counsel claims; the same claims asserted in the instant petition. (*See* [D.E. 16, App. I]); (*see also* [D.E. 1] at 24-35). Rather, on appeal to Florida Supreme Court, Mr. Allen argued this claim as one of error by the trial court to deny his request for an evidentiary hearing not ineffective assistance of counsel. (*See* [D.E. 16, App. I] at 62-3).

exhaustion at the state level and would be procedurally barred under Florida law. Mr.

Allen has already pursued a direct appeal and filed a Rule 3.850 motion in state court, with

the denial of the motion affirmed on appeal.[8] Because there are no procedural avenues

remaining available in Florida which would allow Mr. Allen to return to the state forum and

exhaust the subject claim, the claim is likewise procedurally defaulted from federal review.

*Collier v. Jones*, 910 F.2d 770, 773 (11th Cir. 1990)(where dismissal to allow exhaustion

of unexhausted claims would be futile due to state procedural bar, claims are procedurally

barred in federal court as well); *Parker v. Dugger*, 876 F.2d 1470, 1477-78 (11th Cir.

1989)("plain statement" rule of *Harris v. Reed*, 489 U.S. 255 (1989), does not apply when

a claim was never presented in state court).

Claims that are unexhausted and procedurally defaulted in state court are not

reviewable by this Court unless the petitioner can demonstrate cause for the default and

actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of

fundamental miscarriage of justice occasioned by a constitutional violation that resulted

in the conviction of a defendant who was "actually innocent," as contemplated in *Murray*

*v. Carrier*, 477 U.S. 478 (1986). *See House v. Bell*, 547 U.S. 518 (2006); *Dretke v. Haley*,

---

[8] In Florida, issues which could be but are not raised on direct appeal may not be the subject of a subsequent Rule 3.850 motion for postconviction relief. *Kennedy v. State*, 547 So. 2d 912 (Fla. 1989). Further, even if the subject claim was amenable to challenge pursuant to a Rule 3.850 motion, it cannot now be raised in a later Rule 3.850 motion because, except under limited circumstances not present here, Florida law bars successive Rule 3.850 motions. *See* Fla.R.Crim.P. 3.850(f). *See also, Moore v. State*, 820 So. 2d 199, 205 (Fla. 2002)(holding that a second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion). Further, any second motion seeking relief under Rule 3.850 would be time barred in that it would be filed more than two years from the date Allen's judgment of conviction became final. *See* Fla.R.Crim. P. 3.850(b).

541 U.S. 386 (2004). *See also United States v. Frady*, 456 U.S. 152, 168 (1982). Since Mr.

Allen has not established, let alone alleged, cause to excuse his default, it need not be

determined whether he suffered actual prejudice. *See Glover v. Cain*, 128 F.3d 900, 904

n. 5 (5th Cir. 1997). Therefore, habeas relief is denied to Mr. Allen as to this sub-claim.

### Failure to challenge DNA evidence

In this second sub-claim, Mr. Allen argues that "trial counsel was ineffective for

failing to request a '*Frye* hearing' before the State's DNA evidence was admitted." ([D.E.

1] at 26). The State argued that because the Petitioner argued to the jury that "these DNA

results only established that Petitioner had been at the house at sometime, a point which

Petitioner did not contest at trial. Under these circumstances, there was nothing

unreasonable about determining that a failure to request a *Frye* hearing did not create a

reasonable probability of a different result." ([D.E. 15] at 49).

The trial court denied this sub-claim finding:

> The DNA evidence did not prove the culpability of the
> Defendant with respect to the Victim's murder. The semen,
> blood and DNA evidence simply went to confirm the
> Defendant's presence in Summerland Key with the Victim, a
> fact that was not in dispute. The failure to conduct a *Frye*
> hearing or, alternatively, the exclusion of the DNA evidence
> would not have affected the outcome of the trial.
>
> Counsel may be criticized for failure to seek a *Frye* hearing.
> However, assuming for the sake of argument that the failure
> constituted such a deficient performance as would meet the
> first prong of *Strickland*, the Court finds that the prejudice
> prong would not have been met. Therefore, the Defendant is
> not entitled to any relief on this claim.

([D.E. 16, App. R] at 42-3).

27

On appeal, the Florida Supreme Court summarily denied this claim as lacking merit "because Allen was not prejudiced by the alleged errors." *Allen v. State*, 854 So. 2d 1255, 1258, fn.5 (Fla. 2003). This Court concurs. While Mr. Allen argues that his counsel was ineffective for failing to request a *Frye* hearing, there is nothing in the record to suggest that this statement is anything more than speculation. However, the Court need not engage in that analysis because Mr. Allen cannot and does not show prejudice. There is no indication that trial counsel's failure to request a *Frye* hearing rendered Mr. Allen's trial "fundamentally unfair" or that "there is a reasonable probability that, but for counsel's unprofessional errors that the result of the proceeding would have been different." *Devier*, 3 F.3d at 1451; *Strickland*, 466 U.S. at 694. Therefore, habeas relief is denied as to this sub-claim.

### Trial counsel's suicide argument

Mr. Allen's third sub-claim that his counsel's "failure to investigate and prepare for Mr. Allen's trial resulted in a desperate trial strategy - arguing to the jury that the victim had committed suicide." ([D.E.] at 29). The State responded:

> [T]he rejection of this claim was not an unreasonable application of *Strickland*. As the State Courts found, the defense at trial was not that the victim committed suicide but that the jury should have a reasonable doubt about who killed Ms. Cribbs because the State did a sloppy job investigating the case, had no direct evidence regarding the killing and had simply charged Petitioner because he was a convenient suspect.

([D.E. 15] at 53-4).

28

In the order denying Mr. Allen's motion for post-conviction relief, the trial court found:

> In his closing argument, Counsel argued reasonable doubt as to the Defendant's guilt. He pointed out that the Defendant did not have to travel to the Florida Keys in order to steal the victim's $4,100.00. He pointed out that the Defendant did not have to wipe down the house for prints because the Defendant was the only person having a legitimate excuse to be in the house. He reiterated the possibility that an elderly widow had been led to suicide after being humiliated by a con man whom she had shown off as her new love but who had been obviously been [sic] interested only in stealing her money. Counsel argued that the authorities had conducted a sloppy investigation and that the Defendant, who was a drifter and who had concealed his true identify [sic], made a convenient suspect. Finally, he pointed out that the entirely circumstantial evidence did not definitively establish that the murder was not committed by an unknown third person.
>
> Under the facts of this case, Counsel's assistance cannot be said to be ineffective. *Strickland.*

([D.E. 16, App. R] at 45-6).

On appeal, the Florida Supreme Court found that "[a]lthough trial counsel did question the medical examiner about the possibility of suicide, such questioning was only a small part of an overall defense that Allen did not commit the murder." Further, the court held that "[a]lthough this particular illustration may not have helped Allen's cause, it did not undermine it either. Therefore, there is no reasonable probability that but for counsel's suggestion that the victim committed suicide, the result of the proceeding would have been different." *Allen v. State*, 854 So. 2d 1255, 1261 (Fla. 2003). As the court held that Mr. Allen "failed to establish prejudice, we do not address whether his counsel's performance was deficient." *Id.* at 1261.

This Court agrees. While counsel for Mr. Allen may have put forth an argument which was unwise, the Court declines to second guess trial counsel's strategy at the time of cross- examination. *See White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) (second-guessing of an attorney's performance is not permitted). Based on the record, it cannot be said that counsel's argument "w[as] outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Furthermore, there is nothing in the record to indicate that Mr. Allen was prejudiced by his counsel's actions. Here, based on the evidence presented to the jury, the Court cannot say that defense counsel's questioning of the medical examiner about a possible suicide rendered Mr. Allen's trial "fundamentally unfair" or that "there is a reasonable probability that, but for counsel's unprofessional errors that the result of the proceeding would have been different." *Devier*, 3 F.3d at 1451; *Strickland*, 466 U.S. at 694. Therefore, habeas relief is also denied as to this sub-claim.

### Failure to impeach Larry Woods

Mr. Allen's fourth sub-claim is that "[t]rial counsel was also ineffective for failing to competently cross-examine Larry Woods regarding prior inconsistent descriptions of the man he eventually identified at trial as Mr. Allen." ([D.E. 1] at 33). The State responded, as it had as to each sub-claim, that both the trial court and the Florida Supreme Court "correctly identified *Strickland* as providing the standard to adjudicate claims of ineffective assistance of counsel and accurately enunciated that standard." (*See* [D.E. 15]). It further argued "while Petitioner asserts that Mr. Woods should have been impeached with inconsistencies between Mr. Wood's description of Petitioner at the time of the crime and

Petitioner's present appearance, Petitioner ignores that his appearance had changed."

([D.E. 15] at 58).

In the order denying Mr. Allen's motion for post-conviction relief, the trial court found

> In view of his testimony at trial, the Defendant cannot be said
> to have been prejudiced by Counsel's failure to inquire about
> Woods' allegedly inconsistent prior description to the Sheriff.
>
> The Defendant also claims IAC because Counsel failed to ask
> Woods whether he saw anyone else near the house on the
> morning of the murder. However, as set out above, Woods
> testified that he left the area to go to lunch and was gone for
> over an hour. Counsel established that Woods had not seen
> anyone else go near the house while he was there, and that he
> had no knowledge of what transpired during his lunch period.
> To the extent that the Defendant claims that some unknown
> third person committed the crime, Counsel established the
> window of opportunity to support the Defendant's theory.
>
> Counsel was not ineffective. The claim is denied. *Strickland*.

([D.E. 16, App. R] at 37-8).

On appeal, the Florida Supreme Court summarily denied this sub-claim as lacking

merit "because Allen was not prejudiced by the alleged errors." *Allen v. State*, 854 So. 2d

1255, 1258, fn.5 (Fla. 2003).

The decision to cross-examine a witness and the manner in which it is conducted

are tactical decisions "well within the discretion of a defense attorney." *Fugate v. Head*,

261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th

Cir. 1985)). This Court cannot say counsel for Mr. Allen's performance was such that "no

competent counsel would have taken the action counsel did take." *Chandler v. United

States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Accordingly, habeas relief is

31

denied as to these sub-claims.

### Failure to impeach Tonia McClain

In his fifth sub-claim, Mr. Allen argues that "[t]he failure to impeach Woods' identification of Mr. Allen was even more prejudicial to the case in light of the failure of counsel to elicit the testimony by Tonia McClain." ([D.E. 1] at 35). The State again makes its *Strickland* argument and further claims that "Ms. McLain's sworn deposition testimony did not support the assertion that there were two cars at the murder scene. Moreover, Ms. McClain admitted that she could not see the people at Ms. Cribbs' house clearly." ([D.E. 15] at 61-2).

The trial court denied this sub-claim stating "[g]iven the nature of the testimony Ms. McClean[9] had to offer, Counsel can hardly be deemed ineffective for failure to call her." ([D.E. 16, App. R] at 39).

Similar to Mr. Allen's other claims, the Florida Supreme Court summarily denied this sub-claim as lacking merit "because Allen was not prejudiced by the alleged errors." *Allen v. State*, 854 So. 2d 1255, 1258, fn.5 (Fla. 2003). The strategy decision to call or not call witnesses is at the attorney's discretion. "A decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed." *Conklin v. Schofield*, 366 F. 3d 1191, 1204 (11th Cir. 2004), *cert. denied*, 544 U.S. 952 (2005). *See also Dorsey v. Chapman*, 262 F.3d 1181, 1186 (11th Cir. 2001) (holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call

---

[9] The spelling of Ms. McClean's name is taken from her deposition. The Petition states her name to be Tonia McClain. [D.E. 1].

expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy); *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). Accordingly, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Speculation about what witnesses could have said is not enough to establish prejudice. *See generally Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997); *see also White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."). Habeas relief is denied as to this sub-claim.

Ultimately, Mr. Allen is making a cumulative error claim. (*See* [D.E. 1] at 39). Although this Court engaged in a sub-claim by sub-claim analysis and has found each to be without merit, unless the trial was rendered fundamentally unfair, the Eleventh Circuit Court of Appeals has declined to entertain "cumulative error" claims . *See Cargill v. Turpin*, 120 F.3d 1366, 1386-87 (11th Cir. 1997). For reasons articulated in this Order, the Florida Supreme Court has determined, and this Court agrees, Mr. Allen's trial was not rendered fundamentally unfair. Therefore, the cumulative impact claim is denied as is each underlying sub-claim.

## II. Actual Innocence

Mr. Allen's second claim for habeas relief is as follows:

33

> Mr. Allen is innocent of first-degree murder. Evidence that was not presented to the jury due to State misconduct and trial counsel's ineffectiveness proves that Mr. Allen is innocent. The jury was deprived of evidence necessary to its determination in the guilt phase of Mr. Allen's trial in violation of the Sixth, Eighth, and Fourteenth Amendments.

([D.E. 1] at 36).

Mr. Allen argues he "is innocent of the crime for which he was convicted and sentenced to death." ([D.E. 1] at 36). In arguing this claim, Mr. Allen states that evidence exists which, if it had not been withheld from him by the State or investigated by his counsel, "would have assisted [his] efforts to prove his innocence." ([D.E. 1] at 37). The primary argument set forth by Mr. Allen is that "the State withheld exculpatory laboratory reports, knowingly presented false testimony, urged the jury to convict Mr. Allen on the basis of false medical testimony, and aroused the jury's passions by making an improper appeal to their sympathy. In addition, trial counsel failed to discover and present evidence proving Mr. Allen's innocence and failed to challenge the State's physical evidence." ([D.E. 1] at 39).

The State responds that this claim is "unexhausted, procedurally barred, not cognizable and without merit." ([D.E. 15] at 63).

The trial court denied this claim finding:

> Because the Defendant's actual innocence is the single most important issue, it is worth reiterating that the Defendant had the opportunity at trial to attach a name to the third person who "theoretically" could have committed the crime. He did not do so then and, significantly, he does not do so now in his motion for postconviction relief that is made under oath.

34

Further,

> "Two requirements must be made in order to set aside
> a conviction or sentence because of newly discovered
> evidence. First, the asserted facts 'must have been
> unknown by the trial court, by the party, or by counsel
> at the time of trial, and it must appear that defendant
> or his counsel could not have known them by the use
> of diligence.' Second, 'the newly discovered evidence
> must be of such nature that it would probably produce
> an acquittal on retrial.'" *Torres-Arboleda v. Dugger*,
> 636 So. 2d 1321, 1324-25 (Fla. 1994)(citations
> omitted).

> There is no need to reach the second requirement because,
> based on the Defendant's theory that the murderer might have
> been the unnamed third person picked up at the Miami airport,
> (T.Tr., generally 748-66, Exhibit 95 & T.Tr. 752 - 753, Exhibit
> 96), the evidence was known to the Defendant at the time of
> trial.

> The Defendant's claim of actual innocence is purely
> conclusory and devoid of any facts that would entitle him to
> any relief, *Ragsdale, supra,* at 207, and, consequently, is
> denied.

([D.E. 16, App. R] at 1083).

Here, Mr. Allen's claim of "actual innocence" is not a model of clarity. It convolutes what should be a straightforward argument that Mr. Allen is actually innocent of the crimes for which he has been convicted with what are essentially identical ineffective assistance of counsel and prosecutorial misconduct claims previously disposed of in this Order. *See* Order at 13-31. A review of the record explains the confusion. The State has argued and the record supports that this claim is unexhausted (*see* [D.E. 15] at 67) because Mr. Allen did not "raise the denial of the actual innocence

claim in the appeal from the denial of his motion for post conviction relief." *Id.* As such,

the State argues that Mr. Allen is not entitled to habeas review by this Court. *See id.*

Theoretically, the State is correct.

> Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. In order to be exhausted, a federal claim must be fairly presented to the state courts. "It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

*McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005).

> However, there are limited exceptions to this general rule.

> When a petitioner fails to properly exhaust his claims in state court, and is barred from raising the claims in state court by firmly established and consistently applied procedural rules, such claims are procedurally defaulted. *Henderson*, 353 F.3d at 891. "Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default." *Id.* at 892. "Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.* (citation omitted).

*Brown v. Hooks*, 176 Fed. Appx. 949, 954 (11th Cir. 2006).

As Mr. Allen claims his actual innocence, this Court reviews his claim on the merits as an exception to the general rule which requires a petitioner to properly exhaust his claims in state court. *See Brown*, 176 Fed. Appx. at 954. For the following reasons, habeas relief is denied.

It is well settled that the "existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Townsend v. Sain*, 372 U.S. 293 (1963). The Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). It is not the role of the federal courts to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial. *See Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact." *Id. (quoting Herrera*, 506 U.S. at 400).

Mr. Allen alleges no distinct independent constitutional violation relating to the alleged newly discovered evidence other than perhaps his waived and previously denied ineffective assistance of counsel claims asserted in the instant petition. *See* Order at 23-31. If he is attempting to recast the newly discovered evidence as a due process violation based upon the conduct of the state or trial court, such a claim is unavailing. *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360

37

U.S. 264, 269 (1959). Of course, it is undisputed that a state's knowing use of materially false evidence in a criminal prosecution is violative of due process principles. However, there is no support whatsoever in the record that the state knowingly withheld material evidence to secure a conviction. Since the record does not support any claim of false or fabricated evidence, Mr. Allen has failed to demonstrate that the prosecutor in any way acted improperly or knowingly presented any such evidence.

Further, even if a freestanding claim of actual innocence were cognizable here, a habeas petitioner attempting to establish "actual innocence" must meet a high standard. *Bousley v. United States*, 523 U.S. 614 (1998); *see also House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064 (2006). A petitioner must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley, supra* at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-328 (1995)). To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. *Id.* at 316.

In this federal proceeding, Mr. Allen has come forward with no new reliable evidence to support his claim of actual innocence. Mr. Allen's claims today are identical to those raised before the trial and appellate courts in Florida. Accordingly, the state courts' determinations that Mr. Allen was not entitled to postconviction relief on his claim of actual innocence are not in conflict with clearly established federal law or based on

38

an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). *Williams v. Taylor*, 529 U.S. 362 (2000).

### III. False Evidence

Mr. Allen's third claim for habeas relief is as follows:

> Mr. Allen was denied an adversarial testing at the sentencing phase of his capital trial because trial counsel was ineffective and respondent knowingly presented false evidence. Mr. Allen was deprived of a fair trial as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

([D.E. 1] at 40).

Mr. Allen argues "[t]rial counsel was ineffective for failing to challenge Respondent's evidence against Mr. Allen presented at the sentencing hearing." ([D.E. 1] at 40). He further argues that "[t]rial counsel was ineffective for failing to conduct an investigation to prove Mr. Allen's defense that someone else had committed the crime. As a result, counsel was unaware that Detective Glover had lied because the Buccaneer Lodge in fact had records proving that Mr. Allen was registered as a guest and that he was accompanied by another adult. " ([D.E. 1] at 40).

The State responded to Mr. Allen's claims that his counsel was ineffective at the sentencing hearing by stating that "the presentation of lingering doubt evidence at sentencing would not have affected the balance of aggravators or mitigators. As such, not only was it not contrary to, or an unreasonable application of, *Strickland* to reject the

39

claim but also the rejection of the claim was proper." ([D.E. 15] at 81-2). The State

further argues "the rejection of the claim that the State knowingly presented false

testimony from Det. Glover at the sentencing hearing is not contrary to, or an

unreasonable application of, clearly established United States Supreme Court

precedent." ([D.E. 15] at 82).

The trial court denied this claim as follows:

> The Defendant did not give Counsel any theory of innocence
> to investigate prior to the sentencing phase. Thereafter, the
> theory was put forward as a possibility, not as a fact. Under
> those circumstances, Counsel cannot be deemed ineffective
> for failure to investigate the Defendant's subsequently
> disclosed theory of innocence.
>
> The claim is denied. *Strickland*.

([D.E. 16, App. R] at 1069).

The Florida Supreme Court held that Mr. Allen's claim regarding his counsel for

failing to challenge the State's evidence (which Mr. Allen claims was false) was denied

because it "lack[ed] merit because Allen was not prejudiced by counsel's performance

in the guilt phase and he represented himself during the penalty phase." *Allen v. State*,

854 So. 2d 1255, 1258 (Fla. 2003).

Similar to Mr. Allen's claim of "actual innocence", this claim is also not a model

of clarity. It appears to assert the following sub-claims:

> 1) Mr. Allen's counsel was ineffective for failing to investigate
> and rebut allegedly false evidence that was put forth by the
> State at the sentencing hearing (when Mr. Allen was
> represented by counsel). (*See* [D.E. 1] at 40);
>
> 2) The cumulative effect of prior alleged *Brady* violations, the

40

State presentation of false evidence and Mr. Allen's counsel's failure to discover evidence resulted in prejudice to Mr. Allen. (*See* [D.E. 1] at 41);

3) Mr. Allen's counsel was ineffective for failing to object to the introduction at the sentencing hearing of a radio interview given by Mr. Allen. (*See* [D.E. 1] at 41-2) and

4) This Court need not afford deference to the state court's decision because "the court does not recognize or even acknowledge the knowing presentation of the false evidence claim." (*See* [D.E. 1] at 42).

Taking each argument in turn, habeas relief is denied.

### *Ineffective assistance of counsel for failure to investigate and rebut false evidence*

The trial court analyzed Mr. Allen's claim regarding his counsel's failure to investigate and rebut the alleged false evidence and determined that counsel's performance was not ineffective. ( *See* [D.E. 16, App. R] at 1069). "Counsel cannot be deemed ineffective for failure to investigate the Defendant's subsequently disclosed theory of innocence." ([D.E. 16, App. R] at 1069). As previously articulated, Mr. Allen's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996, "which limits our review of the decisions of the state courts and establishes a 'general framework of substantial deference' for reviewing 'every issue that the state courts have decided.'" *Fotopoulos v. Secretary,* 516 F.3d 1229, 1232 (11th Cir. 2008) (citing *Crowe v. Hall*, 490 F.3d 840, 844 (11th Cir. 2007)(quoting *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1141 (11th Cir. 2005)). This court is to affirm the decision of the state court unless the decision "'was contrary to, or involved an

unreasonable application of, clearly established Federal law as determined by the Supreme Court,' 28 U.S.C. §2254(d)(1), or there was an 'unreasonable determination of the facts,' *id.* §2254(d)(2)". *Fotopoulos*, 516 F.3d at 1232.

After careful review of Mr. Allen's claim, there is nothing in the record to suggest that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court or that there was an unreasonable determination of the facts. *See Fotopoulos*, 516 F.3d at 1229. Therefore, the foregoing resolution of his assertion of a violation of right to counsel was reasonable and in accord with applicable federal authority, and should not be disturbed. *Williams v. Taylor,* 529 U.S. 362 (2000) *, supra.*

### Cumulative effect

Here, Mr. Allen is again making a cumulative error claim. (*See* [D.E. 1] at 41). Although the Court previously engaged in a sub-claim by sub-claim analysis of his claims and ultimately found each to be without merit, unless the trial was rendered fundamentally unfair, the Eleventh Circuit Court of Appeals has declined to entertain "cumulative error" claims . *See Cargill v. Turpin*, 120 F.3d 1366, 1386-87 (11th Cir. 1997). For reasons previously articulated in this Order, the Florida Supreme Court has determined, and this Court agrees, Mr. Allen's trial was not rendered fundamentally unfair. Therefore, the cumulative effect claim is denied.

### Radio Interview

Mr. Allen argues that his counsel was ineffective for failing to object to the admission of an "irrelevant" but "prejudicial" radio interview. (*See* [D.E. 1] at 42). The

42

State responds that "the claim was properly denied, as counsel cannot be deemed ineffective for failing to raise nonmeritorious argument." ([D.E. 15] at 87). This claim was raised in Mr. Allen's post- conviction motion under the following heading:

> Mr. Allen was deprived the effective assistance of counsel at the penalty phase of his capital trial. Mr. Allen was deprived his right to a fair trial guaranteed by the sixth, eighth, and fourteenth amendments to the United States Constitution and the corresponding provisions of the Florida Constitution.

([D.E. 16, App. R] at 814).

This sub-claim regarding ineffective assistance of counsel for failing to object to the admission of this evidence was one of several sub-claims asserted under this broad claim. After review, the trial court denied this claim as procedurally barred. "The Defendant's representation of himself, and the consequences thereof, were briefed on his direct appeal" and "[h]aving been raised on direct appeal and decided adversely to the Defendant, Claim III and all of its issues and sub-issues must be denied". ([D.E. 16, App. R] at 1076-77). The Florida Supreme Court affirmed the trial court but found that Mr. Allen's claims of ineffective assistance of counsel claims should have been denied because "Allen was not prejudiced by counsel's performance in the guilt phase and he represented himself during the penalty phase." *Allen v. State*, 854 So.2d 1255, 1258 (Fla. 2003). However, the Florida Supreme Court, while denying this particular claim on the merits, also cited *Woods v. State*, 531 So. 2d 79, 82 (Fla. 1988), which held that "couching a [procedurally] barred claim in terms of ineffective assistance of counsel will not revive such a claim." *Allen*, 854 So.2d at 1258, fn. 4.  As previously noted, this

Court is to affirm the decision of the state court unless the decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court. *Fotopoulos*, 516 F.3d at 1232. A careful review of this claim reveals that the state court's decision was not "contrary to, or an unreasonable application of, clearly established Federal law" or an "unreasonable determination of the facts." *Id.* Therefore, habeas relief is denied.

### *Inapplicability of the AEDPA to Mr. Allen's false evidence claim*

Mr. Allen argues that his "claim is not subject to the limitations on the granting of federal habeas relief set forth in section 2254(d)" because the [Florida Supreme] court "does not even recognize or even acknowledge the knowing presentation of false evidence claim." ([D.E. 1] at 42). Mr. Allen does not support this theory with any reported case citations. (*See* [D.E. 1] at 42). The State argues that the Eleventh Circuit has "held that it is not necessary for a state court to explain its rejection of a claim for the AEDPA standard to apply. *Wright v. Moore*, 278 F.3d 1245, 1253-56 (11th Cir. 2002)." ([D.E. 15] at 83). The State is correct. However, *Wright* was decided on facts where the state court issued a denial of Wright's claims but did so summarily and without explanation. *See Wright*, 278 F.3d 1253-54. Here, Mr. Allen argues that the Florida Supreme Court did not adjudicate his false evidence claims on its merit or at all. (*See* [D.E. 1] at 42). This Court has analyzed the record and has found this **specific** sub-claim (that the State presented false evidence through Detective Glover who "lied because the Buccaneer Lodge in fact had records proving that Mr. Allen was a registered guest") was not properly raised by Mr. Allen on appeal to the Florida

44

Supreme Court. Rather, Mr. Allen argued this claim as an "error to deny evidentiary hearing on claim that trial counsel failed to challenge state's evidence and object to unconstitutional jury instructions." ([D.E. 16, App. I] at 62). Further, it is not clear from the record that Mr. Allen ever argued a separate and distinct claim for the presentation of false evidence by the State regarding this issue. In both his post-conviction motion and subsequent appeal to the Florida Supreme Court, Mr. Allen couched this claim in terms of ineffective assistance of counsel for failure to conduct an investigation to prove Mr. Allen's defense which would have resulted in the discovery that someone else could have committed the crime. (*See* ([D.E. 16, App. R] at 799, 834). On that basis, the Florida Supreme Court held that this claim lacked merit. Mr. Allen failed to properly exhaust a separate and distinct claim for false evidence before the state courts.

As such, because there are no procedural avenues remaining available in Florida which would allow Mr. Allen to return to the state forum and exhaust the subject claim, the claim is likewise procedurally defaulted from federal review. *Collier v. Jones*, 910 F.2d 770, 773 (11th Cir. 1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well); *Parker v. Dugger*, 876 F.2d at 1477-78. Habeas relief is denied as to this claim.

## IV. Ineffective Assistance of Counsel at Sentencing Phase

Mr. Allen's fourth claim for habeas relief is as follows:

45

> Mr. Allen did not receive the effective assistance of counsel at
> the sentencing proceedings of his capital trial in violation of
> the Sixth and Fourteenth Amendments to the United States
> Constitution and did not knowingly and voluntarily waive the
> presentation of mitigation evidence. Mr. Allen as a result was
> also denied a meaningful proportionality review in violation of
> the Eighth Amendment.

([D.E. 1] at 44).

The State responds that "Petitioner elected to waive his right to be represented

by counsel and, by doing so, [waived] the claim of ineffective assistance of counsel. As

such, cases regarding claims of ineffective assistance of counsel are inapplicable to this

matter." ([D.E. 15] at 97). The Florida Supreme Court affirmed the trial court and found

Mr. Allen's claims of ineffective assistance of counsel should have been denied

because "Allen was not prejudiced by counsel's performance in the guilt phase and he

represented himself during the penalty phase." *Allen v. State*, 854 So. 2d 1255, 1258

(Fla. 2003).

In the instant claim, Mr. Allen asserts two arguments. First, that his trial counsel

was ineffective for doing no mitigation investigation and, as a direct result of counsel's

failure, Mr. Allen did not - and could not have - knowing and voluntarily waived his

constitutional right to present mitigation evidence. (*See* [D.E. 1] at 70). Second, as a

result of trial counsel's failure to investigate and discover readily available mitigation

and Mr. Allen's resultant involuntary waiver of the constitutional right to present

mitigation, the Florida Supreme Court was precluded from conducting a meaningful and

constitutionally sufficient proportionality review. (*See* [D.E. 1] at 74).

## **Investigation of Mitigation Evidence**

As a threshold matter, the Eleventh Circuit has held under an objective standard of reasonableness that failing to make any preparations for the penalty phase of a capital murder trial deprives a client of reasonably effective assistance of counsel. See Blake v. Kemp, 758 F.2d 523, 533 (11th Cir. 1985); see also, Blanco v. Singletary, 943 F.2d 1477 (11th Cir. 1991). Here, following the guilty verdict, Mr. Allen made a motion to proceed pro se at the sentencing phase. (See [D.E.16] at 661). The trial court conducted a Faretta inquiry and "concluded that Allen knowingly and voluntarily waived his right to counsel and was competent to represent himself." (See [D.E. 16] at 664-78); see also ([D.E. 16] at 661). The trial court also ordered a psychological competency evaluation of Mr. Allen. (See [D.E. 16] at 661). Mr. Allen was then evaluated by two psychologists for competency. Both psychologists testified that Mr. Allen was competent to represent himself during the sentencing phase of his trial. (See [D.E. 16] at 688, 694). After hearing, the trial court granted Mr. Allen's motion to proceed pro se and appointed Mr. Allen's prior trial counsel as stand by counsel. (See [D.E. 16] at 695). It appears from the record before this Court that trial counsel did not conduct an investigation of possible mitigation evidence.

The State argued, and both Florida courts agreed, that because he chose to represent himself at sentencing proceedings, Mr. Allen was precluded from making ineffective assistance of counsel claims for failing to investigate mitigation. The state courts are correct. Habeas relief is denied to this claim.

47

## *Proportionality Review*

Mr. Allen's second sub-claim is that because his counsel did not conduct an

investigation of mitigation evidence, the Florida Supreme Court was precluded from

conducting a proportionality review of his sentence. This issue was argued to the

Florida Supreme Court on direct appeal, the Florida Supreme Court ruled as follows:

> In a footnote to this final issue, Allen also argues that his
> waiver of mitigation evidence precludes this Court from
> conducting a proportionality review of the death sentence. As
> discussed above, we find no error regarding Allen's decision
> to waive presentation of mitigation and to affirmatively assert
> the non-existence of mitigation. Such a valid waiver of
> mitigation does not preclude this Court from conducting the
> required proportionality review. *See Hamblen.* Moreover, we
> find that the facts of this case warrant the death sentence
> imposed and that the sentence is proportionate to other
> sentences of death affirmed by this Court.

*Allen v. State*, 662 So. 2d 323 (Fla. 1995).

"A determination of a factual issue made by a State court shall be presumed to

be correct. The applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence." 28 U.S.C. §2254(e). Mr. Allen has not

met this burden. Habeas relief is, therefore, denied.

### *V. Failure to Obtain an Adequate Mental Health Examination*

Mr. Allen's fifth claim for habeas relief is as follows:

> Mr. Allen was denied the effective assistance of counsel at the
> guilt and penalty phases of his capital trial because trial
> counsel failed to obtain an adequate mental health
> examination. Mr. Allen's rights under the Sixth, Eighth, and

> Fourteenth Amendments to the United States Constitution and
> the corresponding provisions of the Florida Constitution were
> violated.

([D.E. 1] at 76).

Mr. Allen argues his trial counsel was "ineffective because counsel failed to
investigate and discover information needed in order for a mental health expert to
render a professionally competent evaluation and failed to provide Mr. Allen with
competent mental health assistance." *Id.* Mr. Allen concludes his counsel's failure
resulted in the "jury that convicted and sentenced Mr. Allen to die [of being] deprived
of relevant information necessary to a fair trial and reliable sentencing" and his "death
sentence was the resulting prejudice." ([D.E. 1] at 79-80). Further, Mr. Allen claims his
counsel (during the *Faretta* hearing where Mr. Allen represented himself and his
counsel was merely there as a consultant to Mr. Allen) was ineffective for failing to
challenge the qualifications of one of the court-appointed mental health experts. (*See*
[D.E. 1] at 80).

The State responds that "[b]ecause the state courts' rejection of these claims
[are] not contrary to, or an unreasonable application of, clearly established United
States Supreme Court precedent, [Mr. Allen] is entitled to no relief." ([D.E. 15] at 113).

Here, the trial court conducted an analysis of the relevant federal and state law
and denied this claim:

> There was no reason to question the Defendant's mental
> competence at the guilt phase. Where Counsel had no reason
> to question the Defendant's mental condition and where the
> theory of defense was inconsistent with putting the

49

> Defendant's mental health in issue, Counsel was not
> ineffective for failing to obtain a guilt phase mental health
> evaluation.
>
> The claim is denied. *Strickland.*

([D.E. 16, App. R.] at 1073).

Similarly, the trial court denied this claim as to the sentencing phase:

> The Defendant's mental condition became a consideration
> only after Counsel moved to withdraw based on the
> Defendant's expressed desire to represent himself in the
> penalty phase and seek the death penalty. Thereupon, the
> Court conducted a *Faretta* hearing and inquired into the
> Defendant's age, education, whether the Defendant had ever
> been hospitalized or treated for a mental disability, his
> awareness of his right to be represented by an attorney, his
> understanding of the legal process, and his appreciation of the
> consequences of the penalty phase.
>
> * * *
>
> The two mental health experts examined the Defendant and
> testified as to the results of their examinations with respect to
> the criteria of Fla.R.Crim. P. 3.211(a). Both found the
> Defendant was competent to represent himself.

([D.E. 16, App. R.] at 1074).

Finally, the trial court denied Mr. Allen's claim regarding the expert witness

qualifications:

> [T]he Defendant, who was representing himself at this time,
> asserted that he was familiar with Dr. Wolfe's qualifications
> and stipulated that he was an expert. Although it is not clearly
> stated in the record, one can assume the Defendant became
> familiar with Dr. Wolfe's qualifications by consulting with

50

standby Counsel as was the case with Dr. Holbrook.

The claim is denied. *Strickland.*

([D.E. 16, App. R.] at 1075)(internal citations omitted).

The Florida Supreme Court also denied this claim in its entirety as "lack[ing] merit because Allen was not prejudiced by the alleged errors." *Allen v. State*, 854 So. 2d at 1258. This Court agrees and habeas relief is denied.

Under the AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.'" *Crawford v. Head,* 311 F.3d 1288, 1295 (11th Cir. 2002); *see Stewart v. Sec. Dept. of Corrections,* 476 F.3d 1193, 1208 (11th Cir. 2007); *see also Parker v. Sec.Dept.of Corrections,* 331 F.3d 764 (11th Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law.'" *Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). It is undisputed that the AEDPA applies in the instant case.

Where a petitioner's claim(s) raises a federal question, *see* 28 U.S.C. §2254(a)("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"), that was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. *See e.g., Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th

51

Cir. 2008).

Pursuant to 28 U.S.C. §2254(d), habeas relief is available only in cases where the claims were adjudicated on the merits and the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Crowe v. Hall*, 490 F.3d 840, 844 (11th Cir. 2007), *cert. den'd*, _ U.S. _, 128 S.Ct. 2053 (2008); *Williams v. Taylor*, 529 U.S. 362 (1999). Clearly established federal law embraces "the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision." *Stewart v. Sec'y, Dep't of Corrs.*, 476 F.3d 1193, 1208 (11th Cir. 2007). Further, a decision is "contrary to" established law if (1) the state court arrived at an opposite conclusion on a question of law as interpreted by the Supreme Court or (2) the court arrived at a different result when confronted with "materially indistinguishable" facts from relevant Supreme Court precedent. *Jennings v. McDonough*, 490 F.3d 1230, 1236 (11th Cir. 2007), *cert. den'd*, 534 U.S. 1096, 122 S.Ct. 846 (2008). An application of established law is unreasonable "if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context." *Id.*

Here, the Florida Supreme Court denied this claim as lacking merit because there was no showing of prejudice. *See Allen*, 854 So. 2d at 1258. Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. *See*

*Wright v. Sec. of Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002). The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." *Hardwick v. Crosby*, 320 F.3d 1127, 1161 (11th Cir. 2003)(citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)) (*en banc*)(When assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." *Van Poyck v. Florida Dep't of Corrs.*, 290 F.3d 1318, 1322 (11th Cir. 2002), *cert. den'd*, 537 U.S. 812, 123 S.Ct. 70 (2002)(quoting *Strickland*, 466 U.S. at 690). Further, "[p]rejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error." *Glover v. United States*, 531 U.S. 198, 203-204 (2001).

Giving the state courts a high level of deference, which this Court is required to do, the conclusion reached by both the trial court and the Florida Supreme Court was not contrary to nor an unreasonable application of federal law. To have been prejudiced, Mr. Allen must show that his counsel's deficient performance prejudiced the defense by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Strickland,* 466 U.S. at 687, 688, 694. "When a defendant challenges a death sentence . . . , the question is

whether there is reasonable probability that, absent the errors, the sentencer . . .would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.   After a careful review of the record, including the evidence presented at both trial and sentencing, this Court agrees with the Florida Supreme Court.  Mr. Allen has not proved prejudice.  As such, habeas relief is denied as to this claim.

### VI. Trial Counsel's Ineffectiveness and the State's Knowing Presentation of False Evidence.

Mr. Allen's sixth claim for habeas relief is as follows:

> Mr. Allen was denied an adversarial testing at the penalty and sentencing phases of his capital trial because, but for trial counsel's ineffectiveness and Respondent's knowing presentation of false evidence, Mr. Allen would have been found innocent of the death penalty. Mr. Allen was deprived of a fair trial as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

([D.E. 1] at 81).

This claim is particularly deceptive in its summary. It would appear that Mr. Allen was simply asserting an innocence of the death penalty claim. In fact, he is arguing: 1) that because his counsel was ineffective and Mr. Allen made an involuntary waiver of his right to present mitigation, there was no mitigation evidence presented at Mr. Allen's penalty phase; 2) that the Respondent knowingly presented false evidence in order to prove existence of aggravating circumstances and 3) these factors, in

combination with errors previously raised by Mr. Allen in the instant petition, deprived Mr. Allen of the fair and reliable sentencing to which he is entitled under the Eighth Amendment. (See [D.E. 1] at 81-8). Essentially, the first two sub-claims are the same that were previously asserted by Mr. Allen in the instant petition and rejected by this Court. (See Order at 37-39, 44-45).

The State responds that to the extent that Mr. Allen is asserting ineffective assistance of counsel, false evidence or failure of the sentencing court to properly recognize aggravating or mitigating factors, these claims were argued and rejected on either direct appeal or the appeal from denial of his post-conviction motion. (See [D.E. 15] at 116-22). The State further argues that if Mr. Allen is "attempting to assert a freestanding claim that he is innocent of the death penalty, he is entitled to no relief." ([D.E. 15] at 122). The State reasons that under the current case law from the United States Supreme Court, no freestanding claim of innocence of the death penalty exists. (See [D.E. 15] at 122). Finally, the State analyzes the mitigating and aggravating factors claim argued by Mr. Allen and determined that the claim is either procedurally barred and/or meritless. (See [D.E. 15] at 122-35).

On direct appeal to the Florida Supreme Court, Mr. Allen raised multiple issues involving the penalty phase of the proceedings. First, Mr. Allen argued that "the court erred in accepting his waiver of mitigation evidence where defense counsel did not investigate possible mitigating evidence and there was no record showing mitigation evidence as required by Koon." Allen v. State, 662 So. 2d 323, 328 (Fla. 1995). Second, Mr. Allen argued "the court erred by permitting him to deny the existence of

mitigation during the penalty phase before the jury." *Id.* at 329. Third, he argued the "court improperly found the aggravating factor that the murder was committed for pecuniary gain." *Id.* Fourth, Mr. Allen argued "that the heinous, atrocious or cruel (HAC) aggravating factor was not applicable in this case." *Id.* at 330. Finally, it was argued that "the prosecutor improperly argued the nonstatutory aggravating factor of future dangerousness during the penalty phase before the jury and during the sentencing proceeding before the judge." *Id.* at 331.

After a careful analysis, the Florida Supreme Court affirmed both Allen's judgment of guilt and his sentence of death.[10] *Id.* at 332. This Court similarly denies relief to Mr. Allen because it is unable to find that the Florida Supreme Court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Crowe,* 490 F.3d at 844.

However, this does not conclude Mr. Allen's sixth claim for habeas relief as he also argued that he is innocent of the death penalty. (*See* [D.E. 1] at 84-5). Mr. Allen argued this claim in his motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850. The trial court denied this claim because "to prevail on this claim, the Defendant would have to show that no statutory aggravator is applicable to the facts of his case or that his death sentence is disproportionate." (*See* [D.E. 16, App. R.] at 1078.) Further, the

---

[10] Mr. Allen also argued ineffective assistance of counsel during the penalty phase of the trial in his first motion for post-conviction relief. The Florida Supreme Court rejected his claim finding that it "lack[ed] merit because Allen was not prejudiced by counsel's performance in the guilt phase and he represented himself during the penalty phase." *Allen v. State,* 854 So. 2d 1255, 1258 (Fla. 2003).

trial court found that this claim was procedurally barred because these "issues were raised on direct appeal and decided adversely to the Defendant." *Id.* at 1079. Additionally, Mr. Allen argued that he was denied a realistic proportionality review. This claim was also raised on direct appeal and was decided adverse to Mr. Allen by the Florida Supreme Court. *Id.* During post-conviction proceedings, the trial court denied this claim in its entirety. *Id.* at 1080. On appeal, the Florida Supreme Court in denying the claim found it "lacks merit because Allen has not alleged that all of the aggravating circumstances supporting his death sentence are invalid and this Court already conducted a proportionality review on direct appeal."[11] *Allen v. State*, 854 So. 2d at 1258.

This Court has previously denied Mr. Allen's claims of ineffective assistance of counsel during his penalty phase and has similarly rejected claims regarding the presentation of false evidence by the State. (*See* Order at 37-51). Mr. Allen's sixth claim does not persuade this Court that a different result is warranted here. In regard to his claim of innocence of the death penalty and a lack of proportionality review, this

---

[11]

> Moreover, we find that the facts of this case warrant the death sentence imposed and that the sentence is proportionate to other sentences of death affirmed by this Court. *See, e.g., Carter v. State*, 576 So.2d 1291 (Fla. 1989)(affirming death sentence where the trial court found three aggravating circumstances of committed while under a sentence of imprisonment, committed during a robbery, and prior violent felony conviction, and one nonstatutory mitigating circumstance of a deprived childhood), *cert. denied,* 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991).

*Allen v. State*, 662 So.2d 323, 331-32 (Fla. 1995).

Court agrees with the Florida Supreme Court's analysis and finds that it is not inapposite of clearly established federal law which embraces "the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision." *Stewart*, 476 F.3d at 1208; *see also Johnson v. Singletary*, 938 F.2d 1166 (11th Cir. 1991)(*en banc*) ("[t]hat is, but for the constitutional error, the sentencing body could not have found any aggravating factors and thus petitioner was ineligible for the death penalty"). Habeas relief is denied.

## VII. *Deprivation of a Fair Sentencing Proceeding*

Mr. Allen's seventh claim for habeas relief is as follows:

> Mr. Allen was deprived of a fair sentencing proceeding as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution due to prejudicial jury instructions and to improper comments and arguments by the prosecution.

([D.E. 1] at 89).

Mr. Allen argues that "[t]rial counsel was ineffective for failing to object to jury instructions and comments by the State Attorney that unconstitutionally diluted the jury's sense of its responsibility for sentencing" according to *Caldwell v. Mississippi*.[12] ([D.E.

---

[12] *Caldwell v. Mississippi*, 472 U.S. 320 (1985), stated it was constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that responsibility for determining appropriateness of defendant's death rests elsewhere. The United States Supreme Court has since clarified the *Caldwell* decision by holding that "to establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Davis v. Singletary*, 119 F.3d 1471, 1482 (11th Cir. 1997) (citing *Romano v. Oklahoma*, 512 U.S. 1 (1994) (quoting *Dugger v. Adams*, 489 U.S. 401 (1989)). Therefore, "references to and descriptions of the jury's sentencing verdict in this case as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority are not error

58

1] at 89). Further, Mr. Allen claims that his [t]rial counsel was also ineffective for failing to object "to instructions that unconstitutionally shifted the burden to Mr. Allen to prove that life is an appropriate sentence" and "to vague instructions on the heinous, atrocious and cruel aggravating factor." ([D.E. 1] at 90-1). Finally, Mr. Allen argues that his [t]rial counsel was ineffective "for failing to object to the prosecutor's sentencing hearing argument urging the trial court to consider conscience of the community." *Id.* at 94.

The State responds that this claim and accompanying sub-issues were not raised by Mr. Allen until his post-conviction motion. Therefore, both the trial court and the Florida Supreme Court correctly determined that the claim was procedurally barred as this claim should have been brought on direct appeal. (*See* [D.E. 15] at 136-38). The State further argues that even if this claim was not procedurally barred that this claim was properly rejected by the state courts and the result was not "contrary to, or an unreasonable application of clearly established United States Supreme Court precedent." *Id.* at 139. The State's final argument is that "[c]ounsel cannot be deemed ineffective for failing to make an [sic] nonmeritorious claim to the contrary." ([D.E. 15] at 144).

This claim was first asserted by Mr. Allen in his motion for post-conviction relief. (*See* [D.E. 16, App. R.] at 1035). While Mr. Allen couches this claim as one of ineffective assistance of counsel, the trial court found it to be a *Caldwell* claim which should have been raised on direct appeal and was, therefore, procedurally barred at

under *Caldwell*." *Davis*, 119 F.3d at 1482.

that post-conviction motion stage of the proceedings. (*See* [D.E. 16, App. R.] at 1035). The Florida Supreme Court concurred and denied Mr. Allen's claim as procedurally barred. *Allen v. State*, 854 So. 2d at 1259. This Court agrees.

A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Here, the trial court found that Mr. Allen had failed to raise this claim on his direct appeal. (*See* [D.E. 16, App. R.] at 1035). When he attempted to raise this claim in his motion for post-conviction relief, the trial court denied the motion as procedurally barred. (*See* [D.E. 16, App. R.] at 1035).   Except under limited circumstances not present here, Florida law is that "[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack." *Smith v. State*, 445 So. 2d 323, 325 (Fla.1983); *see also Moore v. State*, 820 So. 2d 199, 205 (Fla. 2002)(holding that a second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion).  Relief should therefore be denied pursuant to 28 U.S.C. §2254(d).

Because Mr. Allen failed to properly raise the claim presented here in appropriate state court proceedings, resulting in the application of a procedural bar by the state

courts, the claim is likewise procedurally barred in this federal court.[13]  Mr. Allen has

failed to demonstrate objective cause for the failure to properly raise the claim in the

state courts and actual prejudice resulting from the error complained of.[14]  Therefore,

he cannot overcome the bar.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848-49 (1999);

*Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *United States v. Frady*, 456 U.S.

152, 168 (1982); *Wainwright v. Sykes*, 433 U.S. 72 (1977). Moreover, application of the

bar is appropriate in this case, because Mr. Allen has not alleged, let alone established,

that a fundamental miscarriage of justice will result from application of the bar in that he

has failed to meet the high standard of factual innocence. *See House v. Bell,* 547 U.S.

518, 538 (2006)(holding actual innocence requires substantive review only in

extraordinary cases); *Dretke v. Haley,* 541 U.S. 386, 124 S.Ct. 1847 (2004). *See also*

*Bousley v. United States,* 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo,* 513 U.S.

298, 327-328 (1995). As this claim was procedurally barred in the state courts, this

claim is likewise procedurally barred here.  Therefore, habeas relief is denied.

---

[13]  First, the federal court must determine whether the last state court rendering
judgment clearly and expressly stated that its judgment rested on a procedural bar. Second,
the federal court must determine whether any future attempt to exhaust state remedies would
be futile under the state's procedural default doctrine. *Bailey,* 172 F.3d at 1303. In Florida, a
District Court of Appeal's *per curiam* affirmance of a circuit court's ruling explicitly based on
procedural default "is a clear and express statement of its reliance on an independent and
adequate state ground which bars consideration by the federal courts." *Harmon v. Barton*, 894
F.2d 1268, 1273 (11th Cir. 1990).

[14]  To establish cause for a procedural default, a petitioner "must demonstrate that some
objective factor external to the defense impeded the effort to raise the claim properly in state
court." *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477
U.S. 478 (1986). To show prejudice, in essence, a petitioner must demonstrate that there is at
least a reasonable probability that the outcome of the proceeding would have been different.
*See Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir. 2002).

## VIII. Ring v. Arizona

Mr. Allen's eighth claim for habeas relief is as follows:

> The Florida Capital Sentencing Procedures as employed in
> Mr. Allen's case violated his Sixth Amendment right to have
> unanimous jury return a verdict addressing his guilt of all the
> elements necessary for the crime of capital first degree
> murder, in violation of *Ring. v. Arizona*[15].

([D.E. 1] at 96).

Mr. Allen argues a multitude of sub-claims regarding the sentencing procedures

in Florida. (*See* [D.E. 1] at 96-126). His primary argument is that "*Ring* applies to Mr.

Allen's case and renders his death sentence in violation of his federal notice and jury

trial rights." ([D.E. 1] at 97). In making that argument, Mr. Allen concludes: "the basis

of *Mills v. Moore* is no longer valid" *id.*; "in Florida, Eighth Amendment narrowing occurs

at sentencing" ([D.E. 1] at 98); "Florida's statute contains three death-eligibility steps"

([D.E. 1] at 101); "in Florida, the eligibility determination is not made in conformity with

the right to trial by jury" ([D.E. 1] at 113); "no unanimous determination of eligibility"

([D.E. 1] at 114); "no verdict in compliance with the Sixth Amendment" ([D.E. 1] at 116)

and "the recommendation has been merely advisory". ([D.E. 1] at 118). All of these sub-

claims are predicated on the applicability of *Ring* to Mr. Allen's petition.

Mr. Allen further argues that his sixth amendment rights were violated when: "the

indictment against Mr. Allen failed to include all of the elements of the offense of capital

murder" ([D.E. 1] at 118);  his "jury was told that its recommendation was merely

---

[15] *Ring v. Arizona*, 536 U.S. 584 (2002).

advisory in nature" ([D.E. 1] at 121); the "burden of proof was impermissibly shifted to Mr. Allen ([D.E. 1] at 122) and "Mr. Allen's confrontation rights were denied." ([D.E. 1] at 124). These sub-claims are primarily predicated on *Caldwell v. Mississippi,* 472 U.S. 320 (1985).

The State responds that "[a]s Petitioner's convictions and sentences were final when *Ring* issued, this claim is barred by *Teague. Summerlin; Turner.* It should be denied." ([D.E. 15] at 155-156). Although the instant petition was filed prior to the United States Supreme Court's decision in *Summerlin,* Mr. Allen continued to assert this claim in his reply brief to this Court rather than withdraw it ("[p]etitioner relies on his Petition to refute the assertions and arguments set forth by the Respondent") despite the State's correct response. ([D.E. 19] at 25).

In 2002, the United States Supreme Court in *Ring* held that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty." *Ring v. Arizona*, 536 U.S. 584,609 (2002). Rather, "the Sixth Amendment requires that [those circumstances] be found by a jury." *Id.* Subsequent to the decision in *Ring*, the United States Supreme Court held that *Ring* was a procedural rule and does not apply to cases already final on direct review. *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004). Mr. Allen's direct appeal became final on March 26, 1996 (*Allen v. State*, 662 So.2d 323 (1995)), nearly six years *before* the *Ring* and *Summerlin* decisions. Therefore, as *Summerlin* has held, the *Ring* decision is inapplicable to Mr. Allen's claim regarding the Florida sentencing scheme. Habeas

relief is denied as to his *Ring* claim.[16]

In addition to his *Ring* claim Mr. Allen again makes a *Caldwell* claim. ([D.E. 1] at 121). As previously articulated, *Caldwell* held it was constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that responsibility for determining appropriateness of defendant's death rests elsewhere. However, "to establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Davis*, 119 F.3d at 1482 (11th Cir. 1997). Therefore, "references to and descriptions of the jury's sentencing verdict in this case as an advisory one, as a recommendation to the judge, and of the judge as the final sentencing authority are not error under *Caldwell*." *Davis*, 119 F.3d at 1482.[17]

Aside from lacking merit, this claim is also procedurally barred from review by this Court. Mr. Allen first raised this claim in his motion for postconviction relief. The trial court denied this claim as being procedurally barred because it could have and should have been raised in his direct appeal and is, thereafter, procedurally barred in postconviction proceedings. (*See* [D.E. 16, App. R.] at 1035). The Florida Supreme Court affirmed. *Allen v. State*, 854 So. 2d 1255, 1258 (Fla. 2003)(citing *Bruno v. State*, 807 So. 2d 55, 70 (Fla. 2001), *Hoffman v. State*, 800 So. 2d 174, 178 n.3 (Fla. 2001)).

---

[16] Even before the United States Supreme Court's decision in *Summerlin*, the Florida Supreme Court denied Mr. Allen's *Ring* claim which was first made in his petition for writ of habeas corpus. "We recently rejected such an argument in *Doorbal v. State,* 837 So. 2d 940, 963 (Fla. 2003)." *Allen v. State,* 854 So. 2d 1255, 262 (Fla. 2003).

[17] Section 921.141(2), Florida Statutes, states that "[a]fter hearing all the evidence, the jury shall deliberate and render an *advisory sentence* to the court. . . ." (emphasis added).

Habeas relief is similarly denied to Mr. Allen by this Court as to this claim.

### IX.   *Interviews of Jurors*.

Mr. Allen's ninth claim for habeas relief is as follows:

> Mr. Allen was denied his rights under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution and is denied effective assistance of counsel in pursuing his postconviction remedies because of the rules prohibiting his lawyers from interviewing jurors to determine if constitutional error was present.

([D.E. 1] at 127).

Mr. Allen argues that because "he [was] provided counsel who are members of the Florida Bar. Rule 4-3.5(d)(4), precludes counsel from contacting jurors and conducting an investigation into constitutional claims that would be discovered through interviews" that he was unable to explore possible misconduct and biases of the jury. ([D.E. 1] at 128). He further urges this Court to "declare rule 4-3.5(d)(4), Rules Regulating the Florida Bar, unconstitutional and allow his legal representatives to conduct discrete, anonymous interviews with the jurors who sentenced him to death." *Id.*

The State responds that "this claim should be denied because it is not cognizable in this proceeding, is procedurally barred and is without merit." ([D.E. 15] at 157).

Mr. Allen first raised this claim in his Rule 3.850 postconviction motion. The trial court found that this claim was both "legally insufficient and procedurally barred." (*See* [D.E. 16, App. R.] at 1078). The Florida Supreme Court also denied this claim as

procedurally barred. *Allen*, 854 So. 2d at 1258 (citing *Rose v. State*, 774 So. 2d 629, 637 n.12 (Fla. 2000)(claims challenging the constitutionality of the rules governing juror interviews should be brought on direct appeal). Mr. Allen failed to properly raise the claim presented here in appropriate state court proceedings, resulting in the application of a procedural bar by the state courts. As such, the claim is likewise procedurally barred in this Court.

When a state court has applied a state procedural bar to a claim, that claim is likewise barred from federal habeas corpus review. *Y1st v. Nunnemaker*, 501 U.S. 797 (1991); *Coleman v. Thompson*, 501 U.S. 722, (1991); *Murray v. Carrier*, 477 U.S. 478 (1986); *Wainwright v. Sykes*, 433 U.S. 72 (1977). Here, the state courts properly determined that this claim, the subject issue of which was found expressly procedurally barred because it could have been but was not raised on direct appeal, may not be the subject of a subsequent Rule 3.850 motion for postconviction relief. *Kennedy v. State*, 547 So. 2d 912 (Fla. 1989). Since Mr. Allen has already pursued a direct appeal at the Florida Supreme Court, he cannot return to that forum to present this claim. As this claim is now irrevocably barred from consideration by the state courts, this Court may deem them procedurally barred as well, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-49 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

To overcome a procedural bar, a petitioner must demonstrate objective cause for the failure to properly raise the claim and actual prejudice resulting from the error complained of. *United States v. Frady*, 456 U.S. 152, 168 (1982); *Wainwright v. Sykes*,

66

433 U.S. 72 (1977). Here, Mr. Allen did not acknowledge the state court's procedural bar, let alone argue cause for his failure to have raised this claim at the appropriate procedural stage in the state courts. Habeas relief is denied.

## X. *Florida's Capital Sentencing Statute is Unconstitutional*

Mr. Allen's final claim for habeas relief is as follows:

> Florida's Capital Sentencing Statute is unconstitutional on its face and as applied because it fails to prevent the arbitrary and capricious imposition of the death penalty, and it violated the constitutional guarantees of due process and prohibiting cruel and unusual punishment.

([D.E. 1] at 129).

Mr. Allen argues that "Florida's capital sentencing scheme denies Mr. Allen his right to due process of law and constitutes cruel and unusual punishment on its face and as applied in this case." *Id.* The State responds that this claim too "is procedurally barred and without merit." ([D.E. 15] at 160).

Mr. Allen also first raised this claim in his Rule 3.850 postconviction motion. The trial court found "[t]he constitutionality of the death penalty could and should have been raised on direct appeal. Further, challenges to the constitutionality of the death penalty have been made repeatedly and rejected often." (*See* [D.E. 16, App. R.] at 1081)(internal citations omitted). The Florida Supreme Court also denied this claim as procedurally barred. *Allen*, 854 So. 2d at 1258 (citing *Arbelaez v. State*, 775 So. 2d

909, 919 (Fla. 2000)(challenges to the constitutionality of Florida's death penalty scheme should be raised on direct appeal)).  Mr. Allen failed to properly raise the claim presented here in appropriate state court proceedings, resulting in the application of a procedural bar by the state courts.  As such, this claim is likewise procedurally barred in this Court.  *See supra* Order at 62.  Habeas relief is therefore denied as to this claim.

## V. CONCLUSION

For all the reasons set forth above, it is:

**ORDERED AND ADJUDGED** that Mr. Allen's Petition for Writ of Habeas Corpus [D.E. 1] is **DENIED**.  The Clerk of the Court is instructed to **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 31st day of March, 2009.

**JAMES I. COHN**
**UNITED STATES DISTRICT JUDGE**

Copies provided to:

All counsel of record on CM/ECF

68