**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 03-10077-CIV-COHN

**LLOYD CHASE ALLEN**,

Petitioner,

v.

**WALTER A. MCNEIL**, Secretary,
Florida Department of Corrections,

Respondent.
_____/

**AMENDED MOTION FOR CERTIFICATE OF APPEALABILITY**

**COMES NOW,** Petitioner, **LLOYD CHASE ALLEN**, by and
through undersigned counsel, and respectfully moves this Court for the
issuance of a certificate of appealability, pursuant to Federal Rule of
Appellate Procedure 22(b) and 28 U.S.C. § 2253.

On March 31, 2009, the Court entered its Order denying Mr. Allen's
petition for a writ of habeas corpus (Doc. 21), and on April 1, 2009, the clerk
entered judgment in Respondent's favor (Doc. 22).  On April 14, 2009, Mr.
Allen timely filed a motion to alter or amend the judgment pursuant to
Federal Rule of Civil Procedure 59(e) (Doc. 24), which the Court denied by

Order dated May 15, 2009 (Doc. 25).  For the reasons discussed herein, Mr. Allen requests that the Court issue a Certificate of Appealability (hereinafter "COA").   Notice of Appeal was filed on June 12, 2009 and construed by this Court as a Motion for COA.  This amendment to the COA is timely filed.

### *Standard for Issuing A Certificate of Appealability*

Mr. Allen's Petition for Writ of Habeas Corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 State. 1214 (1996), which requires that, in order for a petitioner to obtain relief, he must establish that the state court's judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

This Court found that Mr. Allen failed to meet the standards set forth by AEDPA, and therefore denied his Petition.  Mr. Allen appealed the Court's denial of relief, and currently seeks a COA so that he may further pursue his appeals.

A petitioner seeking to appeal a final order denying habeas relief must apply for a COA from the district court judge who rendered the decision or from a circuit court judge. 28 U.S.C. § 2253(c)(1). A COA may issue if the petitioner makes "a substantial showing of the denial of a constitutional right." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003); 28 U.S.C. § 2253(c)(2); <u>Barefoot v. Estelle</u>, 463 U.S. 880 (1983). A petitioner need not demonstrate that the issues to be raised in the appeal would prevail on the merits, <u>Barefoot,</u> 463 U.S. at 893 n.4, but, rather, "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Id.</u>  Thus, "[t]he COA inquiry asks only if the District Court's decision [is] debatable." <u>Miller-El</u>, 537 U.S. at 348.

"[J]urists of reason could disagree with the district court's resolution of [the] constitutional claims" raised by Mr. Allen's Petition for Writ of Habeas Corpus, and a COA should issue as to all of the claims asserted in his Petition.[1]  Mr. Allen has made the requisite "substantial showing" of multiple violations of his constitutional rights. Specifically, the State and

---

[1] No claims or argument not specifically addressed are waived or abandoned.

Allen's trial attorney contributed to the conviction and sentence that were obtained in violation of Mr. Allen's Sixth Amendment right to counsel, his right to due process under the Fifth and Fourteenth Amendments, and his right to a reliable, individualized sentence under the Eighth and Fourteenth Amendments.

### 1. State's Withholding of Material Exculpatory Evidence

Jurists of reason could disagree with this Court's interpretation of Brady v. Maryland, 373 U.S. 83 (1963) and its progeny when the prosecution withheld material exculpatory and impeachment evidence.  It is "debatable" whether withheld evidence that exonerates or casts doubt on the State's theory of prosecution against Mr. Allen rises to the level of a constitutional violation.   The difference between Mr. Allen's argument for relief and the Court's dissatisfaction with that argument is a matter of degree.   The State failed to disclose an exculpatory and impeaching laboratory report from the Florida Department of Law Enforcement ("FDLE") establishing that two hairs found in the victim's hand were not Mr. Allen's hair.  FDLE could not determine whether the victim was the source of the hairs because police contaminated the victim's standard hair samples.  In the hands of competent defense counsel, Mr. Allen could have

argued actual innocence or at least, severely impeached state witnesses who failed to mention the report or the contamination at the FDLE crime lab.

Notations in the withheld FDLE hair sample report indicated that FDLE had informed Assistant State Attorney McLaughlin and  Monroe County Sherriff's serologist, Dr. Pope, that the hair samples were contaminated and could not be definitively identified.  Without this knowledge, Mr. Allen's defense counsel was foreclosed from requesting tests by an independent laboratory on forensic evidence that was not contaminated; nor could Mr. Allen impeach Dr. Pope with information that he mishandled the evidence.  Prosecutor McLaughlin knew of the report and purposefully withheld it rises to the level of a constitutional claim under Giglio v. United States, 405 U.S. 150 (1977)[prosecutor obligated to correct false or misleading testimony]  in which the burden of proving  prejudice is substantially less onerous.   United States v. Agurs, 427 U.S. 97 (1976).  Jurists may debate whether there is a reasonable likelihood that any of this withheld evidence affected the judgment of the jury. Williams v. Griswold, 743 F.2d 1533, 1543 (11th Cir. 1984)[conviction must be reversed if any reasonable likelihood error affected judgment of jury].

The value of this impeachment evidence alone is invaluable, but that was not the end of the constitutional violations.  Another FDLE report was withheld by the state showing that none of the latent fingerprints found in the victim's car matched Mr. Allen.  Another document revealed that the victim had also been ruled out as a source of the fingerprints.  This directly contradicted the testimony elicited from the state's witnesses by prosecutors.

Reasonable jurists could debate that these withheld reports and the arguable evidence of innocence that they contained, amounted to a constitutional violation because the information directly rebutted the State's case.  This impeachment evidence would have cast doubt on Mr. Allen's guilt.  The failure to disclose evidence of actual innocence prejudiced him to the extent that confidence in the outcome of the trial is in doubt.  This Court failed to recognize the degree to which the withheld evidence was exonerating AND impeaching.

This information directly rebutted the State's theory of prosecution and painted a far different picture of Mr. Allen's participation in the crime.  Thus, reasonable jurists could disagree as to the degree of harm suffered by Mr. Allen.  A COA should issue so that the Court of Appeals can assess

whether the State's failure to disclose exculpatory and impeaching evidence infringed upon Mr. Allen's constitutional rights.

The Fifth and Fourteenth Amendments require the government to disclose exculpatory or impeaching evidence to defendants. Due process requires the prosecution to disclose evidence favorable to an accused when such evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963). Evidence is material under Brady if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the proceeding. U.S. v. Bagley, 473 U.S. 667, 682 (1985) (plurality opinion) (Blackmun, J.). A "reasonable probability" under Bagley is "a probability sufficient to undermine confidence in the outcome." Id.; see also Kyles v. Whitley, 514 U.S. 419, 434-35 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the [undisclosed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence . . .")

Despite the exonerating and impeaching nature of this withheld evidence and, that the prosecution knew about the evidence, no evidentiary hearing was held in state or this Court. Adequate factual development of

these claims by the lower court was never done.  Under Florida law, the lower court was required to accept Mr. Allen's post-conviction claims as true.  See, <u>Lemon v. State</u>, 498 So.2d 923 (Fla. 1986); Fla. R. Crim. P. 3.851.  But it is evident from the Florida Supreme Court opinions that his claims were not accepted as true.

In holding that the State's suppression of the above evidence did not "undermine confidence in the outcome," of the trial, the state court decisions below were "contrary to clearly established federal law," and Mr. Allen is therefore entitled to habeas relief or at least an evidentiary hearing.  28 U.S.C. § 2254.  Cf. <u>Breedlove v. Moore</u>, 279 F. 3d 952 (11th Cir. 2002)[if a habeas petitioner "sought an evidentiary hearing . . . at every stage of his state proceedings" and the "state courts denied him the opportunity" to present evidence at a hearing, the petitioner "was prevented from developing a factual basis for his claim in state court."  <u>Breedlove</u>, 279 F. 3d at 960.

Under these circumstances, § 2254 (e) (2) did not preclude an evidentiary hearing here.  This Court should have granted an evidentiary hearing to develop these facts since the lower court did not, but this Court declined to do so.

This Court misunderstood that this withheld evidence was exculpatory, exonerating and, impeaching.  28 U.S.C. §2254.  This Court fails to recognize that evidence that the hair found in the victim's hand did <u>not</u> belong to Mr. Allen gives rise to the reasonable inference that a third party was present and killed the victim.   The information that hairs recovered from the victim's hand may have belonged to someone other than Mr. Allen could have been argued to the jury and would have affected its view of Mr. Allen's culpability.

Similarly, the State's witnesses at trial testified that **Mr. Allen's** fingerprint was lifted from the victim's car.  This incriminating testimony was false.  The FDLE report showing that Mr. Allen's fingerprint was <u>not</u> present undermines the jury's decision, because it relied on inaccurate evidence falsely presented by the State.[2]  This is a <u>Giglio</u> violation.

This Court's holding that such evidence is insufficient to undermine the jury's verdict against Mr. Allen directly conflicts with <u>Kyles v. Whitley</u>, 514 U.S. at 419.  Reasonable jurists could disagree because <u>Kyles</u> instructs

---

[2] The Florida Supreme Court's factual summary, adopted by the Court, states "Allen's prints were lifted from the car."  <u>Allen v. State</u>, 662 So. 2d 323, 327 (Fla. 1995).  This is an unreasonable determination of facts in light of the evidence because it is contrary to the facts alleged by Mr. Allen in his postconviction motion.  The facts that the court was supposed to take as true under Florida law. See, Fla. R. Crim. P 3.851; <u>Lemon v. State</u>, *supra*.

that material evidence is deemed to be in the possession of the State, regardless of whether the prosecution knew of its existence in the police files; the State is still responsible for disclosing this information.

A competent and reasonable defense attorney could have severely impeached the State's witnesses and then showed the jury that potentially exonerating forensic evidence existed that showed Mr. Allen was not the killer. Fingerprints belonging to someone other than Mr. Allen were present in the victim's car. The hair clutched in the victim's hand could not be identified as belonging to Mr. Allen or the victim. This hair could not be compared to the standard hair from the victim due to Dr. Pope's contamination of the evidence by mixing the hair samples in one container. Property receipts also show that Dr. Pope also took the evidence to his home to dry it in his guest room. This powerful evidence of innocence was not presented to the jury because the State violated <u>Giglio</u> and <u>Kyles</u>. With due respect to the Court, at the minimum jurists could debate the value of this evidence, and COA should issue.

### *2. Ineffective Assistance of Counsel*

Jurists of reason could also debate the propriety of this Court's decision that Mr. Allen's inexperienced trial counsel provided the effective

assistance of counsel in guilt phase.  Mr. Allen made a substantial showing that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him resulting in an unreliable or fundamentally unfair outcome in the proceeding. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Accordingly, COA should issue so that the Court of Appeals can consider this claim.

At the time he was appointed to represent Mr. Allen, trial counsel, Gerod Hooper, was inexperienced in criminal defense work.  He had no previous experience defending a capital case.  Not only did he lack adequate time to prepare a full defense, he failed to utilize the time he did have available.  He shunned the offers of assistance from colleagues.  Mr. Hooper performed little or no independent pre-trial investigation, and was unprepared to properly challenge the State's case for guilt, or argue against the aggravating circumstances in the State's case for death.

Counsel failure to prepare led to a performance at trial in which counsel did nothing to challenge the State's weak evidence.  As a result of the trial attorney's dismal performance in guilt phase, Mr. Allen chose to represent himself in penalty phase.  While Mr. Allen does not concede the legal sufficiency of his waiver, his decision not to present mitigation would

never have happened in the first instance if trial counsel had investigated and prepared prior to trial, and had he adequately counseled Mr. Allen prior to penalty phase regarding mitigation.  However, after the concessions, failure to impeach or effectively challenge any of the State's case, Mr. Allen was forced by counsel's incompetence to represent himself at sentencing. He essentially gave up.  He asked the jury to impose a death sentence and committed legal suicide.  Reasonable jurists could debate whether counsel's failure to investigate and prepare prior to trial alone rose to the level of a Sixth Amendment violation of Mr. Allen's right to counsel.

### 1. Guilt Phase

This Court failed to recognize the extent of counsel's failures and the degree to which they deprived Mr. Allen of opportunities to expose the short-comings of law enforcement's investigation, refute the State's evidence, establish reasonable doubt and argue a viable defense theory.

This Court held that counsel's failure "to investigate and discover evidence of innocence" was not raised before the Florida Supreme Court on appeal from denial of post-conviction relief, and was procedurally defaulted. However in his appellate brief, Mr. Allen alleged that he was denied the effective assistance of counsel at the guilt phase of his trial, and raised

counsel's failure to investigate and prepare which necessarily included all of the evidence including evidence of innocence. (App. Brief pg. 28).   Mr. Allen respectfully argues that this Court's procedural ruling is debatable and should not preclude the issuance of a COA on this issue.

### A. Presence of a Third Party

Reasonable jurists could debate whether adequate pre-trial investigation would have revealed information that supported Mr. Allen's defense that another person committed the crime.  Mr. Allen picked up this person on November 12 in Miami, and the person killed Dorotha Cribbs. Records demonstrate that Mr. Allen made phone calls from Miami on November 12, and that Mr. Allen was registered, using an alias, at the Buccaneer Lodge along with **another adult male** on the day the victim's body was discovered.  Counsel could have presented testimony from Tonia McClean, who told police that there were two vehicles parked at Ms. Cribbs' home both the night before and the day of the crime.  Counsel could have presented McClean's description of the man she saw with the victim.  The woman's description did not match Mr. Allen.

The State's case is entirely circumstantial and based wholly on Mr. Allen's association with the victim and his presence in the vicinity of the

crime. This evidence establishing that another person was seen at the victim's home and later accompanying Mr. Allen undermines the State's case. It is axiomatic that mere presence at the scene of the crime is not a sufficient basis upon which to base a finding of guilt. <u>United States v. Reyes</u>, 595 F.2d 275, 280 (5th Cir. 1979). Nor may guilt be assumed solely through close association between persons or through family relationships. <u>United States v. White</u>, 569 F.2d 263, 268 (5th Cir. 1976); Cf. <u>United States v. Gamboa</u>, 166 F.3d 1327 (11th Cir. 1999)[mere presence should not be discounted].

Counsel's failure to investigate and prepare not only eliminated Mr. Allen's chance to present an affirmative defense that someone else committed the crimes, but also diminished Mr. Allen's ability to expose the many weaknesses of the State's case-in-chief. This omission in conjunction with the <u>Brady</u> violations resulted in an unreliable outcome in Mr. Allen's case because the jury did not know of these weaknesses in the State's case.

### B.  Failure to Challenge State's Case

### 1. Eyewitness Testimony

Reasonable jurists could debate whether defense counsel failed to effectively challenge the testimony of Larry Woods, who, at trial, identified

Mr. Allen as being present at the victim's home around the time of the crime.  He failed to challenge the testimony of Richard Hare, a taxi driver who testified that he gave Mr. Allen a ride on the day of the crime.  These witnesses' testimony was so unreliable that it should have been excluded altogether, and, once admitted, should have been severely impeached, but trial counsel failed to do so.  Counsel's failure to effectively cross examine and challenge this testimony constituted deficient performance that resulted in prejudice to Mr. Allen.

A competent defense attorney could have presented that Larry Woods worked on the house across the street from the victim on the day Ms. Cribbs was killed.  That morning, he "glanced over" and briefly saw someone exit and then return to the victim's house.  Tr. 126.   Trial counsel failed to challenge Mr. Woods' description of the person.  His view was so poor he was initially unsure whether the person was male or female.  The description did not fit Mr. Allen.  Despite the limited view he was afforded, police recruited Woods to develop a composite sketch before being shown any photographs of the suspect. Tr. 128.  Police muddied the waters by failing to compile a photo pak of several suspects.  Instead, police showed Woods a single photograph of Mr. Allen. Tr. 123.   Woods testified that the photo

resembled the composite. Tr. 129-130.   Only after police showed him a single photograph, did Woods identify Mr. Allen as the person he saw exiting the victim's home.   The inconsistent and suggestive nature of Woods' identification should have led counsel to move to exclude his testimony and to impeach Woods on cross-examination.   Instead, counsel conceded, without Mr. Allen's permission, that Woods "saw the defendant." Tr. 131.  Cf. Francis v. Spraggins,   Reasonable jurists could debate that this was ineffective assistance of counsel under Strickland.

Trial counsel also failed to impeach Richard Hare who was a taxi driver on the date of the murder.  He gave someone a ride from the hotel where the victim's car was later located.  Tr. 145.  Police shaped the witness testimony by providing a suggestive single photograph of Mr. Allen, instead of a photo pak of several suspects. Prosecutor McLaughlin showed Hare the photo and inquired whether that was the person Hare picked up.   Hare responded "I believe so."  Id.  McLaughlin repeated his question, and Hare responded "I think so." Id.  McLaughlin then asked whether he saw the person in the courtroom, and Hare said "Yes sir, I think I do" before pointing out Mr. Allen. Tr. 145-146.   Despite the problematic police practices and Hare's uncertainty, counsel filed no motion to suppress photo

identification.   Trial counsel inexplicably failed to challenge Hare's identification pre-trial or in court.  In fact, counsel had no questions at all for Mr. Hare.  Tr. 146.   Reasonable jurists could debate whether this is ineffective as a matter of law. Strickland, *supra*.

Counsel's failure to challenge the state's key eyewitness testimony of Woods and Hare constituted deficient performance.  This is particularly egregious when considered in light of United States v. Wade, 388 U.S. 218 (1967), where the United States Supreme Court recognized the inherent unreliability of eyewitness identification evidence.  See also Manson v. Brathwaite, 432 U.S. 98 (1977).  A reasonable competent attorney at the time of Mr. Allen's trial should have been aware of the problematic nature of eyewitness testimony, and been prepared to effectively move to exclude the evidence and to impeach it at trial.

The equivocal pre-trial identifications and in-court testimony went completely unchallenged by Mr. Allen's inexperienced and unprepared attorney.  The United States Supreme Court has also long-recognized the powerful impact that eyewitness testimony has on juries.  See Manson, 432 U.S. at 120.  Where, as here, the State's case consists solely of evidence placing the defendant at the scene of the crime, counsel's failure to challenge

that evidence undermines confidence in the verdict.  Jurists of reason could disagree with this Court's holding that counsel was not ineffective under Strickland, and, accordingly, COA should issue.

### B. Forensic Evidence

Jurists of reason could debate whether trial counsel's failure to challenge the forensic evidence was reasonable under Strickland.  At trial, the State presented the testimony of Marjorie Rohner, the latent fingerprint examiner for the Monroe County Sheriff's Office.  Rohner testified that a latent fingerprint lifted from the passenger window of the victim's car matched Mr. Allen, and that another expert confirmed her conclusions.  Tr. 27-28.  She testified that no other prints of value were available for comparison in the case.  Her testimony, however, was false.  Defense counsel never investigated the fingerprint evidence.  Had counsel hired an independent fingerprint examiner, he could have challenged Rohner's testimony, instead he did nothing.

Medical examiner Dr. Robert Nelms testified about the time of death. He said "sixteen to thirty minutes, and perhaps more," elapsed between the time the victim was stabbed until her death from exsanguination.  Tr. 162. Despite having a statement from the Chief Forensic Investigator, William

Sutton, that it would take just three to five minutes for death to occur, defense counsel failed to investigate this discrepancy or impeach Nelms' testimony.  The jury had no idea that the Nelms' testimony was debatable. The prejudice Mr. Allen suffered as a result of counsel's failure to impeach was grave.  The trial court concluded that the crime was heinous, atrocious and cruel, and therefore deserving of the death penalty based on Nelms' unimpeachable testimony that the victim experienced prolonged suffering at the time of death.  Reasonable jurists could debate the gravity of counsel's omission.

Most egregious of counsel's failures was the complete failure to challenge Dr. Donald Pope, forensic serologist for the Monroe County Sheriff's Office.  This was the man who, unbeknownst to the defense, had contaminated the forensic hair evidence to such a degree FDLE could not perform forensic testing, no less get a result.  Pope, a former veterinarian, testified that semen on a hand towel collected from the victim's house belonged to Mr. Allen, and that a blood stain found on jeans located at the scene belonged to the victim.

According to at least one MSCO property receipt, Dr. Pope took  the evidence from the crime scene "to [his] home for air drying."  Dr. Pope

testified that Sgt. Jerry Powell delivered the victim's rape kit, "along with some other evidence," to Pope's house.  Tr. 38.  Yet, counsel failed to move to exclude this evidence or to challenge the mishandling of it in any significant respect.

### 2. Penalty Phase

The Court correctly noted that counsel's failure to conduct investigation into mitigation evidence prior to penalty phase constituted deficient performance. See, Hardwick v. Crosby, 320 F.3d 1127 (11th Cir. 2003).  However, the Court's holding that Mr. Allen's decision to represent himself at the penalty phase precludes him from raising an ineffective assistance claim based on this failure is debatable.

The Court overlooks the fact that Mr. Allen's desire to represent himself was based solely on the advice given to him by a totally unprepared and inexperienced trial attorney whom this Court acknowledges was inadequate.  Mr. Allen, uncounseled by adequate counsel, thought his only alternative was to represent himself after his guilt phase evidence went unchallenged.

Without an evidentiary hearing in state or federal court, Mr.  Allen's desire not to present mitigating evidence has gone without adequate factual

development.  It is unclear from this Court's position whether Mr. Allen could have knowingly and voluntarily waive presenting evidence at penalty phase without knowing what a competent defense attorney could have presented.  Moreover, it also is not clear whether Mr. Allen intended to simply waive mitigating evidence or whether he would have been amenable to challenging the State's aggravating factors had he known what information was available to do so.

Rather than fulfilling his duty to investigate mitigation and adequately advise his client regarding potential mitigation, trial counsel guided Mr. Allen toward waiving his right to counsel at the penalty phase.  Counsel completely abdicated his duty of loyalty to the client regardless of his desire not to present mitigation.  Counsel had Mr. Allen sign a document titled "Acknowledgement of Instructions to Trial Counsel" that makes clear that the waiver of mitigation evidence was at the heart of Mr. Allen's desire to proceed *pro se.*  Instead of investigating or preparing for penalty phase, Mr. Allen's attorney cultivated his client's uninformed desire to waive mitigation.  Counsel fostered this approach well before trial.

In order for a defendant's waiver of counsel to be knowing, intelligent and voluntary, the defendant must be aware of the hazards of self-

representation.   U.S. v. Evans, 478 F.3d 1332, 1340 (11th Cir. 2007). Similarly, in order for a defendant's waiver of mitigation evidence to be valid, it must be based upon an adequate investigation of potential evidence to rebut the aggravators and, at least, an elementary understanding of the nature of mitigation available.

Here, counsel's failure to investigate precluded him from being able to adequately advise his client about what he was waiving with respect to mitigation and rebuttal of the aggravating factors that resulted in Mr. Allen's attempt to waive his right to counsel.  Both of these waivers were invalid because they were "not a result of investigation and evaluation, but [were] instead primarily a result of counsels' eagerness to latch onto [Mr. Allen's] statements that he did not want any witnesses called."  Blanco v. Singletary, 943 F.3d 1477, 1501-02 (11th Cir. 1991).   Reasonable jurists could debate whether trial counsel, who this Court concedes was ineffective, could adequately advise his client of what he was waiving when he had done no investigation or preparation for penalty phase prior to trial.  Cf. Rompilla v. Beard, 545 U.S. 374 (2005) [the time to prepare for penalty phase is prior to trial].  A COA should issue on this claim.

## *Conclusion*

For the claims discussed above and those discussed in his petition for writ of habeas corpus, Mr. Allen requests a certificate of appealability because he was deprived a fair trial as required by Brady and Strickland. Mr. Allen's death sentence does not meet the heightened reliability standards required by the Eighth Amendment.  Moreover, this Court required sixty-eight (68) pages to explain its reasoning to deny Mr. Allen's issues. Accordingly, the Court should issue a certificate of appealability on all of his claims so that he may appeal them to the Court of Appeals.

Respectfully Submitted,

/s/ Terri L. Backhus
TERRI L. BACKHUS
Florida Bar No. 0946427
Assistant CCRC-South
101 N.E. 3rd Avenue, Suite 400
Fort Lauderdale, FL 33301
(813) 269-7604 Telephone
(954) 713-1299 Fax
rileybackhus@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 16, 2009, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Sandra Jaggard, Assistant Attorney

General, Department of Legal Affairs, Rivergate Plaza, Suite 950, 444

Brickell Avenue, Miami, Florida 33131.

/s/Terri L. Backhus

TERRI L. BACKUS
Florida Bar No. 0946427